Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500,<br><br>Defendants. | Case No.: 2:12-cv-01507<br><br>**EMERGENCY MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE AND APPOINTMENT OF RECEIVER, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

Pursuant to 17 U.S.C. §§502, 15 U.S.C. §1116(d)(1)(A) and Fed. R. Civ. P. 65, Plaintiff Liberty Media Holdings, LLC ("Liberty") moves this Court *ex parte* for a temporary restraining order to stop the Defendant FF Magnat Limited d/b/a Oron.com and their agents ("Oron") from fraudulently transferring assets out of the United States. The Plaintiff seeks an Order unwinding the fraudulent transfers that have already occurred, freezing Defendants' accounts containing profits from the Defendants' illegal enterprise, and returning matters to the state they were in before the dissipation and fraudulent transfers began. Because of the serious and immediate nature of Defendants' acts, Plaintiffs request an emergency hearing or an expedited ruling on the papers.

# I.  STATEMENT OF FACTS

Defendants have engaged in pervasive copyright infringement of works produced by Plaintiffs and multiple other film producers.  The assets Defendants hold (or held) in the United States are the domain name registrations for the Oron.com website and other domain names, as well as profits from their illegal scheme.  While pretending to engage in good-faith negotiations to resolve the claims, the Defendants have actually been using that time to move all assets to locations that they hope will be out of the reach of United States courts.

Defendants are working to fraudulently transfer as many assets as they can out of any location so that those assets might be out of the reach of the Plaintiff or any U.S. court. It is clear that they are doing so to try and shield them from the consequences of potential litigation.  Without the intervention of this Court, Defendants will continue fraudulent transfers of property and assets. An Order from the Court could, at this point, unwind the fraudulent transfers and prevent any other fraudulent transfers from occurring during the pendency of this litigation.

It is proper to issue injunctive relief to prevent these fraudulent transfers and to preserve the Court's ability to issue effective equitable relief.  See *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) (proper to issue an injunction to keep assets from being dissipated overseas, especially where defendant had engaged in a pattern of such activity). Domain names are property and are properly the object of a seizure under a court's equitable powers just as much as the money that the Oron website takes in though its illegal enterprise. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003); *Novak v. Benn,* 896 So. 2d 513 (Ala. App. 2004) (recognizing domain names as property that can be seized under a court order); *Palacio Del Mar Homeowners Assn., Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1391 (Cal. App. Div. 2009); *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 701-02 (9th Cir. 2010).  This Court may freeze funds and exercise quasi *in rem* jurisdiction over the domain names to prevent their dissipation, disgorgement, or other changes thereto so that they may be subject to equitable actions such as shutting down the Defendants' websites if they are not purged of pirated content.  See *Zuccarini*, 596 F.3d at 702-03 (VeriSign is located in the United States and subject to the court's jurisdiction; court was entitled to exercise quasi *in rem* control over the domain names).  The Court can preserve these assets by requiring U.S.-based companies (PayPal, Inc. and VeriSign) to freeze further

1   transfer of funds and domain names and by requesting assurance that any foreign banks with U.S.

2   branches heed this Court's order, or place their U.S. branches and assets in jeopardy.   As the

3   Defendants have already shown that they will make fraudulent transfers, this move would be

4   reasonable and proper.

5          The Defendants accept credit cards on their piracy websites, and thus American Express,

6   Mastercard, and Visa can be ordered to cease clearing their funds, and to hold them in escrow or

7   deposit them with the Court until the outcome of this case is determined.   Furthermore, the

8   Defendants utilize American companies, including CCBill and PayPal, to process credit cards and

9   other payments.   Given the behavior of the Defendants thus far, it is eminently proper to issue

10   injunctive relief, which would render these assets frozen in the United States until a judgment has

11   been entered and all equitable relief satisfied.   *In re Estate of Ferdinand Marcos*, 25 F.3d 1467,

12   1480 (9th Cir. 1994).

13          The Plaintiffs request an *ex parte* emergency temporary restraining order, ordering the

14   domain names held by the Defendants to be placed under the control of the registry of the Court or

15   a Court-appointed receiver.   This relief is not extreme, as the Defendants will still be able to profit

16   from the domain names, they will continue to use them as they have in the past (pending the

17   outcome of trial or further motion practice), but they will be restrained from acts designed to

18   frustrate equity and judgment.   Furthermore, Defendants accept funds from U.S. sources.   Given

19   their actions to date, it is clear that they will dissipate their ill-gotten profits as well, if they have

20   not done so already.   Therefore, a TRO restraining the Defendants (or anyone acting in conjunction

21   with them) from removing funds from U.S. accounts is an appropriate remedy.   Given that the

22   Plaintiff is entitled to the equitable remedy of receiving the Defendants' profits from copyright

23   infringement under 17 U.S.C. § 504, this asset and property freeze is appropriate.   See *Levi Strauss*

24   *& Co., v. Sunrise Int'l Trading*, 51 F. 3d 982, 987 (11th Cir. 1995); *FTC v. U.S. Oil and Gas Corp.,*

25   748 F. 2d. 1431, 1433-34 (11th Cir. 1984).

26                          **II: PLAINTIFF SHOULD BE GRANTED AN**
                            **EX PARTE TEMPORARY RESTRAINING ORDER**
27

28          The purpose of the penalty provisions of the Copyright Act is to "discourage wrongful

infringement as well as to compensate the copyright owner."   *Miller v. Universal City Studios, Inc.,*

1   650 F.2d 1365, 1376 (5th Cir. 1981) (citing *F.W. Woolworth, Company v. Contemporary Arts, Inc.*,

2   344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed.2d 276 (1952)).  Both purposes will be frustrated if the

3   Court fails to issue this order.  "Copyright infringement must not be allowed to serve as the

4   cornerstone of a profitable business."  *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp.

5   543, 561 (N.D. Tex. 1997), *affirmed without opinion*, 168 F.3d 486 (5th Cir. 1999).  If the

6   Defendants can simply shift all of their assets and proceeds from copyright infringement over to

7   offshore entities and offshore banks, in accounts held by shell corporations, they will most certainly

8   enjoy a profitable business while the wheels of justice slowly grind.  If all overseas intellectual

9   property thieves must do is spirit their ill-gotten gains to coffers outside the reach of American

10  courts, while they continue to reap the benefits of their theft, then what law could discourage this

11  kind of activity?

12      Under the Copyright Act, the Plaintiff is entitled to, *inter alia*, the equitable relief of seizure

13  of the Defendants' profits, 17 U.S.C. § 504; injunctive relief deemed reasonable to prevent or

14  restrain infringement, 17 U.S.C. § 502.  In this case, such equity will never be realized if the

15  Defendants are permitted to move property and profits out of the United States and if they are

16  permitted to continue earning money in the United States, from U.S. citizens, only to spirit the

17  funds to offshore locations where this Court's equitable powers lack potency.

18      Courts routinely issue preliminary injunctions freezing defendants' assets in circumstances

19  like this one.  See, e.g., *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996);

20  *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1141 (9th Cir. 2005) ("district court did not abuse

21  its discretion by concluding that the Hendricks would face a significant threat of irreparable injury

22  if a preliminary injunction did not issue to prevent the Bank from honoring Mutual's draw").  They

23  are further so issued when equity will be frustrated in the assurance of the order.  *In re Estate of*

24  *Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994).

25      **A.    The Legal Standard for the Requested Relief Has Been Met**

26      A court may grant injunctive relief if the movant shows the following: (1) substantial

27  likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction

28  issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction

    may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public

1   interest).  *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 186 (11th Cir. 2006); *Int'l*
2   *Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir.
3   2002)(quoting *Levi Strauss & Co*, 51 F.3d at 985); *Alliance For The Wild Rockies v. Cottrell*, 632
4   F.3d 1127 (9th Cir. 2011)).

5        This remedy is appropriate to ensure that the Defendants are not able to finish out their bad
6   faith fraudulent transfer scheme.  The Defendants have engaged in extreme conduct, involving
7   millions of dollars in damages.  If the Copyright Act is to mean anything, it should mean that such
8   schemes do not provide a source of profit for the cyber criminals who engage in them.  The
9   Defendants see the writing on the wall: the Defendants infringed upon copyrighted works for profit
10  and have been caught.  The elements of copyright infringement have been shown, and no
11  affirmative defenses are likely to prevail.

12      **B.**    **Plaintiff LMH Has A Substantial Likelihood of Prevailing on the Merits of Its**
13          **Copyright Claims**

14       To show a substantial likelihood of prevailing on the merits of a copyright infringement
15  claim, Plaintiff Liberty must show that: (1) it owns the copyright to which its infringement claims
16  relate; and, (2) Defendants violated one of the Plaintiff's exclusive rights in the works. See *Feist*
17  *Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Latimer v. Roaring Toyz, Inc.*,
18  601 F.3d 1224, 1232-33 (11th Cir. 2010); *Sid & Marty Kroft Television Prods. Inc. v. McDonald's*
19  *Corp.,* 562 F.2d 1157, 1162 (9th Cir 1977); *Educational Testing Servs. V. Katzman*, 793 F.2d 533,
20  538 (3d Cir. 1977).

21       The Certificates of Registration for the Liberty's works are of record in this case and
22  attached to the Complaint as Exhibit 10.  Section §410(c) of U.S. Code Title 17 specifies that the
23  Certificate of Registration constitutes *prima facie* evidence of the validity and ownership of the
24  copyrights.  Ownership is therefore established.

25       After establishing ownership, Plaintiffs must show unauthorized copying or distribution of
26  its works.  17 U.S.C. § 106.  The evidence of unauthorized copying and distribution is clear and
27  indisputable: The infringing works are exact digital copies of the Plaintiff's copyrighted materials.
28  Plaintiffs did not authorize Defendants to make such copies or to distribute them.  Plaintiffs have
    therefore established a *prima facie* case of copyright infringement.  See *Feist Publ'ns, Inc.*, 499

U.S. at 361; *Latimer*, 601 F.3d at 1232-33; *Sid & Marty Krofft,* 562 F.2d at 1162; *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1231 (3d Cir. 1986); *Educational Testing,* 793 F.2d at 538.  Because of the incontrovertible evidence of Plaintiffs' copyright ownership and Defendant's unauthorized copying, Plaintiffs have shown a clear likelihood that they will prevail in their claims.

The extent of infringement that can be proven is extensive.  While the Defendants have removed the majority of the videos listed in Exhibit 10 to the Complaint, the Defendants continue to mount a campaign of infringement for profit through Oron.com and their affiliates.  The Oron website is an online flea market of stolen works.

**C.    Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Relief**

Irreparable harm exists where in the absence of equitable relief, there is a substantial chance that upon final resolution, the movant cannot be made whole.  See *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). "[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Marcos*, 25 F.3d at 1480.  If a party is likely to take actions that will frustrate a judgment, then the movant's irreparable harm is shown.  See *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995).  While monetary damages might be available at law in copyright cases, equity compels an impoundment of the instrumentalities of and the proceeds from infringing activities.  17 U.S.C. § 504.

The "financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996).  When irreparable economic damages are difficult to calculate, a finding of irreparable harm is appropriate.  *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).  The language of 17 U.S.C. § 502 and § 504 combined with the presumed irreparable harm in copyright cases permits the Court to focus solely on the plaintiff's likelihood of prevailing at trial when fashioning preliminary injunctive relief.  *See Albert E. Price, Inc. v. Metzner, et al.*, 574 F. Supp. 281, 286 (E.D. Pa. 1983); *see also Educational Testing*, 793 F.2d at 544; *and see* 3 Nimmer on Copyright at §14.06[A].

The Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claims and have established the element of irreparable harm.  *See Apple Computer, Inc. v. Franklin Computer Corporation*, 714 F.2d 1240, 1254 (3d Cir. 1983); *see also Educational Testing*, *cited supra*, 793 F.2d at 543-544.  The Court should issue injunctive relief.

If the requested relief is not granted, Defendants will move their illegal business instrumentalities and profits offshore, will transfer any funds in any U.S. accounts to foreign bank accounts, and they will continue to move funds they earn in the United States out of the United States, thus allowing the impact of this litigation to be nil, and frustrating any efforts to seize their illegal profits.

### D.    The Balance of Equities Favors the Issuance of the Requested Injunctive Relief

The requested temporary restraining order is limited in scope.  It does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged.  An injunction that simply restores thing to their rightful place is neither extreme nor controversial.

It is essential to freeze their domain names and any U.S. funds in order for Plaintiffs to receive any possible relief.  Additionally, the preliminary injunction sought restrains Defendants from making further unauthorized copies of Plaintiffs' works and distributing pirated materials.  Injunctive relief seeks nothing more than requiring Defendants comply with the Copyright Act, to unwind fraudulent transfers and to preserve the *status quo* of Defendants' location of their ill-gotten gains.  The imposition on Defendants' legitimate business activities (if any) is minimal and short-lived.  The Plaintiffs' injury (continued infringement of Plaintiff's copyrights, and potential destruction of evidence) outweighs any possible damage caused to Defendants.

### E.    The Requested Relief is in the Public Interest

The public has a genuine interest in upholding copyright protections. *See Erickson v. Trinity Theatre, Inc*., 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp*., 714 F.2d 1240, 1255 (3d Cir. 1983) ("It is virtually axiomatic that the public interest can only be served by upholding copyright protections …")).  Defendants' illegal infringements flout the public policy underlying federal copyright law.  The copyright laws further the public's interest in protecting business investment, intellectual property, and enforcing federal

1   law.  See *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993).

2   See also 3 Nimmer on Copyright, §14.06[A]; *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213

3   F.Supp.2d 1146 (C.D. Ca. 2002).  The public interest favors issuance of the requested relief.

4        Plaintiffs will succeed on their copyright and other claims.  Clear, immediate, and

5   irreparable harm is present.  The balance of hardships weighs in favor of protecting the Plaintiffs'

6   copyrights.  The TRO will further the public interest in enforcing federal law and protecting

7   copyrights from piracy, and keeping scofflaws from evading responsibility for their actions.

8        **F.    Ex Parte Relief is Essential**

9        Fed. R. Civ. Proc. 65 permits issuance of a temporary restraining order without prior notice

10   to Defendants.  By its very terms, Rule 65 allows for the issuance of an *ex parte* order.

11       A temporary restraining order may be granted without written or oral notice to the adverse

12   party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the

13   verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant

14   before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney

15   certifies to the court in writing the efforts, if any, which have been made to give the notice and the

16   reasons supporting his claim that notice should not be required.

17       An *ex parte* order preserves the *status quo* and prevents irreparable harm.  *See Granny*

18   *Goose Foods, Inc., et al. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).  Courts grant a

19   temporary restraining order when: (1) immediate and irreparable injury, loss, or damage will result

20   to the applicant before the adverse party can be heard in opposition; and, (2) the applicant

21   sufficiently demonstrates the reason notice should not be required.  Numerous courts recognized

22   the need for *ex parte* temporary restraining orders in intellectual property cases.  See *Vuitton v.*

23   *White*, 945 F.2d 569 (3d Cir. 1991); see also *NBA Properties v. Various John Does*, 113 F.3d 1246

24   (10th Cir. 1997), *dec'n without published opinion, reported in full at* 1997 U.S. App. LEXIS 11946

25   (10th Cir. 1997); and see *American Can Company v. Mansukhani*, 742 F.2d 314, 321 (7th Cir.

26   1984) (holding Rule 65 "expressly contemplates the issuance of *ex parte* temporary restraining

27   orders").

28       Regarding the issuance of temporary restraining orders, the Second Circuit Court of

     Appeals issued a writ of mandamus ordering the district court grant *ex parte* relief:

The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief.  Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened.  In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all.  *Id*. at 4, quoting *Developments In The Law – Injunctions*, 78 Harv. L. Rev. 994, 1060 (199965); see also *Fimab-Finanziaria MaglificioBiellese Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 2487, 249-250 (S.D. Fla. 1982) (recognizing the need for *ex parte* restraining orders in infringement cases and citing numerous unpublished orders granting such relief).

*Vuitton Et Fils S.A.,* 606 F.2d 1 (2d Cir. 1991).  The Court further explained:

[a]ssuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an *ex parte* temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required."  In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1) . . .

*Id*. at 3 (citations omitted.)

To obtain *ex parte* relief, a "Plaintiff need not show that a particular Defendant would not adhere to a temporary restraining order, but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity."  *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y. 1994) (citing *In The Matter Of: Vuitton, cited supra*).   In this case, U.S. based assets *are* being spirited offshore; Defendants have *already* engaged in fraudulent transfers. See Declaration of Marc J. Randazza ¶ 3-6 (hereinafter "Randazza Dec."), **Exhibits A-C.**

Plaintiffs have substantial equitable remedies awaiting them.   17 U.S.C. §§ 502-505.  However, remedial and legal relief is unavailable if Defendants remove all property and funds subject to Plaintiff's recovery beyond the reach of the Court.  Prior notice would "render fruitless further prosecution of the action." *Vuitton*, *cited supra*, 606 F.2d at 5.

Courts grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) a showing that notice is impossible because plaintiff in unaware of the defendant's identity or location; or, (2) a showing that proceeding *ex parte* is the only method by which the court can fashion effective final relief.  See *In The Matter Of: Vuitton,* 606 F.2d at 4.  To justify *ex parte* proceedings under

situation (2) above, the movant must show: (1) the adverse party historically disposes of evidence or violates court orders; *or,* (2) that persons similar to the adverse party have such a history.  See *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1998); *Vector Research v. Howard & Howard Attorneys, P.C.,* 1996 U.S. App. LEXIS 7492 (6th Cir. 1996).

When giving notice to the defendants will result in the dumping of goods or other nefarious deeds, it is appropriate to issue *ex parte* orders without notice.  *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248, 249 (S.D. Fla. 1982); *see also Vuitton,* 606 F.2d at 2-3.  *Ex parte* relief is sometimes the only effective tool for combating intellectual property theft when the defendants are overseas acting dishonestly.  See, e.g. *Reebok International, Inc. v. Marnatech Enterterprises, Inc.,* 970 F.2d 522 (9th Cir. 1992); *Vuitton v. White*, F.2d 569, 571-72 (3d Cir. 1991).  That is exactly what is happening here.  Plaintiffs are entitled to issuance of an *ex parte* temporary restraining order.  It is the only method of preserving the status quo because defendants have already taken affirmative steps to move assets beyond the court's reach in order to frustrate any order the court may issue.  See Randazza Dec. ¶ 6.

A TRO is appropriate.  Defendants' willful infringements and fraudulent transfers of assets make it critical that the Court order seizure before Defendants completely dissipate their funds and completely transfer their assets.  Additionally, where danger of destruction or hiding evidence exists, the federal rules permit issuance of *ex parte* seizure and impoundment orders, and this is the kind of situation that the rule was intended to address.  *See Universal City Studios, Inc. v. Ronnie Lorizzo***,** 9:03-CV-5182(SJ) (E.D.N.Y. Nov. 17, 1993); *see also The Walt Disney Company, v. Jim Garofalo*, 9:02-CV-5314 (E.D.N.Y. Nov. 12, 1992).

### III.  PLAINTIFF WILL PROVIDE ADEQUATE SECURITY IF HARDSHIP IS PROVEN

In the event that the Defendants **prove hardship**, they may propose a bond.  However, they bear the burden of proving hardship.  See *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d. 878, 882 (9th Cir. 2003) (in an asset freeze injunction, "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction").  The likelihood of harm to the Defendants is nil.  The only thing that a failure to grant the requested relief would do would be to allow the Defendants to continue their illegal enterprise and to

continue to move to frustrate any order this Court may issue.  The entry of the requested injunctive relief would be no different than an injunction against a thief commanding him to stop fencing his stolen goods.  A bond is neither necessary, nor proper.  However, if the Court is inclined to entertain a request for a bond, then it should hold an evidentiary hearing at which the Defendants should be required to meet their evidentiary burden to prove hardship.  A mere request for one, without sworn testimony specifically articulating the alleged harm and an opportunity to cross-examine witnesses, should not be entertained.

## IV. DEFENDANTS SHOULD BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION

The standard for issuance of preliminary injunction is equal to the standard for issuance of a temporary restraining order.  See *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). Plaintiffs have overcome the burden to meet these standards.  This Court should issue a show-cause order requiring Defendants demonstrate any countervailing argument the Court should not issue a preliminary injunction continuing the relief granted in the temporary restraining order.

## V.  THE COURT SHOULD APPOINT A RECEIVER TO TAKE POSSESSION OF THE DEFENDANTS' ASSETS

The only way to ensure that assets are available to Plaintiffs for recovery on their judgment and to ensure that the Defendants' profits, which equity will give to the Plaintiffs, is to appoint a receiver and order Defendants to turn over control of their websites to the receiver.   Their businesses can then function just as they do now, but they will not be able to resist collection on the value of their domains at the close of litigation.

The appointment of a receiver by a federal court is governed by federal law and federal equitable principles. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993). Rule 66 of the Federal Rules of Civil Procedure specifically provides that an action in which the appointment of a receiver is sought is governed by the federal rules.

Appointment of a receiver is an equitable remedy.  *Aviation Supply Corp.*, 999 F.2d at 316. Although no precise formula for determining when a receiver may be appointed exists, court typically consider several factors: 1) whether fraudulent activity has or will occur, 2) the validity of

the claim, 3) the danger that property will be lost or diminished in value, 4) inadequacy of legal remedy, 5) availability of less severe equitable remedy, and 6) the probability that a receiver may do more harm than good. *Id.* at 316-17 (willful nondisclosure and false disclosure to avoid a judgment credit supported appointment of a receiver); *Bookout v. Atlans Fin. Corp.*, 395 F. Supp. 1338, 1342 (N.D. Ga. 1974) (during action to enforce note and security agreement, financial manipulations raise sufficient evidence of fraud to warrant appointment of receiver), *aff'd* 514 F.2d 757 (5th Cir. 1975); *Sec. & Exch. Comm'n v. Kirkland*, Case No. 2011 WL 3119395 6:06-cv-183-Orl-28KRS (Doc. No. 10) (M.D. Fla. 2007); *Motion Dynamics, Inc. v. Nu-Best Franchising, Inc.*, 2006 WL 1050639 (M.D. Fla. 2006) ("Plaintiff has demonstrated … that Defendants have likely engaged in conduct that, without the appointment of a receiver, will post a substantial thread that the property at issue will be lost, squandered or significantly diminished in value.")  Consideration of these factors in the instant matter, particularly in light of Defendant's fraudulent transfers, supports the appointment of a receiver.

Liberty recommends Laura Pearson of Rimon Law Group for appointment as receiver of the domain names and assets at issue until the completion of this case.  Pearson is a Nevada-based intellectual property attorney.  She is admitted to practice before this court, the District of Nevada, and is currently serving as a receiver in *Righthaven v. Hoehn*, Civil Case No. 2:11-cv-00050 (D. Nev. 2011).

The undersigned counsel for Liberty has worked with Pearson in the past and believes that the interest of the court would best be served by her being appointed.  Because of her familiarity with the technologies at issue, Pearson possesses the time and experience necessary to oversee the domain names and funds within the United States.  Her fees and expenses would be submitted to the Court for approval and, following approval, be paid by the proceeds of the sale of Defendants' assets, if necessary.

\\

\\

\\

\\

## VI.  CONCLUSION

Defendants illegally distributed copies of the Plaintiffs copyrighted materials for profit. Defendants' conduct is patently indefensible.  It immediately and irreparably harms Plaintiffs.  The Court should grant Plaintiffs' motions for a temporary restraining order, order for seizure, order for expedited discovery, and order to show cause.  The Court should grant these requests *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to fashion effective relief at trial.

Dated: June 20, 2012

Respectfully Submitted,

s/Marc J. Randazza

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Liberty Media Holdings, LLC, a California
Corporation

Plaintiff,

vs.

FF Magnat Limited d/b/a Oron.com; Maxim
Bochenko a/k/a Roman Romanov; and John
Does 1-500,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:12-cv-01507

**DECLARATION OF MARC J. RANDAZZA
IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR *EX PARTE*
TEMPORARY RESTRAINING ORDER**

I, MARC J. RANDAZZA, do hereby declare under the penalty of perjury:

1. I am over the age of 18 and am a resident of the State of Nevada.

2. I have personal knowledge of the facts herein, and if called as a witness, could testify competently thereto.

3. On May 30, 2012, I provided to Oron's counsel, Stevan Lieberman, Esq., a draft of a complaint that I was preparing to file against the Defendants. Since that time, I have been corresponding via email and communicating via telephone with Oron's attorneys to attempt to either reach amicable settlement or to arrange for the handling of these claims in Mediation.

1    4.    On June 20, 2012, I was made aware, by a third party, that FF Magnat Limited is
2  transferring large amounts of funds from their PayPal account to a bank account in Hong Kong. A
3  true and correct copy of the proof of this transfer is attached as Exhibit C.

4    5.    It is my position that the transfer of this domain name and the transfer of these funds
5  demonstrates that the Defendants and their attorneys were negotiating potential settlement and
6  mediation in bad-faith. I further believe that these assets are being intentionally moved offshore for
7  the express intent of keeping the company's valuable property away from the reach of U.S. Courts.

8    6.    I verify that the fact alleged in the complaint pertaining to the Defendants' copyright
9  infringement are, to the best of my knowledge, true and correct.

10

11  Dated this ___ day of June, 2012 in Las Vegas, Nevada.

12

13

14                                  Marc J. Randazza

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

9
10
11
12
13
14
15
16
17
18

Liberty Media Holdings, LLC, a California )
Corporation )
 )
 )
Plaintiff, )
 )
vs. )
 )
 )
FF Magnat Limited d/b/a Oron.com; Maxim )
Bochenko a/k/a Roman Romanov; and John )
Does 1-500, )
 )
 )
Defendants. )
 )

Case No.: 2:12-cv-01507

**DECLARATION OF ERIKA DILLON IN**
**SUPPORT OF PLAINTIFF'S EMERGENCY**
**MOTION FOR *EX PARTE* TEMPORARY**
**RESTRAINING ORDER**

19
20
21

I, MARC J. RANDAZZA, do hereby declare under the penalty of perjury:

22
    1.    I am over the age of 18 and am a resident of the State of Nevada.

23
    2.    I am employed by Plaintiff Liberty Media Holdings, LLC as an in-house paralegal
24
and online investigator.

25
    3.    I have personal knowledge of the facts herein, and if called as a witness, could
26
testify competently thereto.

27
    4.    It is my regular practice to record WhoIs information for various websites that may
28
become the targets of litigation.  The WhoIs databases record the publicly available record of
contact information for different websites and through which companies these websites are
registered.

1    5.    On January 12, 2012, I recorded the WhoIs information for Oron.com.  A true and
2 correct copy of this information is attached to the instant motion as Exhibit B.

3    6.    On June 20, 2012, I again recorded the same WhoIs information for Oron.com.  A
4 true and correct copy of this information is attached to the instant motion as Exhibit A.

5    7.    The information available in Exhibit A indicates that on June 12, 2012, the
6 Oron.com website was moved from registration with Network Solutions, LLC, an American
7 company, to registration with EuroDNS S.A., a European company.

8

9 Dated this _20th_ day of June, 2012 in Las Vegas, Nevada.

10

11

12                                              Erika Dillon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**Open a FREE Account** | Log in | Help

## DomainTools

oron.com | Whois Search | Search

More Domains
Reverse Whois
History Details
Get Notified
Trademark Monitor
Screenshot History

Whois > Oron.com

Tweet | Like

# Oron.com Whois Record

Ads by Google

**Meet Singles over 50** Greater Las Vegas Area Dating Relationship-minded Singles Only! MatureProfessionalSingles.org

**Send Big Files - No Limit** Send & Store Large Files Instantly! Won "Top 10 Tools" Award - Try Free www.ShareFile.com

**Job Openings** Search For Job Openings. Apply For a Position Today! www.findtherightjob.com

**Download Google Chrome** A free browser that lets you do more of what you like on the web www.google.com/chrome

**See Who's Online Now** Hundreds of Singles Near You. View Pics, Wink & Flirt for Free! Match.com

Ads by Google

**University of Phoenix®**

Online and Campus Degree Programs. Official Site - Classes Start Soon.
Phoenix.edu

**$1.99 Hosting at GoDaddy**

w/ Free Setup & 24/7 support! 4GH Hosting – exclusive to Go Daddy
GoDaddy.com

**Top 2012 Online Grants**

Grant Funding May Be Available See If You Qualify!
www.ClassesUSA.com

**Buy Cheap Flight Tickets**

Low Airfare + Great Deals + Instant Savings.Book Now & Save Up To 65%.
www.CheapOair.com/ Cheap-Flights

**ITT Tech - Official Site**

100 + Locations & Online Programs Official ITT Tech Site. Get Info!
www2.itt-tech.edu

**Brooklyn Soundstages**

13,000 square feet + parking, Ample power + heating
www.EastOfHollywood NY.com

| Whois Record | Site Profile | Registration | Server Stats | My Whois |
|---|---|---|---|---|

Reverse Whois: **"WhoisPrivacy Limited" owns about**   **27,290 other domains**
Registrar History: **5 registrars**
NS History: **10 changes** on **24** unique name servers over **6** years.
IP History: **56 changes** on **24** unique IP addresses over **8** years.
Whois History: **966 records** have been archived since **2005-06-06** .
Reverse IP: **1 other site is** hosted on this server.

Log In or Create a FREE account to start monitoring this domain name



Image Supplied By DomainTools.com

```
Domain: ORON.COM
Registrar: Eurodns S.A.

Registrant:
Company: WhoisPrivacy Limited
Name: Privacy Whois
Address: 3/F Jonsim Place, 228 Queen's Road East
City: Wanchai
Country: HONG KONG
Postal Code: HK

Administrative Contact:
Company: WhoisPrivacy Limited
Name: Privacy Whois
Address: 3/F Jonsim Place, 228 Queen's Road East
City: Wanchai
Country: HONG KONG
Postal Code: HK
Phone: +852 5808 1344
Fax: +852 5808 1345
Email: 18f70c2e39672c62@whoisprivacy.com

Technical Contact:
Company: WhoisPrivacy Limited
Name: Privacy Whois
Address: 3/F Jonsim Place, 228 Queen's Road East
City: Wanchai
Country: HONG KONG
Postal Code: HK
Phone: +852 5808 1344
Fax: +852 5808 1345
Email: 18f70c2e39672c62@whoisprivacy.com

Original Creation Date: 2001-06-01
Expiration Date: 2020-05-31

Status:
clientTransferProhibited
```



Country TLDs | General TLDs

Available domains for registration:

☐ Oron.fr          Register
☐ Oron.jp          Register
☐ Oron.tw          Register

**Register All Selected >**

**Easy Build storage**

Save Do-It-Yourself! Summer Savings Free Custom Quote Now 866-200-9657
HansenPoleBuildings .com/StormProof

**Rackspace Cloud Servers**

Cloud Hosting for Servers, Files & Load Balancers. Sign Up Today!
www.Rackspace.com/ Cloud

**School Grants For Mothers**

Improve Your Life. Moms May Qualify For Grants To Start School Online.
schools.classesandc areers.com

```
Nameserver Information:
Nameserver: ns1.oron.com
Nameserver: ns2.oron.com
```

Backorder This Domain

Whois Directory

a b c d e f g h i j k l m n o p q r s t u v w x y z 0 1 2 3 4 5 6 7 8 9



Searching for **Oron.com - Oron**?

1. **We Found Oron oron**
   Instant-Address, Phone, Age & More. Search for **Oron** oron Now!
   www.Intelius.com

2. **Download Whols**
   Download Latest Version 100% Free Download Whols Riht Now!
   Winportal.com/whois

3. **Investigate any Domain**
   Free Domain and DNS reports. Owner info, provider info, page rank etc
   www.abongo.com

4. **Strange Berry Burns Fat.**
   Strange Raspberry extract makes women thinner in thighs, face and arm..
   ConsumerLifeStyle.org

AdChoices ▷

AdChoices ▷

Memberships   |   Developer API   |   About Us   |   Blog   |   Desktop Tools   |   Terms of Service   |   Privacy   |   Support   |   Careers   |   Contact Us   |   Site Map

© **2012 DomainTools, LLC** All rights reserved.



**Open a FREE Account** | Log in | Help

**Domain**Tools

oron.com    Whois Search    Search

Ads by Google

**University of Phoenix®**

Online and Campus Degree Programs. Official Site - Classes Start Soon.
Phoenix.edu

**$1.99 Hosting at GoDaddy**

w/ Free Setup & 24/7 support! 4GH Hosting – exclusive to Go Daddy
GoDaddy.com

**Top 2012 Online Grants**

Grant Funding May Be Available See If You Qualify!
www.ClassesUSA.com

**Buy Cheap Flight Tickets**

Low Airfare + Great Deals + Instant Savings.Book Now & Save Up To 65%.
www.CheapOair.com/Cheap-Flights

**ITT Tech - Official Site**

100 + Locations & Online Programs Official ITT Tech Site. Get Info!
www2.itt-tech.edu

**Brooklyn Soundstages**

13,000 square feet + parking, Ample power + heating
www.EastOfHollywoodNY.com

More Domains
Reverse Whois
History Details
Get Notified
Trademark Monitor
Screenshot History

Whois > Oron.com

Tweet    Like

# Oron.com Whois Record

Ads by Google

**Meet Singles over 50**  Greater Las Vegas Area Dating Relationship-minded Singles Only!  MatureProfessionalSingles.org

**Send Big Files - No Limit**  Send & Store Large Files Instantly! Won "Top 10 Tools" Award - Try Free  www.ShareFile.com

**Job Openings**  Search For Job Openings. Apply For a Position Today!  www.findtherightjob.com

**Download Google Chrome**  A free browser that lets you do more of what you like on the web  www.google.com/chrome

**See Who's Online Now**  Hundreds of Singles Near You. View Pics, Wink & Flirt for Free!  Match.com

| Whois Record | Site Profile | **Registration** | Server Stats | My Whois |
|---|---|---|---|---|



| | |
|---|---|
| ICANN Registrar: | **EURODNS S.A** |
| Created: | 2001-06-01 |
| Expires: | **2020-06-01**   Backorder Now |
| Updated: | 2012-06-12 |
| Registrar Status: | clientTransferProhibited |
| Name Server: | NS1.ORON.COM (has **1 domains**) |
| | NS2.ORON.COM (has **1 domains**) |
| Whois Server: | whois.eurodns.com |
| General TLDs: | Oron.com  (registered and active website) |
| | Oron.net  (registered and active website) |
| | Oron.org  (registered and active website) |
| | Oron.biz  (registered and active website) |
| | Oron.info  (registered and active website) |
| | Oron.us  (registered and no website) |

Image Supplied By DomainTools.com

EURODNS .COM.UK .BIZ .DE PROMO
GRAB YOUR .DE DOMAIN
FOR ONLY 4EUR / $6.00*
*For indication Purposes

.CO  FIND THE WEB ADDRESS YOU REALLY WANT.
start your search here .CO   SEARCH

| Country TLDs | General TLDs |
|---|---|

Available domains for registration:

| ☐ Oron.fr | Register |
|---|---|
| ☐ Oron.jp | Register |
| ☐ Oron.tw | Register |

**Register All Selected >**

**Easy Build storage**

Save Do-It-Yourself! Summer Savings Free Custom Quote Now 866-200-9657

HansenPoleBuildings.com/StormProof

**Rackspace Cloud Servers**

Cloud Hosting for Servers, Files & Load Balancers. Sign Up Today!

www.Rackspace.com/Cloud

**School Grants For Mothers**

Improve Your Life. Moms May Qualify For Grants To Start School Online.

schools.classesandcareers.com

Whois Directory

a b c d e f g h i j k l m n o p q r s t u v w x y z 0 1 2 3 4 5 6 7 8 9



Searching for Oron.com - Oron?

1. **We Found Oron oron**
   Instant-Address, Phone, Age & More. Search for **Oron** oron Now!
   www.Intelius.com

2. **Download Whols**
   Download Latest Version 100% Free Download Whols Riht Now!
   Winportal.com/whois

3. **Investigate any Domain**
   Free Domain and DNS reports. Owner info, provider info, page rank etc
   www.abongo.com

4. **Strange Berry Burns Fat.**
   Strange Raspberry extract makes women thinner in thighs, face and arm..
   ConsumerLifeStyle.org

AdChoices ▷

AdChoices ▷

© 2012 DomainTools, LLC All rights reserved.



# EXHIBIT B

Oron.com – Welcome to Oron



You are logged in as barebacker85  |  Log out  |  Help



oron.com   Whois Search   Search

| Overview | Whois Lookup | Reverse Whois | Whois History | Hosting History | Screenshot History | Name Server Report | Reverse IP | DNS Tools |

## Whois Record For Oron.com ✏

**Acquire this Domain Name**

Tweet    Like    1k

Search Whois Records   [                    ]   Search

| Whois Record | Site Profile | Registration | Server Stats | My Whois |

### Whois Record

**Related Domains For Sale or At Auction**   1  2  3  More >

AdoRon.com ($1,500)         KoronIsSportsaPParel.com ($1,800)   ToronBang.com (Bid)
Oron.us ($1,000)            TorontoMovieGuide.com (Bid)         Oronsko.com ($888)

Reverse Whois:   **"FF MAGNAT Limited" owns about** 3 other domains
Email Search:    jd88h2ma87f@networksolutionsprivateregistration.com  is associated with about **2 domains**

Registrar History:   5 registrars
NS History:          9 changes on **8** unique name servers over **6** years.
IP History:          56 changes on **24** unique IP addresses over **8** years.
Whois History:       806 records have been archived **since 2005-06-06** .
Dedicated Hosting:   oron.com is hosted on a **dedicated server**.

🔭  Monitor This Domain Name

```
Registrant:
FF MAGNAT Limited
    ATTN ORON.COM
    care of Network Solutions
    PO Box 459
    Drums, PA.  US  18222

    Domain Name: ORON.COM

    Administrative Contact, Technical Contact:
    Limited, FF MAGNAT      jd88h2ma87f@networksolutionsprivateregistration.com
       ATTN ORON.COM
       care of Network Solutions
       PO Box 459
       Drums, PA 18222
       US
       570-708-8780

    Record expires on 01-Jun-2019.
    Record created on 08-Jul-2010.

    Domain servers in listed order:

    NS43.WORLDNIC.COM          205.178.190.22
    NS44.WORLDNIC.COM          206.188.198.22
```



Last checked November 30, 2011

Queue Screenshot for Update

**You the smart one?** Let us
show you the job you dream of



MORE THAN A DOMAIN NAME!
*TEL ONLY 7EUR / $8.00*
*For Indication Purposes

**Country TLDs**   **General TLDs**

Available domains for registration:

| ☐ Oron.at | Register |
| ☐ Oron.dk | Register |
| ☐ Oron.fr | Register |
| ☐ Oron.jp | Register |
| ☐ Oron.mx | Register |
| ☐ Oron.se | Register |
| ☐ Oron.tw | Register |

**Register All Selected >**



Memberships | Developer API | About Us | Blog | Desktop Tools | Terms of Service | Privacy | Support | Careers | Contact Us | Site Map

© **2012 DomainTools, LLC** All rights reserved.



# EXHIBIT C

Dear FF MAGNAT LIMITED,

You asked us to transfer $852,278.58 HKD from PayPal to your bank account, and we're processing it now. It usually takes 3 - 6 working days for transfers to be completed which means that you should see the money in your bank account by .

Here are the details:

| | |
|---|---|
| Total amount transferred | $852,278.58 HKD |
| Bank account | HSBC x-4838 |
| Transaction ID | 4BS319827E305133M |

PayPal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Liberty Media Holdings, LLC, a California     )     Case No.: 2:12-cv-01507
Corporation                                  )
                                             )     **[PROPOSED] ORDER**
Plaintiff,                                   )
                                             )
vs.                                          )
                                             )
FF Magnat Limited d/b/a Oron.com; Maxim      )
Bochenko a/k/a Roman Romanov; and John       )
Does 1-500,                                  )
                                             )
Defendants.                                  )
                                             )

        The Plaintiff has shown a substantial likelihood of success on merit of its claims sufficient

for the Court to issue a limited temporary restraining order.  Plaintiff alleges copyright

infringement,  contributory  copyright  infringement,  vicarious  copyright  infringement  and

inducement of copyright infringement.   Initial Complaint.   To show a substantial likelihood of

prevailing on the merits of a copyright infringement claim, Plaintiff must show that: (1) it owns the

copyright to which its infringement claims relate; and, (2) Defendants violated one of the Plaintiff's

exclusive rights in the works. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340,

361 (1991); *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1232-33 (11th Cir. 2010); *Sid & Marty*

*Kroft Television Prods. Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1162 (9th Cir 1977);

*Educational Testing Servs. v. Katzman,* 793 F.2d 533, 538 (3d Cir. 1977).  These two factors have

been clearly established by the Plaintiff.

1    Finding that the Plaintiff has good cause for the relief requested herein, it is hereby ordered

2    that:

3        1.    Any bank or financial institution in the United States with an account belonging to

4              FF Magnat Limited, Oron.com, Bochenko, Romanov, or anyone acting

5              demonstrably in concert with them, will immediately freeze those funds from being

6              withdrawn for a period of thirty (30) days until a hearing on Preliminary Injunction

7              can be held;

8        2.    PayPal, Inc. will immediately freeze any and all funds in any FF Magnat Limited or

9              Oron.com accounts from being withdrawn for a period of thirty (30) days until a

10             hearing on Preliminary Injunction can be held;

11       3.    CCBill, LLC will immediately freeze any and all funds in any FF Magnat Limited

12             or Oron.com accounts from being withdrawn for a period of thirty (30) days until a

13             hearing on Preliminary Injunction can be held;

14       4.    AlertPay will immediately freeze any and all funds in any FF Magnat Limited or

15             Oron.com accounts from being withdrawn for a period of thirty (30) days until a

16             hearing on Preliminary Injunction can be held;

17       5.    VeriSign will freeze the www.oron.com domain name from any further transfer;

18       6.    All Defendants are hereby enjoined from disgorging or dissipating any funds,

19             property, domain names, or other assets until further notice.

20    **IT IS HEREBY ORDERED.**

21

22    Dated: _____, 2012            _____

23                                              United States District Judge

24

25

26

27

28

2
[Proposed] Order