1  **DAVID S. KAHN** (Nevada Bar No. 7038)
   **SHERI M. THOME** (Nevada Bar No. 8627)
2  **J. SCOTT BURRIS** (Nevada Bar No. 010529)
   **WILSON ELSER MOSKOWITZ EDELMAN & DICKER** LLP
3  300 South Fourth Street, 11th Floor
   Las Vegas, NV  89101
4  (702) 727.1400; FAX (702) 727-1401
5  david.kahn@wilsonelser.com
   sheri.thome@wilsonelser.com
6  j.scott.burris@wilsonelser.com

7  **KENNETH E. KELLER** (CA Bar No. 71450) (*pro hac vice in process*)
   **STAN G. ROMAN** (CA BAR. NO. 87652) (*pro hac vice in process*)
8  **MICHAEL D. LISI** (CA Bar No. 196974) (*pro hac vice in process*)
9  **KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP**
   555 Montgomery Street, 17th Floor
10 San Francisco, CA  94111
    (415) 249-8330; FAX (415) 249-8333
11 kkeller@kksrr.com
   sroman@kksrr.com
12 mlisi@kksrr.com

13
   **STEVAN LIEBERMAN** (Washington, DC Bar No. 448218) (*pro hac vice in process*)
14 Greenberg & Lieberman, LLC
   2141 Wisconsin Ave., NW Suite C2
15 Washington, DC 20007
   (202) 625-7000; fax: 202-625-7001
16 stevan@APLegal.com

17 Attorneys for Defendant FF MAGNAT LIMITED
18

19
20                     **UNITED STATES DISTRICT COURT**
21                          **DISTRICT OF NEVADA**

22 | LIBERTY MEDIA HOLDINGS, LLC, a California Corporation, | Case No. CV 2:12-cv-01057 |
23 | | |
   | Plaintiff | **DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE** |
24 | | |
25 | vs. | |
26 | FF MAGNAT LIMITED d/b/a/ ORON.COM; | |

27 ────────────────────────────────────────────
   DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
28 FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
   THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
   CASE NO. 2:12-cv-01057

333467.5

| | |
|---|---|
| MAXIM BOCHENKO a/k/a/ ROMAN ROMANOV; and JOHN DOES 1 - 500.<br><br>Defendants. | **HEARING ON PRELIMINARY INJUNCTION**<br><br>Judge:  Hon. Gloria N. Navarro |

Without intending to waive any defenses it may have based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited dba Oron.com ("Oron") brings this emergency motion for partial relief from the Temporary Restraining Order entered by the Court on June 21, 2012, and for a brief extension of time to respond to the Court's Order to Show Cause on Plaintiff Liberty Media Holdings LLC's ("Liberty Media" or "Plaintiff") motion for preliminary injunction.[1]

Specifically, Oron requests that the Court amend the Temporary Restraining Order to allow Oron access to its funds held by PayPal so that Oron may pay legal fees to defend itself in this action and in a related action brought by Plaintiff in Hong Kong, as well as pay certain limited business expenses that are necessary to keep operating. Oron proposes that the Court allow PayPal to transfer €300,000 (approximately $375,00 U.S. dollars) in Oron's account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC of Washington, D.C, and permit those funds to be disbursed to pay legal fees and costs, and business expenses necessary to keep the company

---

[1] Defendant Oron is specially appearing at this juncture to address a specific concern regarding the Temporary Restraining Order that was entered on June 21, 2012, based on an ex parte application and without providing defendants the opportunity to be heard. By making this request, Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service. To the contrary, Oron fully intends to raise its challenges to personal jurisdiction and service in its answer to Plaintiff's motion for a preliminary injunction, and also expressly reserves its right under the Federal Rules of Civil Procedure to challenge personal jurisdiction and service by way of a motion to dismiss the complaint in this action. The law provides that an opposition to a preliminary injunction motion under circumstances such as those present here does not constitute a waiver. *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (finding that the defendant had not waived its venue and personal jurisdictional defenses because it had raised them "in its first responsive pleading," which was its response to plaintiff's preliminary injunction motion); *Bear Stearns Cos. Inc. v. Lavalle*, 2000 WL 34339833 at *2 (N.D. Tex.) (same). *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D. Cal. 2008) (citing *Hendricks* and finding waiver of venue objection because defendant did not raise it in its preliminary injunction opposition).

2

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

operating. In addition, Oron requests a one-week extension of the briefing deadlines and the hearing on Plaintiff's request for a preliminary injunction to enable its counsel to adequately address the significant issues presented by that motion.

In the alternative, if the Court declines to amend the Temporary Restraining Order as requested, Oron requests that the Court advance the hearing on Plaintiff's motion for preliminary injunction to this Friday, June 29, 2012, so that the issue of the preliminary injunction can be resolved before Oron is required to pay its hosting providers or face the shutdown of its business.

## I. INTRODUCTION

Oron is a Hong Kong company that operates a "cloud" based data storage business. The plaintiff is apparently a producer of pornographic video material, some of which third persons apparently stored on Oron's computer servers. Very little of Oron's business comes from the United States and Plaintiff's videos comprise an infinitesimal portion of the data that is stored by users on Oron's servers. Oron contends that the Plaintiff's suit is entirely without merit on a number of grounds, and is confident that it will establish that as this case proceeds.

Nevertheless, without notice to Oron and without giving Oron an opportunity to be heard, Plaintiff obtained a Temporary Restraining Order ("TRO") freezing all of Oron's assets. If unmodified the TRO threatens to prevent Oron from defending itself in this action. Moreover, if Oron is barred from disbursing any of its funds and cannot pay its necessary expenses, it will be put out of business even before this Court hears the pending preliminary injunction motion.

Plaintiff has also commenced legal proceedings in Hong Kong, where Oron is domiciled, and on an *ex parte* basis obtained there a temporary restraining order. Unlike the order here, the Hong Kong court's order expressly allows Oron to expend funds for it legal defense and necessary business expenses. Oron, however, is prohibited from doing that by this Court's order.[2]

---

[2] Plaintiff's counsel is apparently sending notices to entities with whom Oron does business essentially demanding that they cease business with Oron and/or that those entities 'preserve" their records, in an obvious attempt to destroy Oron's business relationships.

3
DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

To be clear, Oron believes there are ample grounds to deny Plaintiff's request for a preliminary injunction freezing its assets, and intends to fully address those grounds in its answer to the Court's Order to Show Cause. The relief requested by this Emergency Motion is far more narrow: Oron simply seeks the ability to pay its lawyers to represent it in this case and to pay the business expenses necessary to keep it in business until such time as this Court rules on the preliminary injunction motion. Not only is that request reasonable in scope, it is amply supported by case law holding that a defendant faced with an asset freezing injunction should, except in exceptional circumstances not present here, be permitted access to funds in order to defend itself and pay necessary business expenses.

Moreover, given the myriad of complex legal issues to be addressed in Oron's upcoming answer to the Order to Show Cause – including issues of personal jurisdiction and improper service of process, issues of whether this case should proceed in Hong Kong rather than in this Court, the lack of irreparable harm, and the unlikelihood that Plaintiff will prevail on the merits of its copyright infringement claims (including the applicability of the safe harbor provisions of the Digital Millennium Copyright Act) – the matter warrants a one-week extension of the briefing schedule and hearing date on Plaintiff's request for a preliminary injunction. The Court's TRO was only signed last Thursday, June 21, 2012 and Oron's opposition briefing on the motion is presently due this Wednesday, June 27, 2012. Plaintiff is seeking relief that will effectively put Oron out of business, and Oron should be afforded sufficient time to analyze and address the complex legal issues raised by Plaintiff's request without the TRO itself serving to put Oron out of business before Oron even has a chance to be heard by this Court.

## II.     BACKGROUND

While Oron cannot address all of the numerous inaccuracies and misstatements contained in the allegations of the Complaint, a brief statement of factual background is appropriate here.

### A.     Factual Background

Defendant FF Magnat Limited is a legitimate business located in Hong Kong, which owns the

4

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

domain name, Oron.com ("Oron").[3] Oron provides file sharing and data storage services throughout the world and, like well-known "cloud services" offered by such companies as Apple ("iCloud"), Amazon, Google, Hewlett Packard and DropBox, Oron offers its users the ability to upload and store large amounts of data on remote and secure servers. Oron assigns a unique URL web address to the user's data for access purposes. However, the user has complete control over his or her documents and files and makes the decision whether to share those documents and files with others. That is Oron's business model, and it is that business model which Plaintiff is attacking in this action. Yet that attack, including Liberty Media's false and disparaging allegations of "piracy", "theft" and "conspiracy," is based on little more than Plaintiff's misstatement of the relevant facts.

Liberty Media is the parent company of and does business as CORBIN FISHER®. Although the complaint alleges that Liberty Media "produces, markets and distributes adult-oriented audiovisual works," that description of Liberty Media's business is an understatement. Another federal court has described Liberty Media as "a distributor of lawful, albeit hardcore pornography." *Liberty Media Holdings, LLC vs. Swarm Sharing Hash File et al*, 821 F.Supp.2d 444, 447 n.2 (D. Mass. 2011). Liberty Media and CORBIN FISHER® have been described as "America's most litigious . . . porn studio," and produces and distributes "gay hard core pornography."[4] In addition, a simple internet search reveals that Liberty Media has filed numerous "mass defendant" lawsuits alleging copyright infringement against a host of companies as well as hundreds of individuals, including many of Liberty Media's own customers. It appears that Liberty Media is developing a reputation as a "troll litigator" in the arena of copyright infringement.[5]

---

[3] The allegations of the Plaintiff's complaint regarding the "ownership" of Oron by "individuals" in the United States and its alleged "contacts" with this jurisdiction are not accurate. Contrary to Plaintiff's allegations, Defendant Bochenko is not an owner, founder, officer, director, employee or controlling person of Oron.

[4] *See* http://www.queerty.com/did-americas-favorite-bareback-studio-spend-500k-on-gay-xxx-just-to-block-it-20111007/.

[5] There will be a question in this case whether the Copyright Act's protection should even extend to plaintiffs like Liberty Media and the hard core pornography that they distribute.

5

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

Oron runs its business through a website called Oron.com. As noted, Oron.com is simply a file sharing system. Oron provides these services through a variety of servers maintained by various hosting providers. If Oron were to lose the ability to provide these servers, its business would be shut down and all of its users would immediately lose access to their files. Oron pays these hosting providers on a monthly basis and the invoices for these providers are due to be paid on June 30th. If Oron's assets are frozen and it cannot pay its hosting providers, its business will effectively shut down as of July 1, 2012.

Oron's file storage system allows anyone to upload and store files. Oron strictly maintains the privacy of its customers. It does not index the materials which are uploaded and it maintains no catalogue or search function within the website. For the storage services that it offers, Oron charges its customers a monthly fee if they choose to use its premium services of faster uploading/downloading and more and longer storage. Visitors to Oron.com, whether for free or as paying premium customers, do not have access to other user's materials. The individual who initially uploads and stores his or her material has the sole control over the material which they upload and store and decides whether to share any of that material with anyone else. Oron is not involved in any decision by its customers to share anything with anyone else. Notably, this is not a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws. Oron plays no active role in the uploading and sharing of material between its customers and it does not "publish" anything, contrary to the allegations of the Complaint.

Oron offers its file storage services to individuals throughout the world. The allegation in the Complaint that Oron's "largest contingent of users are from the United States" is not true. It can be determined from publicly available information, such as WHOIS domain tools, (*see* Site Profile on http://whois.domaintools.com/oron.com), that only 13.4% of Oron's visitors to its website come from the United States. The majority of its visitors come from Europe and Asia. Moreover, the extent to which Plaintiff's files are stored on Oron's servers is extremely small. It is estimated that Plaintiff's files constitute less than one-tenth of one percent of all the data stored on Oron.com.

6

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

Thus, more than 99.9% of Oron's customers, none of whom have been alleged to infringe anyone's intellectual property rights, will likely lose access to their stored files if the TRO is not modified.

### B.    Procedural History

On June 20, 2012, Plaintiff filed its complaint in this action, and at the same time filed its Emergency Motion for Ex Parte Temporary Restraining Order, Order for Seizure, and Appointment of Receiver, and Order to Show Cause Re Preliminary Objection ("Motion"). Plaintiff sought ex parte relief, without formal notice to Oron of defendant Maxim Bochenko (collectively, where appropriate, "Defendants"), based on bare allegations that Defendants had "already taken affirmative steps to move assets beyond the court's reach in order to frustrate any order the court may issue." (Motion at 10:11-14).

On June 21, 2012, the Court entered an order (e-Docket 11) ("Order") granting the Motion in part, and freezing all of Defendants' assets pending the hearing on Plaintiff's request for a preliminary injunction, including all assets in any U.S. bank or financial institution, and any funds held for Oron by PayPal, Inc., CCBill, LLC, and AlertPay. The Court further ordered VeriSign to "freeze the www.oron.com domain name from any further transfers, and enjoined Defendants "from disgorging or dissipating any fund, property, domain names, or other assets until further notice."[6] *Id.* at 2-3. Finally, the Court ordered Plaintiff to immediately serve its complaint, motion papers, and the Court's Order, and set a July 3, 2012 hearing on the request for a preliminary injunction. Defendants are currently required to file their answering papers by 5:00 PM on June 27, 2012.[7]

In addition to this lawsuit, Plaintiff has instituted legal proceedings against Oron in Hong Kong. According to Plaintiff, it has already obtained an order, similar in some respects to the Order

---

[6] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged." However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

[7] Apparently Plaintiff has "served" the complaint and restraining order on Bochenko, who is not an authorized agent of Oron for service of process. Furthermore, he is not an officer, director, owner, employee or shareholder of Oron.

7

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

here, freezing Oron's assets ($3,00,000) in Hong Kong (the "Hong Kong Order"). (Declaration of Stevan Lieberman in Support of Emergency Motion ("Lieberman Decl."), filed herewith, ¶ 4 & Ex. A). Importantly, however, the Hong Kong Order does not restrict Oron from "disgorging or dissipating" any of its funds, but instead expressly allows for the payment of legal fees and business expenses.

### III.   ARGUMENT

#### A.   The Court Should Modify the Temporary Restraining Order to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense To This Lawsuit

As written, the Court's Order places severe restrictions on Oron's ability to access the funds in its accounts with various banks and payment services, including PayPal.[8] Not only does that Order require those financial institutions and payments services to "freeze" any assets in Oron's accounts, but it also enjoined Oron from "disgorging or dissipating any funds, property, domain names, or other assets until further notice." (Order at 3:6-7.) Read literally, the Order prohibits Oron from paying attorneys' fees or legal costs to defend itself in this action and related legal proceedings in Hong Kong. It also prohibits Oron from paying its employees or satisfying other legitimate business expenses, such as the monthly invoices from hosting providers for Oron's servers.

In light of that Order, Defendant is placed in the difficult position of having to defend itself in this action without having access to the funds it needs to pay legal counsel. Moreover, under the terms of the Order, Oron is not permitted to withdraw the funds necessary to pay Hong Kong

---

[8] That Order was apparently predicated on the allegation that Oron was attempting to transfer funds out of the United States in order to take them out of this Court's jurisdiction, including a copy of an apparently redacted email from PayPal to Oron concerning the transfer of certain funds. There is no evidence that the transfer reflected in that email was anything outside the ordinary course of business, since Oron is domiciled in Hong Kong and it would be reasonable for it to transfer its funds there. Curiously, Plaintiff offers no details as to how it obtained a private email between Oron and its payment service, PayPal, and provides no foundation for that inadmissible document. As Oron will address more fully in its answer to the Order to Show Cause on Plaintiff's request for a preliminary injunction, it appears that the email in question was improperly obtained by "hacking" into Oron's email accounts. It is inappropriate for Plaintiff to seek relief in equity given that conduct and its own unclean hands.

8

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

counsel in the action brought by Plaintiff. Given this, the Court should modify the Order to permit Oron to transfer funds from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC, and to permit Oron to use those funds to pay the legal fees incurred in the defense of those actions as well as reasonable business expenses, which are essential for Oron to remain in business.

### 1.   Ninth Circuit Precedent Supports Oron's Request

The law in the Ninth Circuit and elsewhere addressing asset freezing injunctions amply supports Oron's request for access to its funds in order to pay for its legal defense. For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing of any of their assets. In balancing the relative hardships to determine the propriety of the injunction, the Court relied upon the fact that the district court had provided that the Marcoses could use their assets "to cover normal living expenses and legal fees." *Id.* at 1362.

The Ninth Circuit followed that holding more recently in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009). The *Johnson* court upheld a challenge to a district court's asset freezing injunction because the injunction was limited to the assets in the defendant's possession in which the plaintiffs had an equitable interest, and because the injunction expressly allowed assets to be used for "normal living expenses and legal fees." *Id.* at 1085-1086; *see also Fidelity National Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011 ) (relying on *Johnson v. Courtier* to fashion asset freezing injunction that allowed defendant to use personal funds to cover living expenses).

Similarly, in *Federal Savings & Loan Insurance Corp.*, 835 F.2d 554 (5th Cir. 1987), the Fifth Circuit held that an asset freezing injunction that allowed individual defendants only $3,500 per month for living expenses and legal fees was improper because it did not allow enough money for an adequate defense. As the Fifth Circuit explained:

> This suit was brought to establish the defendants' wrongdoing; the court

9

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

> cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. Thus we conclude that some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt [i.e., unfrozen] assets . . . ."

*Id.* at p. 565 (citation omitted).[9]

Cases in the Ninth Circuit and elsewhere have also held it appropriate to allow a business entity defendant to pay necessary business expenses out of frozen assets. *See, e.g., Securities and Exchange Commission v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003) (injunction upheld where "under the terms of the freeze order, legitimate corporate business expenses may be paid from frozen assets…"); *United States v. Brown*, 988 F. 2d 658 (district court allowed defendant to use frozen funds for business expenses; Sixth Circuit accepted that but remanded for district court to ensure only funds that plaintiff might ultimately recover were frozen); *Federal Trade Commission v. QT, Inc.*, 467 F.Supp.2d 863 (N.D. Ill. 2006) (defendants allowed to pay out of frozen assets necessary business expenses and legal fees); *Securities and Exchange Commission v. Dodwell*, 2002 WL 236687 (W.D. Va. 2002) (court grants request to modify freeze order to allow for payment of ordinary business expenses).

Moreover, Liberty Media has obtained an order from a Hong Kong court freezing up to $3 million of Oron's assets. (Lieberman Decl., ¶ 4 & Ex. A). Unlike the Order here, however, the Hong Kong order allows funds to be used for legal fees and business expenses. (*Id.* at ¶ 12) ("This Order does not prohibit the Defendant from spending a reasonable sum toward its ordinary and proper business expenses and on legal advice and representation."). However, because this Court's Order as presently written prohibits the Defendants from "disgorging or dissipating any funds" for any purpose, Oron is unable to use funds for legal fees as expressly permitted by the court in Hong

---

[9] While there is some authority that, in appropriate cases, a district court has discretion to forbid or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995), the cases so holding have involved circumstances going far beyond those presented in this case, and are thus inapposite.

10
DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

Kong, where Oron is domiciled.

### 2. The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and Thus Preparation of Oron's Defense Will Require Significant Legal Expense

Oron's request should also be granted because it is reasonable in scope, and seeks only the release of sufficient funds to permit Oron to respond to Plaintiff's request for a preliminary injunction, and to keep Oron in business during that time. In order to prevail on that request, Plaintiff is obligated to demonstrate, *inter alia*, a likelihood of success on the merits of its claims. Yet as described below, the complaint in this action raises a host of complex legal issues, each of which impacts Plaintiff's ability to make such a showing. Consequently, in order to prepare an answer to the Court's Order to Show Cause on Plaintiff's request for a preliminary injunction, Oron's counsel will be required to conduct extensive factual and legal research into each of the following issues in order to prepare Oron's answering brief.[10]

#### a) Jurisdiction and Service

As noted above, Oron is specially appearing for purposes of this motion and intends to fully contest whether this Court has jurisdiction to enter any order concerning Oron or its assets. The complaint contends that Oron is subject to personal jurisdiction under the Nevada long arm statute, and that Oron has sufficient contacts with the United States for this Court to find personal jurisdiction exists. Oron, however, is a Hong Kong corporation, which receives the majority of its income from customers in Europe, Asia and Russia. Contrary to the allegations of the complaint, less than 14% of Oron's online traffic is from the United States. Moreover, the allegation that Maxim Bochenko is a resident of Florida and Colorado and is the "director/controlling party for Oron" is also false. None of Oron's employees or officers is a United States resident. Given that jurisdiction here is premised on these false allegations, the issue of personal jurisdiction will need to be analyzed in detail in Oron's opposition to the motion for preliminary injunction.

---

[10] Oron intends to address each of these issues in greater detail in its answer to the Court's Order to Show Cause. In addition, Oron reserves the right to address additional issues in that answer.

11

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

At the same time, Plaintiff has not properly served the complaint in this action, and thus has not obtained personal jurisdiction over Oron in any event. When Plaintiff's counsel asked if Oron's outside counsel would accept service of process, he was expressly told that counsel was not authorized to accept such service. As such, service here was improper, and will need to be addressed more fully in Oron's answer to the motion for preliminary injunction.

### b) No Basis for Preliminary Injunction

Oron also needs to pay legal fees to address the legal basis for an asset freeze. There are two ways a federal court can freeze a defendant's assets in a civil case. First, under Federal Rule of Civil Procedure 64, the court can use remedies such as attachment that are available under the law of the state where the court is located. The plaintiff has not requested such relief.

Second, the court in appropriate cases can use its equitable power to issue a preliminary injunction to maintain the status quo. However, the circumstances which such injunctions are appropriate are very limited. The legal issues in this area will require careful examination in the opposition to the motion for preliminary injunction. For example, the United States Supreme Court held in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) that a district court has no authority to issue a preliminary injunction freezing a defendant's assets in connection with a claim for money damages. The Court stressed the historical principle that an unsecured creditor has no prejudgment rights – at law or in equity – in the property of a debtor. 527 U.S. at 328-330. As the Supreme Court explained:

> The remedy [of a preliminary injunction freezing assets] sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?

*Id.* at 330-331. The Court warned of allowing a situation of creditors racing to the courthouse to freeze assets in a way that could prove "financially fatal" to debtors. *Id.* at 331.

Another issue that will be addressed is that the preliminary injunction sought here is not limited to funds or property that the Plaintiff contends should be turned over to Plaintiff if it prevails.

12

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

Rather, Plaintiff seeks a preliminary injunction to freeze all of Oron's assets, whatever they may be and wherever they may be located, with no evidence that the assets should belong to the Plaintiff or are in any way involved in this case. As indicated above, less than one-tenth of one percent of the files stored on Oron's servers are Liberty Media's materials. The remaining 99.9% of Oron's business involves users whose files have nothing to do with Liberty Media and for whom no allegations of copyright infringement have or can be made. The Ninth Circuit has made clear that a district court "cannot issue a preliminary injunction to freeze assets of a defendant that are unrelated to the case to ensure the defendant will have money to pay a future judgment." *In re USA Commercial Mortgage Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010) (citing *Grupo Mexicano*, 527 U.S. at 333).

Moreover, even in cases where a preliminary injunction to freeze assets might be proper in order to maintain the status quo so that the court can afford final injunctive relief, the barrier to obtaining such an injunction is a high one.

> Even under the more lenient standard for claims seeking equitable relief…[the plaintiff] would have to show a 'likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. Courts have construed this standard narrowly, only exercising their inherent authority to freeze assets where there is considerable evidence of likely asset dissipation. . . . Certainly, every creditor would like to freeze its alleged debtor's assets before proving its claims, increasing leverage in settlement negotiations and the chances of collecting any judgment. In the typical case, however, such an imposition on the alleged debtor and the courts is not justified.

*Allstate Insurance Co. v. Baglioni*, No. CV 11–06704 (DDP), 2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) (citations omitted). The *Allstate* court denied a preliminary injunction even though there was evidence of a transfer of property that was "quite possibly fraudulent." *Id.* Here, on the other hand, the only "evidence" that has been provided to the Court is a copy of a redacted email, reportedly obtained by unidentified means by a "third party," that reflects a transfer of funds from Pay Pal to Hong Kong – where Oron is domiciled. (*See* Declaration of Marc J. Randazza In Support of Plaintiff's Emergency Motion For Ex Parte Temporary Restraining Order, ¶ 4). There is

13
DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

no evidence that this transfer, if it occurred, was anything other than a transfer made in the ordinary course of Oron's business, and it certainly does not justify the extraordinary relief of freezing all of Oron's assets. Again, this issue will require extensive legal and factual analysis for purposes of Oron's response to Plaintiff's motion for preliminary injunction.

### c)   Copyright Infringement Issues

The crux of this action is Plaintiff's claim that Defendants have infringed its copyrighted materials. Yet that claim raises numerous issues regarding whether Plaintiff can establish a likelihood of success on merits, all of which Oron needs the time and legal fees to present to the Court.

For example, there are serious questions whether one or more of the defendants can be held liable for copyright infringement (whether directly or indirectly) because the evidence will establish that they fall under the safe harbor provision of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 512. Section 512(c) of the DMCA limits liability for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" so long as the service provider meets various conditions described in sections 512(c) and (i). The evidence here – as compared to Plaintiff's unsupported accusations – will establish that Oron satisfies each of those conditions, and thus is protected under the DMCA safe harbor provision. Indeed, the Complaint itself concedes that Oron has complied with the DMCA by registering a DMCA agent more than one year ago. At the same time, there are significant questions as to whether Plaintiff's alleged DMCA notices were sufficient to trigger the statutes take-down provisions. *See* 17 U.S.C. §§ 512 (c)(3).

Plaintiff's claims for contributory and vicarious infringement are similarly flawed. For example, Plaintiff has provided no admissible evidence that Oron had actual knowledge of any of the allegedly infringing activity, and thus cannot be liable for contributory infringement. *See e.g., Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). To the contrary, per the strict terms of service between Oron and its customers, Oron maintains the privacy of its clients'

14
DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

content. Nor has Plaintiff offered any admissible evidence that Oron exercised the requisite control over the alleged direct infringer and/or that Oron derived a financial benefit from the direct infringement. *Id.* at 1173 (a defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.") (citing to *Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913, 930 (2005)).

Likewise, Plaintiff's claim for inducement of copyright infringement will fail. Plaintiff has not established that Defendants provided a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936-937. "[M]ere knowledge of infringing potential or actual infringing uses would not be enough here to subject [a defendant] to liability." *Id.* at 937. To "establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their ... users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" *Perfect 10, Inc. v. Visa Int'l Service, Assoc.*, 494 F.3d 788 (9th Cir. 2007) (citing *Grokster*, 545 U.S. at 936-937). Here the evidence will establish that Defendants do not actively promote their service to commit copyright infringement, or that the service has no other legitimate use. To the contrary, the evidence will establish that the vast majority of its service is for proper purposes.

### d)   Balance of hardships

Another factor to be considered in connection with the proposed preliminary injunction is the balance of the hardships that would be imposed should the preliminary injunction be entered. In addition to the prejudice such an injunction would impose on Oron's ability to fund its legal defense, the proposed injunction would also effectively "shut down" Oron without any finding of infringement on its part. Because the proposed injunction would freeze Oron's accounts with its billing payment services, such as PayPal, entry of that injunction would drastically impact Oron's

15

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

customers and its ability to conduct business.[11]  As noted, Oron offers its customers a premium service for an additional fee, thereby allowing those customers greater storage capability and faster service.  If Oron's accounts with its payment services are frozen, those customers will not be able to pay for those premium services, and Oron's cash flow will essentially dry up.  That impact on its business and its customers must be analyzed and balanced as part of Oron's answer to Plaintiff's motion for preliminary injunction.

### e)  Lack of Irreparable Harm

In addition, there are also serious issues whether Plaintiff can establish irreparable harm.  Although Plaintiff suggests that irreparable harm in copyright cases is presumed, *see* Motion at 6, that is not the law in this circuit.  To the contrary, the Ninth Circuit has confirmed that irreparable harm is no longer presumed in copyright infringement cases.  *See e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)); *see also Skinvisible Pharmaceuticals, Inc. v. Sunless Beauty*, Ltd., 2012 WL 1032549, * 2-3 (D. Nev. March 27, 2012) (confirming same).

At the same time, Plaintiff has not presented any evidence to support its claim of irreparable harm.  Plaintiff has not established by any admissible evidence that it has and/or will suffer any damages other than a monetary loss.  Without more, that is not enough to establish irreparable injury.  *See e.g., Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedies by a damage award").  Moreover, Plaintiff waited months and years to bring suit.  Such a long delay undercuts Plaintiff's ability to prove irreparable harm.  *See e.g., McDermott v. Amersand Pub.*, LLC, 593 F.3d 950, 964-65 (9th Cir. 2010) (no irreparable harm found given long delay in seeking injunction).

---

[11] Liberty Media's counsel has been emailing numerous billing services in an attempt to block and or shut down Oron's ability to accept money from its clients.

16

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

### f) Inadequacy of Bond

Finally, the Court's Order requires Plaintiff to post a bond in the amount of $100. Yet at the same time, the Order freezes all of Oron's assets before any infringement has been proven. Consequently, Oron will need to analyze and address the appropriateness of that bond should a preliminary injunction issue.[12]

In light of the complexity of the legal issues that need to be addressed, and the reasonableness of Oron's limited request for access to funds to pay legal fees and costs, Oron respectfully requests that the TRO be modified to allow it to transfer funds to its counsel's trust account and to use those funds to pay legal fees and costs as requested herein.

### B. The Court Should Grant a One-Week Extension of Time for the Briefing Schedule and Hearing on Plaintiff's Request for a Preliminary Injunction

Given the myriad of complex legal issues presented by this lawsuit, Oron also requests that the Court grant a one-week extension of time for the parties to file their respective briefs on Plaintiff's motion for preliminary injunction, and a similar extension of the hearing on that motion. Such a short extension will cause no prejudice to Plaintiff, given the Court's entry of the TRO essentially freezing all of Oron's assets. By contrast, forcing Oron to respond on less than a week's notice to these complex issues would impose an undue burden on Oron and its counsel, and would be prejudicial to its ability to present a complete defense on these issues.

### C. In the Alternative, the Court Should Advance the Hearing on Plaintiff's Motion for Preliminary Injunction

In the event that the Court declines to grant the relief requested above and amend the TRO to permit Oron to pay its legal and business expenses, Oron requests, in the alternative, that the Court advance the hearing on Plaintiff's motion for preliminary injunction to Friday, June 29, 2012. As described above, Oron must pay its hosting providers by the end of this month in order to avoid termination of those hosting services. If Oron's servers are shut down for non-payment of those

---

[12] Oron will also address the impropriety of Plaintiff's request for appointment of a receiver in Oron's opposition to the motion for preliminary injunction.

17

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

monthly hosting fees, it will effectively be out of business, and its users – 99.9% of whom have no connection to this litigation – will lose access to their data. Given this potential hardship, Oron requests that, if the request to modify the TRO is denied, that the Court advance the hearing so that the preliminary injunction issue can be resolved before the June 30 deadline for payment of those hosting fees.

## IV. CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court (1) amend its Temporary Restraining Order to allow Oron to transfer €300,000 (300,000 Euros, approximately $375,000 USD) from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC and to use those funds to pay the legal fees associated with this action and Plaintiff's action against Oron in Hong Kong, as well as to pay reasonable business expenses, including server fees, so that Oron can stay in business until the preliminary injunction motion is decided; and (2) grant a one-week extension of time for the briefing deadlines and hearing on Plaintiff's request for a preliminary injunction.

Dated: this 25th day of June, 2012

Wilson Elser Moskowitz Edelman & Dicker LLP

By: _____
DAVID S. KAHN
Attorneys for Defendant FF MAGNAT LIMITED

18
DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5