Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500,<br><br>Defendants. | Case No.: 2:12-cv-01057<br><br>**OPPOSITION TO SECOND EMERGENCY MOTION TO DISBURSE FUNDS** |

Plaintiff Liberty Media Holdings, LLC ("LMH" or "Liberty"), by and through its counsel of record, hereby opposes the Emergency Motion for Disbursement of Additional Funds filed by Defendant FF Magnat Limited d/b/a Oron.com ("Oron") (Doc. # 20). This Opposition is based upon the attached memorandum of points and authorities, the attached declarations, the papers and pleadings on file in this matter, and any oral argument permitted by this Court.

\\

\\

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      INTRODUCTION

On June 26, 2012, this Court denied Oron's previous demand for disbursement of nearly $400,000.00 from its frozen accounts because Oron did "not provide any itemization or accounting for the Court to consider in making its determination if the amount requested is reasonable." (*See* Order Re: ECFs 15 and 16, at 1 (Doc. # 19).) Now, less than forty-eight hours later, Oron has demanded that this Court release the nearly identical amount of EUR 348.845,29[1] for identically undocumented payments to LeaseWeb, Oron's hosting provider – and, not incidentally, the Internet's premier hosting service for high-volume copyright infringement (*see generally* Decls. of Glass, Phinney, Thompson, and Tucker).

Notably, Oron once again fails to properly justify its request for disbursement. This is no mere accident or oversight, as the exhibits referenced by the Motion still fail to justify Oron's second attempted demand for hundreds of thousands of dollars from this Court.

For example, Oron argues that this Court must disburse the money because Oron's Hong Kong bank is refusing to release funds pursuant to the injunction issued by the Hong Kong court, which permits withdrawal of funds for the payment of business expenses. (*See* Motion, at 2.) Oron has offered no explanation for why it has not sought relief from the Hong Kong court with respect to its own injunction, and to make its Hong Kong bank disburse these "business expenses" – particularly when the Hong Kong court would have been in session after the United States' courts closed. In fact, instead of seeking relief from the Mareva Injunction, Oron has sought to delay that

---

[1] In Oron's prior Motion (Doc # 15), it converted the funds it requested from Euros to American Dollars. Presumably, it did not do so in the instant Motion in the hope that the Court would not notice that it was requesting ***almost the exact same amount***.

hearing. Did Oron's Hong Kong bank or the Hong Kong court determine that the money Oron demands is not for the payment of legitimate business expenses?[2]  Oron does not say.

Oron additionally fails to explain or document why LeaseWeb, its hosting company, is requiring an "advance payment" of several hundred thousand dollars - even though this Court has already released ample funds for Oron to pay its hosting fees for the month of July. (*See* Motion, at 1-2.) LeaseWeb's demand of more than $275,000 on the 9th day of a month is highly irregular, and an extreme deviation from the normal business practices within the legitimate web hosting industry (*see* Thompson Decl. ¶¶ 13-25). Logic suggests that LeaseWeb is either (a) colluding with Oron to assist Oron in removing hundreds of thousands of dollars from this Court's jurisdiction; (b) extorting Oron; or (c) Oron is not being entirely forthcoming with the Court. (*Id*. ¶¶ 12-25). In either case, Oron cannot expect this Court to permit disbursement of this unreasonable, unsubstantiated sum – one that all but certainly is not legitimately due and owing to the hosting company.

This Court has already provided Oron with $100,000 this week for alleged payment of its attorneys' fees and business expenses. Now, a mere two days after release of those funds, Oron demands the release of nearly four times as much money from this Court. Yet again, conveniently from the one account that the Plaintiff has found, where the Court could exercise equitable jurisdiction. (Doc. #17) (However, Oron's alleged need for those funds is lacking not only in specificity but common sense, particularly given Oron's demonstrated proclivity to remove its assets beyond the jurisdiction of this Court. The instant Motion should be denied.

---

[2] This Court has already clearly held that "the TRO issued in this case does not prevent Defendant from withdrawing funds from its Hong Kong accounts as authorized by the Hong Kong Court to pay its legal fees and business expenses." (*See* Order Re: ECFs 15 and 16, at 2 (Doc. # 19).)

## II.     ARGUMENT

Two days after its last request to withdraw approximately $400,000 from its so-far located, identified, and frozen accounts, Oron has come before this Court demanding it be entitled to withdraw the same amount. In what appears to be or an act of defiance, it has not provided any of the evidence expressly required by the Court as a condition for releasing any further funds (Order re: ECFs 15 and 16, at 2). Oron also failed to demonstrate that these funds will be used for the payment of legitimate business expenses, rendering its request unreasonable. Oron has again failed to inform the Court of any of its other dozens of sources of funds, or to account for what happened to the $5,000,000.00 it recently had in its PayPal account or what is happening to the funds being collected by its so-called "resellers." This Court has discretion to determine whether the funds Oron requests are reasonable and to deny its request if it so finds. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995).

### A.     Oron Seeks to Withdraw an Amount Nearly Equal to Its Alleged Worth.

It is unreasonable for Oron to demand approximately $400,000 be withdrawn from its accounts for payment of alleged operating expenses when, according to Oron's counsel, that amount is purportedly very close to Oron's value as a going business concern. Specifically, Oron's counsel represented that a settlement demand of $500,000 was "an unreasonable amount" to Defendant Oron and "more than the company itself was worth" in previous discussions. (*See* Exhibits A and B.)[3] The Court should deny Oron's request, as disbursal of the funds requested would, by Oron's own admission, dissipate – if not eliminate entirely – the funds available to compensate LMH for its demonstrated losses. Where a release of funds would exhaust the

---

[3] These exhibits are heavily redacted as they represent settlement discussions. However, they are not presented to demonstrate liability – only to impeach Oron's renewed request for the release of funds that was already denied once by this Court. The documents are completely redacted except for the portions necessary to do so.

resources available to satisfy the plaintiff's likely or potential recovery, it must be denied and the freeze on assets upheld. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989), *citing FSLIC v. Dixon*, 835 F.2d 554, 564-65 (5th Cir. 1987) (approving limitation on disbursal of frozen accounts "out of concern for preserving funds for ultimate distribution for defrauded customers").

### B. Oron's Hosting Company's Alleged Charges Are Exorbitant and Irregular.

The amount that LeaseWeb, Oron's hosting company, has allegedly demanded that Oron pay is patently unreasonable. First, Oron alleges that LeaseWeb is demanding a monthly payment from it on July 1, 2012 of nearly $75,000. (*See* S. Lieberman Declaration, at ¶ 4; Declaration of Zachary Thompson, at ¶ 5.) Based upon Oron's size as a website and the amount of traffic it receives, its hosting costs should not run anywhere close to $75,000 per month. (Thompson Decl. ¶¶ 5-12; Silverman Decl. ¶¶ 7-11) Furthermore, even if LeaseWeb is charging Oron $75,000 per month for hosting charges, this Court released more than enough for Oron to pay that amount earlier this week, and Oron is permitted to withdraw funds for <u>legitimate</u> business expenses pursuant to the Hong Kong injunction. (Thompson Decl. ¶¶ 5-12; Silverman Decl. ¶¶ 7-11)

Oron claims that LeaseWeb seeks a "pre-payment" from Oron of approximately $280,000 by July 9, 2012. (*See* Lieberman Decl, ¶ 4; Thompson Decl, ¶ 13.) LeaseWeb's allegedly demanded "pre-payment" is not only inexplicably high but has no parallels in any industry standard, considering that payment for hosting services is typically a monthly fee. (*See* Thompson Decl, ¶¶ 15-17.) Pre-payments are not common, and LeaseWeb's alleged demand for such payment "appears to be a premise for some kind of improper activity." (*See id.*, ¶ 17.)

LeaseWeb's demand for pre-payment is particularly suspect given that is a known haven for copyright infringers and other purveyors of pirated material. (Thompson Decl. ¶ 18; Glass Decl. ¶ 9) In fact, LeaseWeb regularly refuses to respond affirmatively to legitimate notices issued

pursuant to the Digital Millennium Copyright Act (the "DMCA") and actively attempts to hinder enforcement of the rights of copyright owners. (*See* Glass Decl. ¶¶ 9-12; Phinney Decl. ¶¶ 6-14; see Thompson Decl. ¶¶ 12-25)  Assuming that Oron has not fabricated this "request" out of thin air, then it follows that LeaseWeb is in collusion with Oron and has dishonestly provided them with a bill to aid in its quest to siphon funds out of the Court's control.

Given LeaseWeb's alliance with piracy sites, it is almost inconceivable that it would abruptly terminate service to Oron, one of its most well-known customers, as doing so could irreparably damage its relationships with its other clients, who count upon LeaseWeb to host their online piracy. (Thompson Decl, ¶¶ 19-20; Glass Decl.; Phinney Decl.; Tucker Decl. ¶¶ 9-14)  This is particularly true given that it is common industry practice for hosting companies to give their customers at least fifteen days notice before terminating service for non-payment.  (Thompson Decl. ¶¶ 23-25.)

**C. Oron Has No Basis for Seeking Additional Disbursements.**

Oron's situation is nowhere near as dire as it would leave to Court to believe.  It offers no explanation for the disappearance of almost $4,000,000 from just one of Oron's PayPal accounts just earlier this week (Exhibit C).  What is crystal clear, though, is that Oron is desperate to bamboozle this Court into releasing nearly $400,000 into the hands of a foreign organization that may very well be a co-conspirator in Oron's infringement mill.  Oron has no logical explanation for why, in the span of four days, it has sought to liquidate almost as much money as the company previously claimed to be worth (Exhibits A and B).  Clearly, however, it is determined to get that money out of the Court's control and offshore and into its own hands as quickly as possible.

In its great haste, Oron deliberately presented <u>no</u> sworn testimony from LeaseWeb indicating that its service is in imminent danger of being interrupted or terminated, or that it even owes the amounts it seeks the Court to distribute.  LMH respectfully requests that, if Oron actually

alleges that LeaseWeb is indeed about to terminate its hosting services, a representative from LeaseWeb be required to present live testimony to that effect before this Court. That way, the Court will be capable of independently judging the veracity of LeaseWeb's testimony, rather than relying upon Oron's conclusory, unsupported statements within the second Emergency Motion it has filed this week.

### D. Oron Must Provide an Accounting to this Court Before Releasing Any Funds.

LMH's lawsuit alleges more than $38 million in damages against Oron for its intentional infringement of LMH's intellectual property.  Even if the infringement is not found to be willful, Oron will still face more than $6 million in liability from LMH's claims alone.  However, LMH is likely only the tip of a massive iceberg for Oron.  Multiple other potential plaintiffs have already identified Oron as their primary source of copyright infringement and intend to join this action as plaintiffs before the motion for preliminary injunction is filed.

Oron's potential statutory damages will conservatively range into the tens of millions of dollars.  The equitable relief of disgorgement of ill-gotten profits will be impossible to effect if Oron manages to sweep its illegal profits into hidden bank accounts, the hands of an unscrupulous web hosting company, or the many other crevices where criminals hide the proceeds of their ill-gotten gains.  As this Court knows, MegaUpload, a file locker service with an affiliate program similar to Oron's, was recently indicted by the U.S. Department of Justice along with its principals on counts of racketeering and money laundering – separate and distinct from its widespread (and

widely publicized) copyright infringement.[4]  The only apparent difference between MegaUpload and Oron is that Oron is even more brazenly violating the law.

Exhibit C represents only one PayPal account known to LMH, yet it contains in excess of $1 million.  For this Court to analyze the propriety of Oron's second requested withdrawal of funds in less than one week, it must be apprised of all of its holdings and assets.  Only then can this Court ensure that equitable relief in the form of depriving Oron of the proceeds of its piracy will not be rendered impotent.  In its Motion, Oron makes no such effort.  In fact, its current Motion contains no more demonstrable support for the requested withdrawal than the motion filed earlier this week.  By virtue of Plaintiff's Complaint, and the forthcoming Amended Complaint with even more plaintiffs, the Court has knowledge of the massive damages claims against Oron.  To analyze the reasonableness of the withdrawals Oron demands of its frozen assets and their potential for denying LMH and the future plaintiffs a right to redress their damages, the full extent of Oron's assets must be honestly and completely disclosed to this Court.  *See Noble Metals Int'l, Inc.*, 67 F.3d at 766, *World Wide Factors*, 882 F.2d at 348, *Dixon*, 935 F.2d at 565.

Requiring Oron to account for all of its worldwide assets before withdrawing funds to pay egregiously high hosting fees is a necessary step to avoid their likely dissipation and concealment. *See Noble Metals Int'l, Inc.*, 67 F.3d at 766, *World Wide Factors*, 882 F.2d at 348, *Dixon*, 935 F.2d at 565.  Without an appraisal of Oron's actual and unhidden assets as weighted against its likely liabilities, the Court may inadvertently deprive Liberty and the other incipient plaintiffs any right to redress while allowing Oron to withdraw funds to purportedly pay for hosting services.  Unless

---

[4] Sean Gallagher, "MegaUpload Shut Down by Feds, Seven Charged, Four Arrested, *Ars Technica* (Jan. 19, 2012), *available at* <arstechnica.com/tech-policy/2012/01/megaupload-shut-down-by-feds-seven-charged-four-arrested (last accessed June 26, 2012) ("MegaUpload is also charged with money laundering by paying uploaders through an 'uploader reward program' and paying other companies to host the pirated content.")

Oron fully and adequately informs the Court of the true resources and assets it has available, the Court will be unable to properly assess the reasonableness of releasing any expenses to Oron, let alone its second request for nearly $400,000 in a week's time. For certain, the instant motion must be denied.

### III.    CONCLUSION

Defendant Oron has fallen far short of its burden to establish the need and propriety for this Court to release this second round of exorbitant funds. The evidence put forth by the Plaintiff shows that these expenses fall far outside of the norm for the industry. Something is amiss. Either Oron is fabricating this newfound need for hundreds of thousands of dollars or LeaseWeb is conspiring with Oron. But, Oron's claimed request is extreme. Plaintiff LMH respectfully submits that Defendant's current request should be denied, and any additional requests must be subsequent to a full accounting and presented with appropriate documentation, as already ordered by the Court.

Dated: June 29, 2012

Respectfully Submitted,

  s/Marc J. Randazza

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on June 29, 2012.

Dated: June 29, 2012

                                        Respectfully Submitted,

                                        *s/Marc J. Randazza*

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com