**DAVID S. KAHN** (Nevada Bar No. 7038) david.kahn@wilsonelser.com
**SHERI M. THOME** (Nevada Bar No. 8627) sheri.thome@wilsonelser.com
**J. SCOTT BURRIS** (Nevada Bar No. 010529) j.scott.burris@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER** LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV  89101
T: (702) 727.1400; Fax: (702) 727-1401

**KENNETH E. KELLER** (CA Bar No. 71450) (*admitted pro hac vice*) kkeller@kksrr.com
**STAN G. ROMAN** (CA BAR. NO. 87652) (*admitted pro hac vice*) sroman@kksrr.com
**MICHAEL D. LISI** (CA Bar No. 196974) (*admitted pro hac vice*) mlisi@kksrr.com
**KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP**
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
T: (415) 249-8330; Fax: (415) 249-8333

**STEVAN LIEBERMAN** (Wash, DC Bar No. 448218) (*admitted pro hac vice*) stevan@APLegal.com
**GREENBERG & LIEBERMAN, LLC**
2141 Wisconsin Ave., NW Suite C2
Washington, DC 20007
T: (202) 625-7000; Fax: 202-625-7001

Attorneys for Defendant FF MAGNAT LIMITED

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,  a California Corporation, | Case No. CV 2:12-cv-01057 GMN-RJJ |
| Plaintiff | **DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER** |
| vs. | |
| FF MAGNAT LIMITED d/b/a/ ORON.COM; MAXIM BOCHENKO a/k/a/ ROMAN ROMANOV; and JOHN DOES 1 - 500. | |
| Defendants. | **Hearing:** **August 9, 2012** <br> **Time:** **1:30 PM** <br> **Judge:** **Hon. Gloria M. Navarro** <br> **Courtroom:** **7D** |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 4

     A.      Factual Background .................................................................. 4

          1.      The Parties ..................................................................... 4

          2.      The Oron.com Website and Oron's Efforts to Stop Infringement ................. 5

     B.      Procedural History .................................................................... 8

III.    ARGUMENT ......................................................................................... 9

     A.      A Preliminary Injunction Would Be Improper Here ................................. 9

     B.      This Court Lacks Personal Jurisdiction Over Defendant ........................... 11

     C.      Plaintiff Cannot Show a Likelihood of Success on the Merits of Its Claims .......... 16

          1.      Copyright Infringement ...................................................... 16

     D.      While Plaintiff Will Not Be "Irreparably Harmed" Absent the Requested Relief, Entry of The Proposed Injunction Would Put Oron Out Of Business ................. 26

     E.      The Balance of the Equities Favors Denial of Plaintiff's Motion ................... 27

     F.      Plaintiff Has Not Shown That An Injunction Is In The Public Interest .............. 28

     G.      Even If The Court Finds That Preliminary Relief Is Warranted, The Proposed Injunction Should Be Modified ................. 28

     H.      If the Court Grants Plaintiff's Motion and Enters a Preliminary Injunction, Plaintiff's Bond Should Be Increased Significantly ................. 29

     I.      Plaintiff Is Not Entitled to Appointment of a Receiver ........................... 29

IV.     CONCLUSION ...................................................................................... 30

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
 632 F.3d 1127 (9th Cir. 2011) ................................................................... 26

*Allstate Insurance Co. v. Baglioni*,
 No. CV 11–06704 (DDP), 2011 WL 5402487 (C.D. Cal., November 8, 2011) .......... 11

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*,
 1 F.3d 848 (9th Cir. 1993) .............................................................. 13, 26

*Bancroft & Masters, Inc. v. Augusta National, Inc.*,
 223 F.3d 1082 (9th Cir. 2000) ................................................................ 12

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
 223 F.3d 1082 (9th Cir. 2000) ........................................................... 14, 16

*Be2LLC v. Ivanov*,
 642 F.3d 555 (7th Cir. 2011) ................................................................ 14

*Boorman v. Nevada Memorial Cremation Society, Inc.*,
 772 F.Supp.2d 1309 (D. Nev. 2011) ......................................................... 24

*Canada Life Assur. Co. v. LaPeter*,
 563 F.3d 837 (9th Cir. 837) ................................................................. 29

*Chan v. Soc'y Expeditions, Inc.*,
 39 F.3d 1398 (9th Cir. 1994) ............................................................... 11

*Commodity Futures Trading Commission v. Noble Metals International, Inc.*,
 67 F.3d 766 (9th Cir. 1995) ................................................................ 29

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,
 606 F.3d 612 (9th Cir. 2010) ............................................................... 21

*CoStar Group, Inc. v. LoopNet, Inc.*,|
 373 F.3d 544 (4th Cir. 2004) ............................................................... 21

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001) ............................................................... 11

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006) ....................................................................... 26

ii

*Ellison v. Robertson,*
   357 F.3d 1074 (9th Cir. 2004) .......................................................................... 19

*Fidelity National Title Insurance Company v. Castle,*
   2011 WL 5882878 (N.D. Cal., Nov. 23, 2011) ............................................... 28

*Field v. Google, Inc.,*
   412 F. Supp. 2d 1106 (D. Nev. 2006) .............................................................. 21

*Graduate Mgmt. Admission Council v. Raju,*
   241 F. Supp. 2d 589 (E.D. Va. 2003 ............................................................... 13

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
   527 U.S. 308 (1999).................................................................................... 10, 27

*Hanson v. Denckla,*
   357 U.S. 235 (1958) .......................................................................................... 13

*Hendricks v. Bank of America, N.A.,*
   408 F.3d 1127 (9th Cir. 2005) ............................................................................ 1

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
   174 F.3d 411 (4th Cir. 1999) ............................................................................ 29

*Idema v. Dreamworks, Inc.,*
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ........................................................... 25

*In re USA Commercial Mortgage Co.,*
   397 Fed. Appx. 300 (9th Cir. 2010)................................................................. 10

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945)........................................................................................... 12

*Irwin v. ZDF Enters. GmbH,*
   No. 04-8027, 2006 WL 374960 (S.D.N.Y. Feb. 16, 2006)............................. 25

*Johnson v. Couturier,*
   572 F.3d 1067 (9th Cir. 2009) ......................................................................... 28

*Kerr Corp. v. North America Dental Wholesalers,*
   2011 WL 2269991 (C.D. Cal. 2011)................................................................. 26

*Kodadek v. MTV Networks, Inc.,*
   152 F.3d 1209 (9th Cir. 1998) .................................................................... 25, 26

*Liberty Media Holdings LLC v. Serge Letyagin d/b/a Sunporno.com,*
   Case No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011) ................................... 14

iii

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
   634 F.2d 1197 (9th Cir. 2001) ........................................................................ 26

*Mavrix Photo, Inc., v. Brand Technologies, Inc.,*
   2011 WL 3437047 (9th Cir. 2011) ................................................................ 14

*McDermott v. Amersand Pub.,* LLC,
   593 F.3d 950 (9th Cir. 2010) ........................................................................ 27

*Mead Johnson & Co. v. Abbot Lab.,*
   201 F.3d 883 (7th Cir. 2000) ........................................................................ 29

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005) ...................................................................................... 23

*Midgett v. Tri-Country Metro. Trans. Dist. of Oregon,*
   254 F.3d 846 (9th Cir. 2001) ........................................................................ 27

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) ...................................................................... 12

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ........................................................ 16, 21, 23

*Perfect 10, Inc. v. CCBill LLC,*
   488 F.3d 1102 (9th Cir. 2007) ...................................................................... 19

*Perfect 10, Inc. v. Visa Int'l Serv. Assoc.,*
   494 F.3d 788 (9th Cir. 2007) ........................................................................ 23

*Perkins v. Benguet Consolidated Mining Co.,*
   342 U.S. 437 (1952) ...................................................................................... 12

*Porche v. Pilot & Associates, Inc.,*
   2009 WL 688988 (9th Cir. 2009) ................................................................ 11

*RDF Media Ltd. v. Fox Broad. Co.,*
   372 F.Supp.2d 556 (C.D.Cal.2005) .............................................................. 25

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
   907 F.Supp. 1361 (N.D. Cal. 1995) .............................................................. 21

*Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991) ........................................................................ 27

*Republic of the Philippines v. Marcos,|*
   862 F.2d 1355 (9th Cir. 1988) ...................................................................... 28

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................ 15

*Securities and Exchange Commission v. Hickey*,
    322 F.3d 1123 (9th Cir. 2003) ...................................................................... 28

*Skinvisible Pharmaceuticals, Inc. v. Sunless Beauty*, Ltd.,
    2012 WL 1032549 (D. Nev. March 27, 2012).............................................. 26

*Stormans v. Selecky*,
    568 F.3d 1109 (9th Cir. 2009) ...................................................................... 28

*UMG Recordings, Inc. v. Shelter Capital Partners, LLC*,
    667 F.3d 1022 (9th Cir. 2011) ...................................................................... 17

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2nd Cir. 2012).......................................................................... 18

*Videotronics, Inc. v. Bend Electronics*,
    564 F. Supp. 1471 (D. Nev. 1983)................................................................ 26

*Winter v. National Res. Defense Council, Inc.*,|
    550 U.S. 7 (2008).................................................................................... 26, 27

*Yakus v. U.S.*,
    321 U.S. 414 (1944)...................................................................................... 27

**Statutes**

17 U.S.C. §301(a) ................................................................................................ 26

17 U.S.C. 411(a) ................................................................................................. 22

17 U.S.C. § 517(i)(2) .......................................................................................... 21

Fed.R.Civ.P. 65(c) .............................................................................................. 31

**Other Authorities**

DMCA, 17 U.S.A. § 512....................................................................... passim

DMCA, 17 U.S.A. § 512(c)(1) ........................................................................ 17

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

Defendant FF Magnat Limited dba Oron.com ("Oron") hereby responds to the Court's Order to Show Cause and opposes Plaintiff Liberty Media Holdings LLC's ("Plaintiff") motion for preliminary injunction and appointment of a receiver.[1]

## I.    INTRODUCTION

Oron is a Hong Kong based computer file storage company that provides worldwide "cloud" services to private individuals, businesses, and professional users.  Its website, Oron.com, is strictly governed by its extensive Terms of Service to which each user or guest must agree.  Oron is fully compliant with laws such as the Digital Millennium Copyright Act (discussed below), the Communications Decency Act (DCA), and similar worldwide legislation.

Plaintiff is a producer of hard core gay pornographic material, some of which third persons have allegedly stored on Oron's servers without Plaintiff's permission.  When compared to the total amount of third party files stored on Oron's servers, the amount of Plaintiff's material is infinitesimal, comprising less than one tenth of one percent (0.1%).

Plaintiff is not seeking an injunction against Oron's allegedly infringing activity.  It obviously knows that any such motion would be doomed to fail.  Rather, Plaintiff applies for a preliminary injunction to continue freezing Oron's assets and to shut down its payment processors so that Oron  cannot generate any new revenue from anywhere in the world, even though the overwhelming percentage of Oron's revenue is generated from users outside of the United States.  If granted, the injunction will put Oron out of business, and the massive amount of legitimate data that innocent users have stored with Oron will be irretrievably lost.  In fact, the effect of the TRO has been to effectively shut Oron down even before there was a hearing on the preliminary injunction.

---

[1]  In filing this opposition, Oron does not intend to waive any defenses based on lack of personal jurisdiction, venue or improper service of the summons and complaint. Consequently, Oron is specially appearing.  Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service.  To the contrary, Oron expressly reserves its right under the Federal Rules of Civil Procedure to challenge personal jurisdiction and service by way of a motion to dismiss the complaint and/or a motion to quash.  The law provides that an opposition to a preliminary injunction motion under circumstances such as those present here does not constitute a waiver.  *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005).

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507

**Error! Unknown document property name.**

Plaintiff also requests the appointment of a receiver.  If the injunction is granted, there will be no business over which a receiver could preside.  In any event, the very high barrier for appointment of a receiver has not been met and there is no basis for any such order.  The preliminary relief sought by plaintiff should be denied for a number of independent, dispositive reasons.

1.    The proposed injunction would be improper.  Legally, the United States Supreme Court has made it clear that asset-freezing injunctions are not available to ensure that assets remain in place to satisfy a plaintiff's monetary damage claim.  They are only available to keep in place particular assets that may become the subject of a permanent injunction if the plaintiff prevails.  Yet the injunction here is sought as to all of Oron's assets and is not tied in any way to any specific assets to which Plaintiff may be entitled.  That is not lawful.

2.    The Court does not have personal jurisdiction over Oron.  Oron is a Hong Kong company and Plaintiff has not alleged any legally sufficient contacts that Oron has had with the State of Nevada other than the fact that Oron operates a website that can be accessed from anywhere in the world.  Less than 15% of Oron's business is with users in the United States.  Under such circumstances, case law makes clear that this Court does not have personal jurisdiction over Oron.  Oron will establish this in its motion to dismiss, but for present purposes, Plaintiff has not demonstrated that it is likely to prevail in establishing that jurisdiction exists.

3.    Plaintiff is not likely to prevail on its copyright claims.  Congress has enacted specific legislation to provide a safe harbor for internet hosts like Oron on which third parties post infringing materials.  The Digital Millennium Copyright Act ("DMCA") provides that if an internet host promptly removes infringing material when it becomes aware of it, the host is not liable for the infringement.  That is what happened here. Since 2001, Oron has had a detailed program to deal with the removal of allegedly infringing content and it is entitled to the safe harbor protection afforded by the DMCA.  Yet Plaintiff has essentially ignored the DMCA and the fact that it cannot maintain its substantive copyright infringement claims against Oron.

Moreover, even if Oron did not qualify for the DMCA safe harbor (which it does), Plaintiff has failed to allege facts demonstrating that Oron has violated the copyright laws.  In addition,

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

Plaintiff's claims for conspiracy and unfair business practices are simply derivative of the copyright claims, and they fail as well.  Moreover, given Plaintiff's inability to prove its substantive copyright claims, this Court should consider carefully Plaintiff's focus on collection, enforcement, and the freezing of Oron's assets.  This focus on Oron's mechanism of worldwide payment, rather than the merits of Plaintiff's claims, belies Plaintiff's true goal – the complete destruction of Oron's business.

     4.    <u>Plaintiff has not demonstrated irreparable harm</u>.  Plaintiff concedes that its copyrighted material has been removed by Oron from its website.  Thus, Plaintiff's claim is one simply for money damages for past infringement.  No injunction is appropriate for that.  Plaintiff nevertheless maintains that it will be irreparably harmed by Oron "hiding" its assets so that Plaintiff will not be able to recover its damages if it prevails.  That theory fails both factually and legally. Factually, the Court must scrutinize the "evidence" that Plaintiff proffers.  It consists of a single email, apparently hacked from Oron's email by an unidentified "third party," showing a transfer of funds from Oron's PayPal account in the United States to Oron's bank in Hong Kong.  (Declaration of Marc J. Randazza in Support of Motion for Temporary Restraining Order (Dkt. 4) ("Randazza Decl."), ¶ 4 & Ex. C).  PayPal is one of Oron's payment processors.  Oron is a Hong Kong business and maintains its bank accounts there.  Transfers of funds from PayPal to Oron's Hong Kong banks are part of the company's ordinary course of business.  The funds in the PayPal account that were transferred converts to US $109,890, a normal business transaction, and not a particularly large one considering the income the company had at the time.  (Declaration of Davidoglov Stanislav in Opposition to Motion for Preliminary Injunction, ("Stanislav Decl."), ¶ 19).

     5.    <u>The balance of hardships does not and cannot favor Plaintiff</u>.  At most, Plaintiff has a very limited damage claim for some past infringement of its pornographic films.  By contrast, if this injunction is granted, Oron's multimillion dollar business will be destroyed and all of the data stored by innocent users on Oron's service will be irretrievably lost.

     For all of these reasons, it is respectfully submitted that Plaintiff's requests for preliminary injunction and for the appointment of a receiver should be denied.  If for some reason the Court is inclined to order injunctive relief, it should be limited to assets of Oron to which Plaintiff might

3

ultimately be found entitled on equitable grounds (not damages), should be fashioned in a way that will allow Oron to continue to conduct its business and defend itself until proven to have done something wrong, and should be conditioned upon the posting of a bond sufficient to compensate Oron for the losses it will have suffered if Plaintiff does not prevail.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   The Parties

Oron is a legitimate business located in Hong Kong.  Oron is a file storage company that provides data storage services accessible on the internet throughout the world to private individuals, businesses and professional users.   Oron owns the domain name, Oron.com, which was registered in 2001.  (Stanislav Decl., ¶ 2).  Like well-known "cloud services" offered by such companies as Apple ("iCloud" and apple.me), Amazon, Google, Hewlett Packard and DropBox, Oron offers its users the ability to upload and store large amounts of data on secure, remote servers.  The users have complete control over their stored data and decide whether to share their data with others.  (*Id.*).

Plaintiff is the parent company of and does business as CORBIN FISHER®.  Although the complaint alleges that Plaintiff "produces, markets and distributes adult-oriented audiovisual works," that description understates Plaintiff's business.  More accurately, Plaintiff  is "a distributor of lawful, albeit hardcore pornography."  *Liberty Media Holdings, LLC vs. Swarm Sharing Hash File et al,* 821 F.Supp.2d 444, 447 n.2 (D. Mass. 2011).  Plaintiff and CORBIN FISHER® have been described as "America's most litigious . . . porn studio," and is a producer and distributor of "gay hard core pornography."[2]  A simple internet search reveals that Plaintiff has filed numerous "mass defendant" lawsuits alleging copyright infringement against a host of companies as well as hundreds of individuals, including many of Plaintiff's own customers.  Plaintiff is developing a reputation as a "troll litigator" in the arena of copyright infringement, whose business plan is to pursue large monetary recoveries through litigation involving questionable claims of infringement.

---

[2] *See* http://www.queerty.com/did-americas-favorite-bareback-studio-spend-500k-on-gay-xxx-just-to-block-it-20111007/.

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

### 2.    The Oron.com Website and Oron's Efforts to Stop Infringement

Oron runs its business through its website, Oron.com.  Oron allows free storage and access to data on its website but charges a flat fee for its premium service, which allows faster uploading and downloading and longer storage.  (Stanislav Decl., ¶ 3).  Contrary to the allegation that that Oron's "largest contingent of users are from the United States," publicly available information, such as WHOIS domain tools, demonstrates that only 14.3% of visitors to Oron's website come from the United States.  (*See* Site Profile, http://whois.domaintools.com/oron.com).  The majority of Oron's users are from Europe and Asia and the overwhelming percentage of its revenue is derived from users outside of the United States.  (*Id*. ¶ 4).

In fact, Plaintiff's files are a miniscule part of Oron's website.  It is estimated that Plaintiff's files constitute significantly less than one-tenth of one percent of the data stored on Oron.com.  That figure comprises only material not yet taken down, either after notice from Plaintiff or, as discussed below, as a result of Oron's copyright enforcement program.  Thus, more than 99.9% of Oron's customers, none of whom have been alleged to infringe anyone's intellectual property rights, will lose access to their stored data files if the preliminary injunction is granted.  (*Id*. ¶ 5).

If a subscriber wishes to use Oron's file sharing services, he or she uploads material to the www.oron.com website, where it is stored on various servers that Oron leases from an independent, well-known hosting service, LeaseWeb.  Oron creates a unique URL which allows that subscriber to access and download the material.  While a subscriber may choose to share that URL with others so that they can also access the subscriber's material, Oron is not involved in any such decisions.  Oron does not operate a "peer to peer" system like Napster or Grokster, which have been held to run afoul of the copyright laws.  Oron plays no active role in the uploading or sharing of material on its website and it does not "publish" anything, contrary to the allegations of the Complaint.  (*Id*. ¶ 6).

Oron strictly maintains the privacy of its users.  It does not index the materials that are uploaded and it maintains no catalogue or search function to locate or access data.  Given the massive amount of data stored on its servers, it is impossible for Oron to continually search its users'

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

private data for infringing material other than through the use of MD5 hash algorithms[3] provided to Oron by the copyright owner.  Indeed, Oron would not know whether any particular material is infringing, unless a copyright holder reports the abuse.  For example, a subscriber may have legally purchased a movie and uploaded it to the site so that he can later watch it while traveling.  Although the material may be protected by copyright, the subscriber has done nothing illegal.  (*Id.* ¶ 7).

Oron is and for years has been extremely diligent in establishing safeguards to deal with potential copyright infringement.  Since 2001, Oron has had a program in place under the DMCA by which a copyright owner can report copyright infringement on Oron's website.  A copyright owner need only go to the front page of the website to the "report abuse" link, and the offending material will be deleted.  (*Id.*, ¶ 8 & Exs. A, B).  In addition, Oron's Terms of Service, which are also available on the front page of the website, expressly set forth how to report suspected copyright infringement, and provide an additional link to "report abuse."  (*Id.*, ¶ 9 & Ex. C, at  ¶ 8.4.2 (16)).

On June 15, 2011, Oron registered a specified agent with the United States Copyright Office pursuant to the DMCA.  While Plaintiff argues that this shows Oron did not have a DMCA program in place prior to 2011, that argument is misleading at best.  It is undisputed that Oron had an agent registered with the Copyright Office prior to the initiation of this lawsuit.  Moreover, other than the addition of the agent's physical address, and the inclusion of limitation of liability and choice of law/venue provisions, Oron's Terms of Service have been in place since 2001.  (*Id.*, ¶ 10).  Since 2001, Oron has removed infringing material pursuant to the DMCA whenever it received notice of abuse, including DMCA notices from Plaintiff sent prior to Oron formally registering its agent with the Copyright Office.  (*Id.*, ¶ 11 & Exs. D, E).  In fact, Plaintiff concedes that "Defendants have removed the majority of the videos listed in Exhibit 10 of the Complaint…."  (Motion at 6:6-7).  Thus, although it did not have an agent registered with the U.S. Copyright Office until 2011 – more

---

[3] "The MD5 Message-Digest Algorithm is a widely used cryptographic hash function that produces a 128-bit (16-byte) hash value. Specified in RFC 1321, MD5 has been employed in a wide variety of security applications, and is also commonly used to check data integrity. . . . MD5 digests have been widely used in the software world to provide some assurance that a transferred file has arrived intact." (*See* http://en.wikipedia.org/wiki/MD5 ).

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

than a year before this lawsuit was filed – copyright holders, including Plaintiff,  have had the means to report copyright abuse, and Oron has immediately acted upon such reports by taking down the infringing material.  Moreover, this motion for an injunction seeks prospective relief, and there is no dispute that Oron has a fully implemented DMCA program in place to deal with any future copyright infringement on its website, including an agent registered pursuant to the DMCA.

In addition to its policy of responding to DMCA take-down notices, Oron has also assisted others – again, including Plaintiff – with their efforts to monitor Oron.com for potential copyright infringement.  For example, on January 13, 2011, Plaintiff notified Oron that it had appointed the organization Porn Guardian to submit DMCA notices on its behalf.  (*Id*., ¶ 12 & Ex. F).   In response, Oron granted Porn Guardian access to a removal tool that enables it to directly take down infringing material from Oron's website with impunity.  (*Id*., ¶ 13 & Ex. G).  When Porn Guardian had difficulty removing some content (e.g., content located within folders), Oron.com offered to process those folders manually.  (*Id*., ¶ 14 & Ex. H).  Further, prior to allowing final deletion of any material taken down by Porn Guardian, Oron has automated the running of MD5 Hash algorithms on all such material, thus blocking any such material from ever being uploadable again on Oron's servers.  (*Id*., ¶ 15).  The latter two technical means have effectively blocked third parties from uploading repeat infringing content to Oron's servers.  (*Id*.)

Importantly, Oron has had a strict "termination of repeat infringer" policy in place since 2001, and has on many occasions terminated subscribers due to repeated illegal activities of which Oron became aware.  (*Id*., ¶ 16 & Ex. C, at ¶ 8.4.3).  In addition, Oron has a process whereby a copyright holder can provide Oron with an MD5-Hash identifier (a unique identification of copyrighted material, similar to fingerprint) and Oron will search its system to see if any such material has been uploaded, and if so, will block it.  (*Id*., ¶ 17).

Plaintiff's aspersions that Oron is a "child pornography" site and its attempts to label Oron a "criminal" are beyond unfounded.  Oron's extensive Terms of Service, to which every user must agree to comply, specifically address the issue of "child abuse content."  (*Id*., ¶ 18 & Ex. C, ¶ 8).  Oron has always maintained a relationship with the National Center for Missing & Exploited

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

1    Children's CyberTipLine.  Oron has developed and implemented certain key word filters to detect

2    the uploading of child abuse content to its servers.  Oron is also one of the few cloud hosting

3    providers that is a member of the Internet Watch Foundation ("IWF"), the UK hotline for reporting

4    criminal online content with a primary focus on protecting children. Acceptance into the IWF

5    includes a rigorous review process by the members of the IWF.  Oron has implemented a specific

6    action plan to mitigate the risks with or exposure to any child abuse content. (*Id.*, ¶ 18).

7    **B.      Procedural History**

8    On June 20, 2012, Plaintiff filed its complaint in this action, and at the same time filed its

9    Emergency Motion for Ex Parte Temporary Restraining Order, Order for Seizure, and Appointment

10   of Receiver, and Order to Show Cause Re Preliminary Objection.  Plaintiff sought ex parte relief,

11   without notice to Oron, based on bare allegations that Defendants had "already taken affirmative

12   steps to move assets beyond the court's reach in order to frustrate any order the court may issue."

13   (Motion at 10:11-14).  However, Plaintiff has presented the Court with no admissible evidence to

14   support its motions.  Plaintiff relies upon a declaration of its litigation counsel, based upon

15   information and belief rather than personal knowledge.  The only "evidence" that Plaintiff presented

16   was a single email obtained from an unspecified third party of a single legitimate transfer of Oron's

17   funds in the amount of HKD 852,278.58, from its PayPal account to its bank in Hong Kong.[4]  There

18   is nothing nefarious or improper about a Hong Kong company transferring funds from its PayPal

19   provider to its bank in its domicile.  Indeed, the amount transferred, which converts to US $109,890,

20   is not particularly large given the company's income at the time of the transfer.  (*Id.*, ¶ 19).

21   On June 21, 2012, the Court entered an Order (e-Docket 11) freezing all of Defendants'

22   assets pending the hearing on Plaintiff's request for a preliminary injunction, including all assets in

23   any U.S. bank or financial institution, and any funds held for Oron by PayPal, Inc., CCBill, LLC,

24

25   [4] Oron strongly believes that the Plaintiff through this unidentified third party hacked Oron's emails
     or its PayPal account to obtain this email.  Furthermore, Oron has just learned that Plaintiff filed an
26   earlier action against only "Doe Defendants" and used that action to serve subpoenas regarding
     Oron, without any notice whatsoever to Oron.  Oron requests that this Court obtain from Plaintiff a
27   full accounting of all related actions and prior related discovery, as no related actions were disclosed
     to this Court pursuant to the requirements of LR 7-2.1.

28
                                                  8
     ───────────────────────────────────────────────────────────────
     DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
                 INJUNCTION AND APPOINTMENT OF RECEIVER
                     CASE NO. 2:12-cv-01507 GMN-RJJ

and AlertPay, the companies that processed payments for Oron before the court's TRO stopped them. The Court further enjoined Defendants "from disgorging or dissipating any funds, property, domain names, or other assets until further notice."[5] *See* TRO at 2-3. The Court made a limited modification to the TRO on June 26, 2012 to allow for the disbursement of $100,000 to Oron to defend against the TRO. (Dkt. 19). Subsequently, the Court denied in part a second emergency motion to allow for further funds to be disbursed from Oron's PayPal account to pay LeaseWeb for the lease of Oron's servers, although the court did allow Oron's payments processor PayPal to accept funds from Oron's customers subject to the TRO. (Dkt. 27).

Plaintiff has also instituted legal proceedings against Oron in Hong Kong, by which it obtained a temporary restraining order freezing "up to US$3,000,000." (Stanislav Decl. ¶ 20 & Ex. I). That order expressly allows Oron to pay legal fees and business expenses, but Oron's bank in Hong Kong nevertheless refused Oron access to its funds for as long as the order is in place. (*Id.*, ¶ 21 & Ex. I). However, due to the bank's uncertainty as to the effect of the Hong Kong court's order, the bank has refused to transfer any funds under any circumstances, thus leaving Oron without access to any funds in any country of any sort. (*Id.*).

Despite the Court's subsequent modifications, the harsh reality is that as of August 1, 2012, Oron will not be able to meet its legitimate business expenses, including the payments to LeaseWeb. Its hosting provider will shut down Oron's servers, which are the life blood of any file sharing business such as Oron's, and Oron's customers will no longer be able to access any of their data or files. Oron's payment processors will not do business with Oron. Effectively, Oron's worldwide multimillion dollar company will be shut down and out of business. (*Id.*, ¶22).

## III.   ARGUMENT

### A.   A Preliminary Injunction Would Be Improper Here

A court may, in appropriate cases, use its equitable power to issue a preliminary injunction to

---

[5] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged." However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

maintain the status quo in a way that will allow a permanent injunction to be enforced.  However, the United States Supreme Court held in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) that a district court has no authority to issue a preliminary injunction freezing a defendant's assets in connection with a claim for money damages, which is what Plaintiff seeks through this motion.  The *Grupo Mexicano* Court stressed the historical principle that an unsecured creditor has no legal or equitable prejudgment rights in the property of a debtor.  *Id*. at 328-330.  As the Supreme Court explained:

> The remedy [of a preliminary injunction freezing assets] sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance.  Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?

*Id*. at 330-331.  The Court warned against allowing creditors to race to the courthouse to freeze assets in a way that could prove "financially fatal" to debtors.  *Id*. at 331. That is what has indeed happened since the TRO has been "financially fatal" to Oron.

The preliminary injunction sought here is also inappropriate because it is not limited to funds or property that will be subject to permanent equitable relief if Plaintiff ultimately prevails.  Rather, Plaintiff seeks a preliminary injunction to freeze all of Oron's assets, whatever they may be and wherever they may be located, with no evidence that such assets are in any way involved in this case.  As indicated above, less than one-tenth of one percent of the files stored on Oron's servers are possibly Liberty Media's materials.  The remaining 99.9% plus of Oron's business involves users whose files have nothing to do with Liberty Media and for whom no allegations of copyright infringement have or can be made.  The Ninth Circuit has made clear that a district court "cannot issue a preliminary injunction to freeze assets of a defendant that are unrelated to the case to ensure the defendant will have money to pay a future judgment."  *In re USA Commercial Mortgage Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010) (citing *Grupo Mexicano*, 527 U.S. at 333).

Even in cases where a preliminary injunction to freeze assets might be proper in order to maintain the status quo so that the court can afford final injunctive relief, the barrier to obtaining such an injunction is a high one that has not been met here:

10

> Even under the more lenient standard for claims seeking equitable relief…[the plaintiff] would have to show a 'likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. Courts have construed this standard narrowly, only exercising their inherent authority to freeze assets where there is considerable evidence of likely asset dissipation. . . . Certainly, every creditor would like to freeze its alleged debtor's assets before proving its claims, increasing leverage in settlement negotiations and the chances of collecting any judgment. In the typical case, however, such an imposition on the alleged debtor and the courts is not justified.

*Allstate Insurance Co. v. Baglioni*, No. CV 11–06704 (DDP), 2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) (citations omitted). The *Allstate* court denied a preliminary injunction even though there was a transfer of property that was "quite possibly fraudulent." *Id*. Here, on the other hand, the only "evidence" that has been provided to the Court is a copy of a hacked email that reflects a transfer of funds from Pay Pal to Hong Kong – where Oron is domiciled. (*See* Randazza Decl., ¶ 4, Ex. C; Stanislav Decl., ¶ 19). There is no evidence that this transfer, if it occurred, was anything other than a transfer made in the ordinary course of Oron's business, and it certainly does not justify the extraordinary relief of freezing all of Oron's assets. (*See* Stanislav Decl., ¶ 19).

## B. This Court Lacks Personal Jurisdiction Over Defendant

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). As the Supreme Court has explained, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22, 32.

Here, Plaintiff cannot establish that it is likely to succeed on the merits of the claim because it cannot establish one of the fundamental prerequisites to its lawsuit, personal jurisdiction over Oron. Plaintiff bears the burden of demonstrating that personal jurisdiction exists over each of the defendants in an action as of the date the complaint was filed. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Porche v. Pilot & Associates, Inc.*, 2009 WL 688988 (9th Cir. 2009). "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy

11

1   the requirements of the applicable state long-arm statute." *Id.* "Second, the exercise of jurisdiction

2   must comport with federal due process." *Id.* at 1404-05.

3        Plaintiff contends that this Court has personal jurisdiction over Oron under Nevada's long-

4   arm statute, which extends jurisdiction to the limits of what due process allows.  Plaintiff also asserts

5   personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the federal long arm statute.[6]

6   Under this Rule, Plaintiff must establish that 1) the claim arises under federal law; 2) the Oron is not

7   subject to jurisdiction of any state's court of general jurisdiction; and 3) the court's exercise of

8   jurisdiction comports with due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir.

9   2006).  Under either Nevada's long arm statute or Rule 4(k)(2), the principal question is whether the

10  exercise of personal jurisdiction here comports with due process.

11       Due process requires that a nonresident defendant have sufficient minimum contacts with the

12  forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and

13  substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Applying the

14  "minimum contacts" analysis, a court may obtain either general or specific jurisdiction over a

15  defendant.  General jurisdiction is available where the foreign defendant's activities in the forum are

16  substantial, continuous and systematic, even if the subject of the suit is unrelated to his or her

17  contacts to the forum.  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446 (1952).

18  "The standard for establishing general jurisdiction is 'fairly high," … and requires that the

19  defendant's contacts be of the sort that approximate physical presence….Factors to be taken into

20  consideration are whether the defendant makes sales, solicits or engages in business in the state,

21  serves the state's markets, designates an agent for service of process, holds a license, or is

22  incorporated there." *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th

23  Cir. 2000).  In fact, the Ninth Circuit has "regularly … declined to find general jurisdiction even

24

25  ----

    [6] Plaintiff also alleges that "[a]s a foreign defendant, Oron is subject to jurisdiction in any district."
26  Complaint, ¶ 22 (citing 28 U.S.C. § 1391).  That statute, however, is a venue provision, and does not
    in any way create personal jurisdiction over Oron.  *See, e.g., Weinstein v. Norman M. Morris Corp.*,
27  432 F.Supp. 337, 339 (E.D. Mich. 1977) ("Section 1391(d), as its title indicates, is a venue statute
    and not a statute creating personal jurisdiction in federal district courts.").

28

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 850, n 3 (9th Cir. 1993).[7]

A court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court. The question is "whether the cause of action arises out of or has a substantial connection with that activity." *Hanson v. Denckla*, 357 U.S. 235, 250-253 (1958). The Ninth Circuit uses a three part test for specific jurisdiction: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Bancroft & Masters*, 223 F.3d at 1086. Plaintiff cannot establish either general or specific jurisdiction over Oron.

First, this Court does not have general jurisdiction over Oron, a Hong Kong corporation that primarily does business with internet users from Europe, Asia and Russia. (Stanislav Decl. ¶ 4). Contrary to the allegations of the complaint, only 14.3% of Oron's online traffic is from the United States, and Plaintiff has not shown *any* particular contacts that Oron has had with the State of Nevada. (*Id*.). None of Oron's employees, officers, directors or owners is a United States resident.[8] (*Id*., ¶ 23). The website oron.com is not registered with any registrar within Nevada; in fact, it is registered outside of the United States.[9] (*Id*., ¶ 24). Oron has not entered into any contracts with vendors in Nevada, does not have a registered agent to accept service of process in Nevada or the United States, does not advertise or solicit its business in Nevada or the United States, and is not incorporated in Nevada or the United States. (*Id*., ¶ 25).

---

[7] In *Amoco Egypt Oil Co., supra*, 1 F.3d 848, 851, n.3, the Ninth Circuit noted that the non-resident corporate defendant's lack of a license to do business in the forum state, its lack of offices, property, or employees in the state, and an absence of advertising or business solicitation in the state suggested that the defendant's contacts were inadequate to support the exercise of general jurisdiction.

[8] The complaint alleges that defendant Maxim Bochenko is a resident of Florida and Colorado who is a "director/controlling party" of Oron. That is false. Mr. Bochenko is not an employee, officer, director, managing agent or owner of Oron. (*See* Stanislav Decl., ¶ 23).

[9] In any event, registering a domain name with a U.S. company is insufficient to support personal jurisdiction over a website operator. *See Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 590 (E.D. Va. 2003).

13

Plaintiff nonetheless suggests that because the www.oron.com website is accessible to residents of Nevada, minimum contacts are established.  However, it has been held that a website that permits Nevada residents, among all others in the world, to purchase products on-line is not sufficient to subject Oron to general jurisdiction.  *See, e.g., Mavrix Photo, Inc., v. Brand Technologies, Inc*., 2011 WL 3437047, *6 (9th Cir. 2011) (holding that occasional sales to forum residents by a nonresident defendant do not suffice to establish general jurisdiction, and that "Brand's operation of an interactive website – even a 'highly interactive' website – does not confer general jurisdiction.").  Plaintiff simply cannot meet the rigorous standards enunciated by the Ninth Circuit for establishing general jurisdiction over Oron.  *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (general jurisdiction requires that defendant's contacts be so continuous and systematic that they approximate physical presence).

Second, this Court does not have specific jurisdiction over Oron.  Plaintiff cannot meet the first two prongs of the personal jurisdiction test because (1) Oron has not conducted any business or had any contacts in Nevada; and (2) even if Oron had some insignificant contacts with Nevada, Plaintiff's claims do not "arise out of" those forum related contacts.  Notably, Plaintiff's complaint does not identify any specific conduct by Oron occurring in Nevada, other than the vague allegation that Oron's website is accessible by residents of Nevada.  However, courts have been careful "in resolving questions of personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"  *Be2LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011).  Moreover, the fact that Oron operates a website that is accessible by Nevada residents does not establish specific jurisdiction because Plaintiff's claims do not arise out of that activity – there are no allegations in the complaint that the allegedly infringing material was loaded onto Oron.com by a resident of Nevada.

Significantly, Plaintiff has made – and lost – the exact same argument in an identical case filed against another file sharing company, SunPorno.  In *Liberty Media Holdings LLC v. Serge Letyagin d/b/a Sunporno.com*, Case No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011), Plaintiff

14

initially sought a TRO to freeze assets and prevent the transfer of defendant's domain names to a

third party, although at the hearing it sought only an injunction concerning the domain names.  (*See*

Request for Judicial Notice, filed herewith, Ex. A, at 2).  The allegations against SunPorno were

essentially identical to the allegations that Plaintiff makes here.  (*Id.*, Ex. A at 1-2).  The district

court denied the injunction, in part because the Plaintiff had not shown that SunPorno's conduct

could, "in line with the Constitution, subject it to jurisdiction."  The court rejected the Plaintiff's

argument – the same argument raised here – that Sunporno's "considerable" web traffic originating

from the United States (15% of its total traffic) was sufficient to establish jurisdiction.  There was

also no showing that Sunporno's website directly targeted users in Florida.[10]  (*Id.*, Ex. A at 7-10).

The situation and arguments for the exercise of jurisdiction in this case are identical,

although Oron's users from the United States are even less than in SunPorno. There is no evidence

that Oron has specifically targeted users from Nevada or that any user from Nevada has infringed

Plaintiff's copyrights.  Oron could not reasonably anticipate being "haled into court in Nevada"

based on its operation of a worldwide hosting, file sharing website

Finally, Plaintiff cannot establish specific jurisdiction over Oron by relying on the "effects

test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984).  For *Calder* to apply, the plaintiff must

allege facts sufficient to meet a three-prong test: (1) the defendant must have committed an

intentional tort; (2) the defendant must have expressly aimed his tortious conduct at the forum state;

and (3) the defendant must have caused harm that the defendant knows is likely to be suffered in the

forum state.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

Plaintiff has not satisfied the elements of the *Calder* effects test.  Although Oron is alleged to

have engaged in copyright infringement, it cannot be said that Nevada was the focal point of the

alleged tortious activity in the sense that the tort was "expressly aimed" at Nevada.  The express

aiming requirement is satisfied when defendant is alleged to have engaged in wrongful conduct

---

[10] The SunPorno court also rejected Liberty's arguments that its "business model is premised on operating and broadcasting pirated works into the United States and that Defendant has "established several jurisdictions" in the United States through unidentified advertising and contracting activity. (*See* Request for Judicial Notice, , Ex. A, at 8, n.5).

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

1   individually targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

2   *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).   As

3   discussed in more detail below, there is no evidence that Oron had actual knowledge that allegedly

4   infringing material had been uploaded onto its website, or that the party claiming to have exclusive

5   rights to the copyrighted material was a resident of Nevada.  And in any event, without individual

6   targeting, mere knowledge that a plaintiff resides in the forum state is not necessarily sufficient to

7   confer jurisdiction, even if harm occurs in the forum state.  *Schwarzenegger,* 374 F.3d at 807.

8          Plaintiff has failed to meet its burden of establishing minimum contacts under either the

9   Nevada long arm statute or Rule 4(k)(2), and thus cannot demonstrate that this Court has personal

10   jurisdiction over Oron.  As such, Plaintiff cannot establish that it is not likely to prevail in this case.

11          **C.     Plaintiff Cannot Show a Likelihood of Success on the Merits of Its Claims**

12          Not only will Plaintiff be unable to establish personal jurisdiction, but its complaint will also

13   fail because it cannot establish that it has any valid claims against Defendants.  Consequently, it has

14   no "likelihood of success" on its claims, and its motion for preliminary injunction should be denied.

15                  **1.     Copyright Infringement**

16                  **a)     Oron Is Entitled to the Safe Harbor Protection of the DMCA**

17          Oron cannot be held liable for copyright infringement since it falls under the safe harbor

18   provision of the DMCA, 17 U.S.A. § 512 and as such, Plaintiff cannot show a likelihood of success

19   with respect to the copyright claims which are at the heart of its complaint.  Oron meets the

20   requirements of Section 512(c) of the DMCA, and thus as a "service provider" it has no liability for

21   "infringement of copyright by reason of the storage at the direction of a user of material that resides

22   on a system or network controlled or operated by or for the service provider…."  17 U.S.A. §

23   512(c)(1).  This safe harbor provision limits liability for both direct and secondary copyright

24   infringement.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007).[11]

25

26   [11]  Plaintiff alleges in its complaint that while a web hosting company could normally take advantage
27   of the safe harbor provisions of the DMCA, Oron is not entitled to such protection because the
     alleged infringements took place prior to the Defendant registering a DMCA agent.  (*See* Complaint,
     Para 46).  Thus, Plaintiff's only argument that the DMCA does not protect Oron appears to rest on

28   ──────────────────────────
                                16

### b)   Oron Has Met the Conditions of Section 512(c)(1)

To qualify for safe harbor protection of the DMCA, a service provider must meet the three requirements delineated in section 512(c)(1):

a.   It must not have actual knowledge of the infringing material or activity on the network; or, in the absence of such knowledge, it must not be aware of facts from which the infringing activity is apparent; or upon obtaining such knowledge or awareness, acts expeditiously in removing or disabling access to the material;

b.   It does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control the activity; and

c.   Upon notification of claimed infringement (as described in section 512(c)(3)), it responds expeditiously in removing or disabling access to the material claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(A), (B), (C).  Oron meets all three conditions.

First, with respect to the "knowledge" element, the Ninth Circuit has made clear that knowledge or awareness of the infringement must be specific and actual, because the copyright holder, rather than the service provider, is in a better position to know whether material is infringing:

> Copyright holders know precisely what materials they own, and are thus better able to efficiently identify infringing materials they own, and are thus better able to efficiently identify infringing copies than service providers….who cannot readily ascertain what material is copyright and what is not. …

> [A] [service] provider could not be expected, during the course of its brief cataloguing visit, to determine whether [a] photograph was still protected by copyright or was in the public domain; if the photograph was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine.

*UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 667 F.3d 1022, 1037 (9th Cir. 2011) (citing S.Rep. No. 105-190, at 48 and H.R. Rep. No. 105-551, pt. 2, at 57-58).  Here, Plaintiff has presented no evidence of Oron's actual knowledge or awareness of any infringement of Plaintiff's copyrighted

---

the timing of registration of the agent.  However, as set forth below, the timing of Oron's registration does not "save" Plaintiff's claim or support its request for a preliminary injunction.  To the contrary, Plaintiff has acknowledged that Oron has taken down the allegedly infringed materials (and has not specified any allegedly infringing material that still resides on the site).  An injunction may only act prospectively, and cannot enjoin that which is moot.

17

1    material other than that which was reported to Oron and which Oron then removed.

2        Plaintiff appears to rely on the notion that merely because Oron's users are able to upload

3    copyrighted material, Oron must know of that infringement.  But that is not enough.  As the Ninth

4    Circuit has held, "if merely hosting [potentially protected] material . . . with the general knowledge

5    that one's services could be used to share unauthorized copies of copyrighted material, was

6    sufficient to impute knowledge to service providers, the § 512(c) safe harbor would be rendered a

7    dead letter: § 512(c) applies only to claims of copyright infringement, yet the fact that a service

8    provider's website contained copyrightable material would remove the service provide from § 512(c)

9    eligibility." *UMG Recordings*, 667 F.3d at 1036-37.

10       In addition, the three prongs of Section 512(c)'s "knowledge" requirement must be read as a

11   whole.  "Under § 512(c)(1)(A), knowledge or awareness of infringement alone does not disqualify

12   the service provider from safe harbor protection, rather, the provider that gains knowledge of

13   infringing activity retains safe-harbor protection if it 'acts expeditiously to remove, or disable access

14   to, the material.'"  *Viacom Int'l, Inc. v. YouTube, Inc*., 676 F.3d 19, 30 (2nd Cir. 2012).  Plaintiff

15   concedes that Defendants have removed the majority of the allegedly protected materials identified

16   in the Complaint, and offers no evidence that allegedly infringing materials remain online, or that

17   Oron has not expeditiously removed such infringed materials once given notice.

18       Oron also meets the second element of the safe harbor provision relating to control.  Oron

19   does not have the ability to control all of the infringing activity that may take place on its site.  It

20   would be a "practical impossibility" for Oron to "ensure that no infringing material is ever uploaded

21   to its site, or to remove unauthorized material that had not yet been identified" to Oron as infringing.

22   *UMG Recordings, Inc*., 667 F.3d at 1041.  When a subscriber uploads material to the website, Oron

23   creates a unique URL which allows the subscriber, not Oron to provide access to the uploaded

24   material.  (*See* Stanislav Decl., ¶6).  There is nothing in this system that gives Oron the right and

25   ability to control the allegedly infringing conduct.  There is no index of materials, and the database is

26   not readily searchable.  (*Id*., ¶ 7).  In fact, it would be essentially impossible to "search" video files

27   for allegedly infringing content without actually viewing them.  Even if it could, Oron would not

28

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

know whether any uploaded material was being used without the copyright holder's permission. Only the subscribers control whether they infringe copyrights by sharing their URL so that others have access to copyrighted material.  (*Id*.) As such, Oron does not "possess the 'needed powers … or needed resources' to be 'competen[t] in' exercising the sort of 'restraining domination' that § 512(c)(1)(B) requires for denying safe harbor eligibility." *Id*.  "A service provider's general right and ability to remove materials from its services is, alone, insufficient." *Id*. at 1043.

Nor does Oron directly benefit financially from the allegedly infringing activity.  A "direct financial benefit" is one in which the service provider derives "a direct financial benefit from the infringement and ha[s] the right and ability to supervise the infringing activity." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007)(quoting *Ellison v. Robertson*, 357 F.3d 1074, 1078 (9th Cir. 2004)).  Hosting a website, sometimes for a fee – as Oron does here – is insufficient to show that the infringing activity was a "draw" for subscribers, and not just an added benefit, as is required.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d at 1117-1118.

Oron also satisfies the third safe harbor condition of Section 512(c)(1).  As Plaintiff concedes, once a DMCA notice is submitted to Oron, the infringing material is taken down.  (TRO Motion at 6:6-7).  Plaintiff fails to provide any evidence that Oron has knowledge of any material of Plaintiffs that Oron has refused to take down.  Moreover, for more than 18 months, Oron has given Plaintiff's own agent, Porn Guardian, unprecedented access to Oron's servers to directly remove any infringing material that belongs to Plaintiff.  (*See* Stanislav Decl., ¶ 13 Ex. 13).

### c)      Defendant Has Also Met the Conditions of section 512(i)

In addition to satisfying Section 512(c)(1), to qualify under the safe harbor provision a service provider must also meet the requirements of section 512(i), namely, that it:

> a.    Has adopted and reasonably implemented a termination policy of repeat infringers, and informs subscribers and account holders of the same; and
>
> b.    Accommodates and does not interfere with standard technical measures.

17 U.S.C. §§ 512(i)(A), (B).

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

Oron has satisfied both requirements.  First, Oron has adopted a strict termination policy against repeat infringers.  Paragraph 8.4.3 of the terms of service agreement (which terms subscribers must agree to before entering the site) provides that:  "We have a policy of terminating, without notice and without recourse, accounts of subscribers or account holders who are repeat infringers of copyright based upon a suspicion on our part or a notice we receive regardless of any proof of infringement."  Oron has rigorously implemented this policy.  When there are repeat infringers, their accounts are blocked and terminated.  (*See* Stanislav Decl., ¶¶ 16 & Ex. C).

Second, Oron accommodates and does not interfere with standard technical measures.[12]  To the contrary, Oron gave Plaintiff (though its agent Porn Guardian), direct access to Oron's servers to search for and take down infringing material.  (*Id*., ¶ 12-14).

### d)    Defendant Has Met the Conditions of section 512(c)(2)

Under the DMCA, a service provider is also supposed to designate an agent to receive notifications of claimed infringement.  The contact information is to be made available to the public on its website, and provided to the U.S. Copyright Office. 17 U.S.C. § 512(c)(2).

Here, Oron has had a DMCA program in place since 2001, and the "report abuse" and "terms of service" links, visible on the first page of the website, clearly identify how and to whom to report incidents of copyright infringement.  (*See* Stanislav Decl., ¶¶ 8, 9 & Exs. A-C).  While Oron formally designated an individual agent with the Copyright Office on June 15, 2011 (*id*., ¶ 10), the absence of a registered agent prior to that time did not in any way impede Plaintiff's ability to send DMCA notices to Oron – it  is undisputed that Plaintiff sent DMCA Notices to Oron prior to June 15, 2011, and those Notices were quickly acted upon.  (*Id*., ¶ 11 & Exs. D, E).  Oron also gave Plaintiff's agent Porn Guardian access to Oron's servers to search for and remove infringing material well before Oron designated its agent with the Copyright Office.  (*Id*., ¶¶ 12-14),

---

[12] The "term 'standard technical measures' means technical measures that are used by copyright owners to identify or protect copyrighted works and -- (A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process; (B) are available to any person on reasonable and nondiscriminatory terms; and (C) do not impose substantial costs on service providers or substantial burdens on their systems or networks."  17 U.S.C. § 517(i)(2).

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

Because Oron is afforded the protections under the DMCA safe harbor provision, it cannot be held liable for monetary damages for copyright infringement or permanently enjoined.  Thus, an injunction freezing Oron's assets based upon claims of copyright infringement would be completely inappropriate because Plaintiff is not likely to succeed on the merits of its claims.

       e)        **Plaintiff Cannot Show a Substantial Likelihood of Success on its Direct Copyright Infringement Claim**

Even if the DMCA safe harbor provision did not apply (which it does), Plaintiff has not demonstrated that it is likely to succeed on the merits of its various copyright infringement claims.

To establish a case of direct copyright infringement, a plaintiff must show that 1) it owns the copyright for the allegedly infringing material, and 2) that defendant violated at least one of the exclusive rights of the copyright holder.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).  In addition, a "plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement."  *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (citing to *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1369-70 (N.D. Cal. 1995)); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 547 (4th Cir. 2004) (holding that because the defendant, "as an Internet service provider, is simply the owner and manager of a system used by others who are violating [plaintiff's] copyrights and is not an actual duplicator itself, it is not directly liable for copyright infringement.")

       (1)        **Plaintiff Has Not Presented Valid Copyright Registrations or Applications Thereto**

Before bringing a copyright infringement action, a plaintiff must have either obtained a federal registration for its alleged copyright, or applied for a registration.  *See* 17 U.S.C. 411(a); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010).

Here, Plaintiff has not shown that it obtained U.S. copyright registrations for all of the alleged copyrighted material, or applied for any such registrations.  Plaintiff attached as Exhibit 10 to its Complaint a list of approximately 124 movies allegedly registered with the U.S. Copyright Office.  The chart purports to identify the "Title of Original Work" and the corresponding "Copyright Registration Number."  Yet a quick review on the Copyright Office's website establishes

21

that Plaintiff does not have a copyright for any of the listed titles, and has misidentified copyrights that it purports to have registered.

For example, Plaintiff identified Copyright Registration Number PA 1-167-385 for the work entitled, "Trey." (*See* Ex. 10 to Plaintiff's Complaint, attached as Ex. B to Request for Judicial Notice ("RJN"), at page 1, first row).  However, that copyright registration (PA0001167385) belongs to a work of music entitled, "Clinging to the vine."  (*See* RJN, Ex. C).  Similarly, Plaintiff identifies Copyright Registration Number PA 1-610-794 for the work entitled, "Dylan II".  (*See* Ex. 10, page 1, second row (RJN, Exh. B).  Yet the copyright registration (PA0001610794) belongs to a motion picture work entitled, "Corbin Fisher's Amateur College Men Presents Dylan." (*See* RJN, Ex. D).  As yet another example, Plaintiff identifies Copyright Registration Number PA 1-782-555 for the work entitled, "Carter Fucks Austin."  (*See* Ex. 10, page 14, last row (RJN, Exh. B). But that copyright registration (PA0001782555) belongs to a motion picture work entitled, "Corbin Fisher Amateur College Men Carter Fucks Austin" (*See* RJN, Ex. E).[13]

These are but a few examples.  Having failed to identify any valid copyright registrations for its allegedly infringed material, Plaintiff cannot maintain its copyright claim against Oron, and certainly cannot establish a likelihood of success on the merits of that claim.

### (2)   Plaintiff Cannot Demonstrate the Requisite Volitional Conduct

Nor can Plaintiff establish that Oron acted with the volition required for direct infringement liability.  For example, there is no evidence that Oron chose or personally posted any of the infringing material.   Oron does not index or organize the allegedly infringing content in any fashion.  Oron has given Plaintiff direct access to its server through Plaintiffs' agent to remove infringing material.   Because there is no showing of volitional conduct, Plaintiff cannot establish that it is likely to prevail on its claim for direct copyright infringement.

### f)   Plaintiff Cannot Show a Substantial Likelihood of Success on its

---

[13] Oron apologizes for the need to include profanity in its brief.  In order to defend itself here against an attack on its viability as an ongoing business concern, however, Oron must use the actual titles of the works at issue to demonstrate a lack of compliance here with basic copyright allegations.

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

**Contributory Copyright Infringement Claim**

Plaintiff's effort to establish a claim for contributory infringement will be equally unavailing. A defendant "is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and 2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007) (citation omitted).  In an Internet context, "a computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,'… and can 'take simple measures to prevent further damage' to copyrighted works, . . . .yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com,* 508 F.3d at 1172 (italics in original) (citations omitted).

Here, there is no evidence that Oron had actual knowledge of the infringing material (other than when it was reported to Oron and taken down).  Oron has no way of knowing, for example, if a subscriber who may have uploaded one of Plaintiff's videos was going to view the uploaded material for himself, or share it with others.  *See, e.g., UMG Recordings*, 667 F.3d at 1037.  There is simply no evidence that Oron somehow induced, caused or materially contributed to the infringing conduct.

> **g)     Plaintiff Cannot Show Likelihood of Success on its Vicarious Liability Claim**

To establish a claim for vicarious liability for copyright infringement, a plaintiff must establish that the "defendant profits directly from the infringement and has a right and ability to supervise the direct infringer even if the defendant initially lacks knowledge of the infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, n 9 (2005).  A "defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com*, F.3d at 1173.  "For vicarious liability to attach … the defendant must have the right and ability to *supervise and control* the infringement, not just affect it …." *Perfect 10 v. Visa*, 494 F.3d at 805.

Here, Oron does not have the right or ability to supervise the direct infringement of Plaintiff's material.  Rather, it is the subscriber who uploads material to the website, and controls access to that material via the URL generated by Oron.  There is nothing in that system that gives Oron the right and ability to supervise allegedly infringing conduct.

23

Second, as set forth above, Plaintiff has failed to establish that Oron profits directly from the infringement.  Oron charges a fixed fee for services – it does not charge for specific uploads. Regular services are free.  Plaintiff has offered no evidence of any connection between infringing activity and Oron's profits, and thus cannot satisfy this element of its claim.

### h)   Plaintiff Cannot Show a Substantial Likelihood of Success on its Inducement of Copyright Infringement Claim

To establish a claim for inducement of copyright infringement, Plaintiff must establish that Oron provided a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement…." *Grokster*, 545 U.S. at 936-937.  There must be evidence of "active steps … taken to encourage direct infringement…such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged…."  *Id*. at 936. "[M]ere knowledge of infringing potential or actual infringing uses would not be enough … to subject [a defendant] to liability."  *Id*. at 937.  "The inducement rule, instead, premises liability on purposeful, culpable, expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise."  *Id*.

Here, Plaintiff has provided no evidence that Oron actively promoted its service to commit copyright infringement, or that the service has no other legitimate use. As such, it cannot establish a likelihood of success on this claim

### i)   Plaintiff cannot show a likelihood of success with respect to its claim for Civil Conspiracy

Although the Complaint includes a claim for civil conspiracy (Complaint, ¶ 105), Plaintiff does not rely on that claim as a basis for the requested preliminary injunction.  In any event, Plaintiff cannot establish that it is likely to succeed on that claim.  There is no federal common law claim for conspiracy to violate the copyright laws.  In addition, "[u]nder Nevada law, to establish a civil conspiracy claim, a plaintiff must show (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort."  *Boorman v. Nevada Memorial Cremation Society, Inc.*, 772 F.Supp.2d 1309, 1315 (D. Nev. 2011).  As noted above, Plaintiff cannot establish

24

that Oron is liable for copyright infringement, and thus it cannot prove a state law conspiracy claim.

Even if it could, such a claim would be preempted by Section 301(a) of the Copyright Act, 17 U.S.C. §301(a).  The Ninth Circuit applies a two-part test to determine whether the Copyright Act preempts a state law claim.  *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).  Preemption occurs when (1) the rights granted under state law are equivalent to those protected by the Act; and (2) the work involved comes within the subject matter of copyright.  *Id.* Here, Plaintiff alleges a conspiracy claim that seeks to protect the same rights covered under his copyright infringement claims for works which are within the subject of the Copyright Act.  Federal courts have held that such claims for conspiracy to infringe a copyright claim are preempted.  *See, e.g., Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1193-94 (C.D. Cal. 2001) (finding claim for relief for civil conspiracy was a restatement of a "conspiracy to infringe copyright" claim and was preempted because it sought liability "for the same conduct challenged under copyright"); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F.Supp.2d 556, 565–66 (C.D.Cal.2005) (civil conspiracy claim based on copyright infringement preempted because it did not contain extra elements beyond the basic elements of copyright and did not protect rights qualitatively different from those protected by copyright); *Irwin v. ZDF Enters. GmbH*, No. 04-8027, 2006 WL 374960, at *3-5 (S.D.N.Y. Feb. 16, 2006) (finding "the nature of the misconduct that conspiracy law seeks to redress is not qualitatively different from that addressed by contributory and vicarious infringement" and finding conspiracy claim preempted).  Plaintiff cannot establish a likelihood of success on its civil conspiracy claim.

> **j)      Plaintiff cannot show a likelihood of success with respect to its claim of Unfair Competition**

As with its civil conspiracy claim, Plaintiff does not argue that it has a likelihood of success on its unfair competition claim.  Even if it did, it could not show a likelihood of success.

First, the Complaint fails to allege the basis for Plaintiff's unfair competition claim.  Although identified as an "Unfair Competition Law" claim, Plaintiff does not cite any statutory authority as the basis for its claim.  There is no common law unfair competition claim under either federal law or Nevada law.  Given that Plaintiff has not even adequately pled its claim for "unfair

25

competition," it cannot be heard to argue that it is likely to prevail on the merits of that claim.

Second, even if there were some statutory or common law basis for this claim, it is premised entirely on Plaintiff's copyright infringement claims and, as explained above, Plaintiff cannot establish a likelihood of success on its copyright claims.  In addition, the Ninth Circuit has held that, in the context of California's unfair competition law, that state unfair competition claims are preempted by the Copyright Act.  *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211-13 (9th Cir. 1998); *see also Videotronics, Inc. v. Bend Electronics*, 564 F. Supp. 1471, 1476 (D. Nev. 1983) (noting that "property which is subject to protection under federal patent or copyright law cannot also obtain the benefit of protection under either state unfair competition or misappropriation law for the same reasons").  Under the same analysis, the result in Nevada should be no different

### D.   While Plaintiff Will Not Be "Irreparably Harmed" Absent the Requested Relief, Entry of The Proposed Injunction Would Put Oron Out Of Business

Even if Plaintiff could show a likelihood of success on the merits (which it cannot), "plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Winter v. National Res. Defense Council, Inc.*, 550 U.S. 7, 22 (2008). Irreparable harm requires an inadequacy of legal remedies.  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 2001).  Thus, the threat of lost revenue or lost sales, alone, will not warrant the issuance of a preliminary injunction.  *Id.*; *Kerr Corp. v. North America Dental Wholesalers*, 2011 WL 2269991, *4 (C.D. Cal. 2011).

Although Plaintiff suggests that irreparable harm in copyright cases is presumed, that is not the law in this circuit.  To the contrary, the Ninth Circuit has confirmed that irreparable harm is no longer presumed in copyright infringement cases.  *See e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)); *see also Skinvisible Pharm., Inc. v. Sunless Beauty*, Ltd., 2012 WL 1032549,  * 2-3 (D. Nev. 2012).

Apparently relying on that non-existent presumption, Plaintiff has not presented any evidence to support its claim of irreparable harm.  Specifically, Plaintiff has not established by any admissible

evidence that it has and/or will suffer any damages other than a monetary loss from alleged copyright infringement that occurred in the past.  That is not enough to establish irreparable injury. *See e.g., Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award").  Moreover, Plaintiff waited months and years after the alleged infringement to bring suit.  Such a long delay undercuts Plaintiff's ability to prove irreparable harm.  *See e.g., McDermott v. Amersand Pub.*, LLC, 593 F.3d 950, 964-65 (9th Cir. 2010) (no irreparable harm found given long delay in seeking injunction).

Plaintiff's only argument that it will be irreparably harmed is its unsubstantiated claim that Oron will transfer all of its funds offshore in order to "hide them" from Plaintiff and the Court. First, that argument is factually incorrect. The only "evidence" that Plaintiff identifies of immediate and irreparable is an email, obtained through nefarious means, indicating that PayPal transferred funds to an account for Oron.  Plaintiff has proffered no evidence that this transaction was anything but in the normal course of business, let alone that it was part of some nefarious effort to conceal funds.  (*See* Stanislav Decl., ¶ 19).  Moreover, as discussed above, the United States Supreme Court has ruled that a court may not grant preliminary injunction to freeze assets to be available for a monetary damage award.  *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).  Nor has Plaintiff met its burden of demonstrating immediate threatened injury as a prerequisite to preliminary injunctive relief.  *Los Angeles Mem.'l Coliseum*, 634 F.2d at 1201.  The mere possibility of future harm does not establish an immediate threat of irreparable harm.  *See Midgett v. Tri-Country Metro. Trans. Dist. of Oregon*, 254 F.3d 846, 850-851 (9th Cir. 2001).

**E.    The Balance of the Equities Favors Denial of Plaintiff's Motion**

Plaintiff cannot obtain a preliminary injunction unless it can establish that the balance of equities is in its favor.  *Winter*, 555 U.S. at 20.  Balancing the equities requires consideration of the relative inconvenience or hardship to the parties resulting from a decision to grant or deny injunctive relief.  *Yakus v. U.S.*, 321 U.S. 414, 440 (1944).  Here, however, there is no evidence that Plaintiff faces "irreparable harm" if the injunction is not entered.  By contrast, the potential harm to Oron –

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

1   having its business shut down without any finding of infringement on its part – is significant.

2   **F.     Plaintiff Has Not Shown That An Injunction Is In The Public Interest**

3   This case involves a commercial dispute between private parties, and is not one in which a

4   public interest is prominent.  *Stormans v. Selecky*, 568 F.3d 1109, 1139 (9th Cir. 2009).  In any

5   event, the public interest is not served by permitting a plaintiff to drive a lawful worldwide entity out

6   of business based on nothing more than the unproven allegations of a complaint.  A defendant's right

7   to due process is undoubtedly entitled to more weight.  Nor is the public interest served by causing

8   thousands of innocent users to irretrievably lose the data they have stored on Oron.com solely to

9   protect the copyright of Plaintiff's pornographic material.  Indeed, that interest is already met by

10  Oron's ongoing adherence to the DMCA.

11  **G.     Even If The Court Finds That Preliminary Relief Is Warranted, The Proposed
         Injunction Should Be Modified**

12  Even if the Court were to find that Plaintiff is entitled to a preliminary injunction, it should

13  not enter an injunction in the form requested.

14  The law in the Ninth Circuit and elsewhere addressing asset freezing injunctions amply

15  supports giving Oron access to its funds in order to pay for its ongoing business expenses and its

16  legal defense.  For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988),

17  the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing of any of

18  their assets.  In balancing the relative hardships to determine the propriety of the injunction, the

19  Court relied upon the fact that the district court had provided that the Marcoses could use their assets

20  "to cover normal living expenses and legal fees."  *Id.* at 1362; *see also Johnson v. Couturier*, 572

21  F.3d 1067, 1085-86 (9th Cir. 2009) (upholding asset freezing injunction where limited to defendant's

22  assets in which plaintiffs had equitable interest, and where injunction allowed assets to be used for

23  "normal living expenses and legal fees"); *Securities and Exchange Commission v. Hickey,* 322 F.3d

24  1123, 1131 (9th Cir. 2003) (injunction allowing payment of corporate business expenses); *Fidelity*

25  *Nat'l Title Ins. Co. v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011) (asset freezing

26  injunction allowed defendant to use personal funds to cover living expenses); *United States v.*

27

28

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

1  *Brown,* 988 F. 2d 658 (6th Cir. 1993) (affirming injunction allowing defendant to pay business

2  expenses but remanding to ensure only funds that plaintiff might ultimately recover were frozen).[14]

3        Accordingly, if the Court were to grant Plaintiff's motion, the Court should tailor the

4  injunction to the harm Plaintiff has alleged and, at a minimum, allow Oron sufficient funds to pay its

5  legal costs, both here and in Hong Kong, and its reasonable business expenses.

6        **H.   If the Court Grants Plaintiff's Motion and Enters a Preliminary Injunction, Plaintiff's Bond Should Be Increased Significantly**

7

8        Under the Federal Rules of Civil Procedure, "no restraining order or preliminary injunction

9  shall issue except upon the giving of security by the applicant …." Fed.R.Civ.P. 65(c).  Although

10  the amount of the bond lies in the court's discretion, failure to require a bond upon issuing injunctive

11  relief is reversible error.  *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th

12  Cir. 1999).  "When setting the amount of security, district courts should err on the high side . . . [A]n

13  error in the other direction produced irreparable injury, because the damages for an erroneous

14  preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbot Lab.*,

15  201 F.3d 883, 888 (7th Cir. 2000).  As shown above, entry of the requested injunction would have a

16  devastating impact on Oron and its business.  Accordingly, if the Court were to grant Plaintiff's

17  motion for preliminary injunction, Plaintiff should be required to post a bond of at least $3,000,000.

18        **I.   Plaintiff Is Not Entitled to Appointment of a Receiver**

19        Under federal law, appointing a "receiver is an extraordinary equitable remedy," which

20  should be applied with caution. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir.

21  2009) (citation omitted).  As the Ninth Circuit has recognized, a variety of factors are relevant to

22  determining whether to appoint a receiver, including: (1) "whether [the party] seeking the

23  appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of

24  fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost,

25

26  [14] While there is authority that, in appropriate cases, a district court has discretion to forbid or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading Commission v.*

27  *Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995), the cases so holding have involved circumstances going far beyond those presented in this case, and are thus inapposite.

28

29

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ

concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* (citations omitted).

Evaluating those factors here, there is no basis for appointing a receiver. Plaintiff has no valid claims against Oron, and cannot establish either a likelihood of success on the merits or the possibility of irreparable harm. The legal remedies sought by Plaintiff – money damages – are adequate. In addition, contrary to Plaintiff's unsupported suggestion that Oron has attempted to "fraudulently transfer" funds to Hong Kong, the evidence shows that those transfers were made in the ordinary course of business for a Hong Kong company. (*See* Stanislav Decl., ¶ 19). Finally, there is no evidence that denying the request for a receiver would harm Plaintiff, let alone that such harm would outweigh the injury to Oron if it were to lose control of its business. Indeed, Plaintiff offers no evidence that there is any immediate need for appointment of a receiver here.

Finally, the mere fact that Plaintiff has "worked with" the proposed receiver on other cases is not a substitute for an analysis of the factors above, and does not counsel in favor of appointing a receiver here. To the contrary, that prior relationship between Plaintiff and the proposed receiver is irrelevant to the question of whether a receiver is appropriate under the facts of this case. Because the factors above weigh heavily in Oron's favor, the request to appoint a receiver should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court deny Plaintiff's motion for entry of a preliminary injunction and appointment of a receiver.

Dated: July 31, 2012                    Krieg, Keller, Sloan, Reilley & Roman LLP

By:  _____/s/Kenneth E. Keller_____
     KENNETH E. KELLER
     Attorneys for Defendant FF MAGNAT LIMITED

DEFENDANT FF MAGNAT LIMITED'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION AND APPOINTMENT OF RECEIVER
CASE NO. 2:12-cv-01507 GMN-RJJ