# EXHIBIT 4

A                                                         HCMP1275/2012                A

B           IN THE HIGH COURT OF THE
        HONG KONG SPECIAL ADMINISTRATIVE REGION                                         B
                COURT OF FIRST INSTANCE
C        MISCELLANEOUS PROCEEDINGS NO. 1275 OF 2012                                     C

                   ----------------------
D                                                                                       D
    BETWEEN

E                                                                                       E
                    LIBERTY MEDIA HOLDINGS, LLC         Plaintiff

F                              and                                                      F

                    FF MAGNAT LIMITED                   Defendant
G                                                                                       G
                   ----------------------

H   Before:   Deputy High Court Judge Saunders in Chambers (Open                        H
              to Public)
    Date of hearing:   6 July 2012 at 10.05 am
I   Present:  Ms P Wong, of Messrs Gall, for the Plaintiff                              I
              Mr Chase Pun, instructed by Messrs S T Poon & Wong, for
J             the Defendant                                                             J

                   ----------------------
K                       P R O C E E D I N G S                                           K
                   ----------------------

L                                                                                       L
    COURT:  Miss Wong.

M   MR PUN:  May it please my Lord, I appear for the defendant.                         M

    MS WONG:  I appear for the plaintiff.
N                                                                                       N
    COURT:  Thank you.

O                                                                                       O
    MS WONG:  There are two applications before the court today, the
         plaintiff's application for the continuation of the Mareva
P        injunction for a period of 14 days, and there's also the                       P
         defendant's application to discharge the Mareva, and for
         other orders.
Q                                                                                       Q
    MR PUN:  Yes, my Lord, this is the defendant's application for
R        discharging the ex parte order...                                              R

    COURT:  I've read your skeleton.
S                                                                                       S
    MR PUN:  Yes, my Lord.

T                                                                                       T
    COURT:  There's been proper disclosure.  The information was all
         before the judge and what the information disclosed is that
U        you're acting for a company that hasn't taken any steps,                       U

    CRT30/6.7.2012/CC                      1               HCMP1275/2012/Proceedings
V                                                                                       V

there's no affidavits before me, nothing that I can draw any inference from. The only inference I can draw is that there is a bank statement which shows a company which is rapidly moving its money out of the United States into another jurisdiction where it invests it in gold. If that's not a prima facie case of dissipation, I'm not sure what is.

MR PUN:  Yes, that's my submissions...

COURT:  Your best case is to ask for directions, isn't it?

MR PUN:  Yes, if that's the case, coupled with the...

COURT:  Could I have the skeleton from the defendant, please. Mr Pun had filed a very sensible skeleton in which he set out some directions. That's what I want from him. Sorry, here it is here.

MR PUN:  You've got it.

COURT:  Yes, I had it all along, Mr Pun. It was my fault, it was here. Miss Wong, I have already indicated to Mr Pun that I don't see any merit in his application to discharge at this stage. There has been sufficient disclosure because the whole of the bank statement was put before the judge, but I am sympathetic to letting him have the directions he seeks. Do you have anything you wish to say about the directions in paragraph 22 of the skeleton?

MS WONG:  My Lord, we've annexed the draft order that we propose to our skeleton submission.

COURT:  I'm not going to dismiss the summons. It's to be adjourned sine die, to be brought on for hearing at the same time as the substantive application. So paragraph 1 of your draft will be amended accordingly.

Mr Pun, what do you say about paragraph 2 of Miss Wong's proposed directions? Have you got those?

MR PUN:  May I have a moment? May I have a copy of this draft?

COURT:  You will see, at the bottom of page 1, she asks for your summons to be dismissed with costs against you. I'm not going to give her that. I'm going to adjourn your summons so that the question of discharge and the grounds that you rely on remain alive.

MR PUN:  Yes.

COURT:  And costs are reserved on that.

MR PUN:  I'm grateful.

COURT: She asks then that the plaintiff's summons for the injunction be adjourned to the summons judge on 20 July. What do you say to that?

MR PUN: Yes. I think if that's the case, the defendant's summons, I wonder whether it should be adjourned to the same day?

COURT: Well, I'm wondering if you're going to have -- no, she actually goes to paragraph 4. She wants 35 days to file affidavits in response. Let's make this more sensible. You will have - I'm going to deal with this, this way - your summons will be adjourned in accordance with paragraph (1) of your directions to a date to be fixed in consultation with counsel's diaries with three hours reserved. So that order is made.

MR PUN: Yes.

COURT: The plaintiff -- you're going to file your affirmations first in response.

MR PUN: In fact, the same has been filed yesterday. I wonder whether it...

COURT: That hasn't come to me.

MR PUN: I apologise.

COURT: All right, you got your affidavits in.

MR PUN: Yes.

COURT: So Miss Wong, 35 days is too long. Mareva injunctions should not sit around. I know this comes from the United States; we have things called telephones and we have a strange thing called the internet which means they can get an affidavit to you within six minutes.

MS WONG: Yes, I understand, my Lord, it's just...

COURT: So you will have -- Mr Pun has filed his affidavit. Has it been served on you yet?

MS WONG: Yes, it was served with the bundle yesterday.

COURT: All right, fine, you'll have 14 days to reply. Mr Pun has 14 days thereafter to reply to your...

MS WONG: My Lord, if I may just add that the parties have come to a settlement agreement and the parties wish to have 14 days in order to enforce the settlement agreement, or perform the settlement agreement, and in that time, we've asked for 35 days so that we could try to resolve the matter

A        and not incur further legal costs in the meantime, and if it doesn't resolve, then we will put on our affidavit evidence.

B   COURT: Do you know about that?

C   MR PUN: I'm not aware of that. But in fact, last week, those instructing me received the message from the US party that they're negotiating. But in fact -- and we tried to vacate today's hearing.

D

E   COURT: All right. I'm going to stand down for five minutes. I think the solicitors and counsel had better talk to each other. If it is right that some form of settlement has been arranged, then it is silly to make people file affidavits and incur expense. If Miss Wong is right, and if you accept that, I will adjourn the matter for 14 days to the summons judge. If a settlement cannot be effected in that time, then I would expect you to come back to the summons judge with an agreement direction in respect of filing affidavits.

Miss Wong, you shouldn't expect 35 days from 14 days.

I   MS WONG: Yes, my Lord.

J   COURT: At the best, you would get from me 14 days, all right.

  MS WONG: Yes.

K   COURT: So I'll adjourn now. Have a talk about it and my clerk will let me know when you're in a position to tell me what the position is.

M   MR PUN: I'm grateful.

<u>Hearing adjourns - 10.13 am</u>

<u>Hearing resumes - 10.30 am</u>
Appearances as before.

  COURT: Miss Wong, what's the position?

  MS WONG: My Lordship, the plaintiff was happy to adjourn the matter for 14 days, however, the defendant did not agree to that. As such, we seek directions and we ask for 28 days for our affidavits in reply.

  COURT: All right. The defendant's inter partes summons is adjourned for argument on a date to be fixed in consultation with counsel's diaries, three hours reserved. The plaintiff has 14 days' leave to file and serve affirmation in opposition; defendant, 14 days to file and serve its affidavit thereafter. No further affirmations without leave.

      Mr Pun, I'm not prepared to release the money at this stage.

MR PUN: My Lord, in fact, the affidavit has been filed by my client and served on the other side yesterday.

COURT: You're only asking for 3.4 million out of - how much is the total in the account?

MR PUN: Eight million, over 8 million.

COURT: Yes.

MR PUN: But there's evidence that those amount is the usual business expenses.

COURT: What is the evidence as to that, please?

MR PUN: My Lord, I wonder whether you -- before you there is a bundle from the defendant.

COURT: Yes.

MR PUN: Yes. My Lord, I do apologise for the late filing of those evidence but it has been explained by those instructing me...

COURT: Whose affidavit is it?

MR PUN: The second affidavit of Miss Wong Suk-mei, starting from...

COURT: Well, that affidavit doesn't appear to be before me.

MR PUN: It's in a bundle, starting from page 15 of the defendant's bundle.

COURT: Page 15, yes, all right. Where do you give the information about these expenses?

MR PUN: Yes. My Lord, attached to the second affirmation of Wong Suk-mei is the second affirmation of Stanley Lee David Clough(?), starting from page 19, which has been affirmed but he is on the way to Hong Kong.

COURT: Yes.

MR PUN: In fact, there is explanation in this affidavit about the transfer of the funds from US to Hong Kong, saying that this is the...

COURT: Now, what I'm concerned about, you say you want 3.4 million for ordinary and proper business expenses.

MR PUN: Yes. That's starting from page 25, paragraph 18.

COURT: Of?

MR PUN: Of the bundle, page 25 of the bundle.

COURT: How do you get to your figure of 3.4 million?

MR PUN: That's from the letter marked as exhibit to that affirmation.

COURT: What page is that, please?

MR PUN: It is page 117.

COURT: Your client company has been paying this but not from its Hong Kong account, has it?

MR PUN: They pay it from Hong Kong account.

COURT: Where does that show?

MR PUN: From the bank statement disclosed. For example, page 114 of the same bundle.

COURT: Yes.

MR PUN: Yes, you can see there a column of 'withdrawal'.

COURT: Yes.

MR PUN: Yes, the operation is that they...

COURT: Well, look, Mr Pun, I can see, on page 114, I see three withdrawals and they are all in respect of gold exchange debits.

MR PUN: It is exchange, that's there to convert the Hong Kong dollar to euros or US dollar.

COURT: No, it's not, it's a gold exchange debit, it's got nothing to do with euros or US dollars.

MR PUN: That's gold/exchange.

COURT: "Gold/exchange debit."

MR PUN: Debit.

COURT: Mr Pun, I'm not silly. I've bought US dollars, I've bought Australian dollars through my own bank account and nothing appears saying "gold/exchange debit".

MR PUN: Perhaps may I have...

COURT: The evidence falls far short of establishing that these withdrawals are in respect of payments to the party that you say the money is going to. The inference arises that this is for the purchase of gold.

MR PUN: My apology, my Lord, perhaps it is my misunderstanding. Those instructing me remind me that in fact that is not the page, it's the next page, page 115.

COURT: Yes.

MR PUN: My apology.

COURT: All right, well, you're asking for -- where's paragraph 18? I'm sorry, you'll have to remind me. It was page...

MR PUN: Page 25.

COURT: And the bill to LeaseWeb is where? Well, you see, there are some withdrawals...

MR PUN: Yes, euro.

COURT: ...but the highest -- on page 115, some withdrawals are shown. There's one on 3 May of 98,000; there's one on 4 May of 99,000. How do you relate these to the payments in the LeaseWeb letter and how do you come to the sum of $3,406,000?

MR PUN: My Lord, those -- the items you mention is about US dollars, but if we go further down, that's about euro.

COURT: Yes.

MR PUN: We can see, on 30 April, there's a 235 euros withdrawal. And then further down, 16 May...

COURT: Well, where is the evidence those two withdrawals are LeaseWeb payments and how are they calculated?

MR PUN: I think it's from the evidence of my client's affirmation.

COURT: At page 25?

MR PUN: Before that, there's the explanation about the operation of that company. My Lord, starting from paragraph 14, that's page 23, he explained that the company has a PayPal account for accepting payments from customers on their website.

COURT: Yes, but the PayPal account is in the US, isn't it?

MR PUN: In the US.

A

COURT: And then they transfer the money to Hong Kong.

MR PUN: To Hong Kong. Because this is a Hong Kong company, the defendant is a Hong Kong registered company.

COURT: Yes.

MR PUN: So they open their bank account in Hong Kong and their main business is...

COURT: All right, this is what I'm going to -- I am not satisfied that the evidence is sufficient at the moment for me to order the release of these funds, but I will allow you to file an affidavit within 14 days, or earlier, and to come back on three days' notice for leave to release a sum from the bank account for your ordinary and proper business.

You're going to have to file an affidavit which shows precisely how this sum of 3.4 million is arrived at. If you want to say that there are payments out of the bank account which relate to proper business payments, you're going to have to show what those payments are, what they were for and how they were calculated. Because at the moment, all you're doing is saying, "See, they took money out of their bank account, therefore I should have 3.4 million". And there's a big gap between the two. Do you understand?

MR PUN: I understand your Lordship's view, but that 3 million in fact is, as set out in the letter on page 117, because of the injunction and therefore the other side asked for payment for the remainder of the contract. That's paragraph 2 in the middle of page 117. And there's a deadline set there.

COURT: What's the present exchange rate between the Hong Kong dollar and the euro?

MR PUN: I think it's about 10.

COURT: Sorry?

MR PUN: About 10 to 11.

COURT: Yes.

MS WONG: My Lord, may I address the court on the defendant's application? First of all, the starting point is that the onus is on the defendant to prove that this amount is necessary for its regular business expenses and we say that the defendant has failed to discharge that onus. That letter, on page 117, in the last sentence, LeaseWeb specifically say that the agreement "was entered into by a Mr G Maksim in person and LeaseWeb has not consented to the

assignment of the agreement to FF Magnat, the defendant, or any other entity or person".

So first of all, the defendant is not liable for this amount. They haven't shown any contract to say that they're liable for the amount, and there's also evidence that this is not an ordinary business expense at all. Also, the defendant has actually made an application - two applications to the US court for the release of funds, and on the first occasion, the court released US$100,000, and there's no evidence of what the defendant has done with this money, and now it's asking the Hong Kong court for more.

COURT: What do you say about that, Mr Pun?

MR PUN: My Lord, first of all, there's a remark at the end of that letter, but it doesn't mean that there's no liability to pay the amount to the...

COURT: Well, what is the evidence of the liability of your corporate client to pay an obligation of Mr Maksim?

MR PUN: My Lord, the letter was addressed to Oron.com, that's the trade name of the defendant here. You can see from the top of the letter.

COURT: Yes.

MR PUN: Yes, and the amount has been set out in paragraphs 1 and 2. And concerning the US order, it has been specified in that order that the US injunction will not affect the application or the release of any proper business expenses.

COURT: What I want you to tell me is what is the evidence that Oron.com should be liable for an obligation of Mr Maksim?

MR PUN: The problem has...

COURT: The fact that this letter is addressed to Oron.com doesn't establish that your client is liable. It may be convenient for your client to make this payment but it doesn't establish a legal liability.

MR PUN: No, Oron.com is the trade name, as my client in US was sued under the name of Magnat Limited trading as Oron.com. That's...

COURT: Well, where does Mr Maksim fit into all of this?

MR PUN: Pardon me?

COURT: Where does Mr Maksim fit into all of this?

MR PUN: I think there is, as set out in that letter, I think there should be an assignment of the agreement. We can infer that from the last paragraph.

MS WONG: But my Lord, there's no evidence of an assignment.

MR PUN: We can infer from that sentence.

COURT: We can't infer from that sentence. The inference I draw from this letter is that LeaseWeb assume that Mr Maksim has assigned its agreement to Oron, but they haven't seen an agreement and they haven't approved any assignment.

MR PUN: Right. I think that's a reasonable inference.

COURT: Well, then why should the injunction be lifted to allow your client to pay an obligation for which it is not legally liable?

MR PUN: I think there's no dispute that my client is now trading under the name of Oron.com.

COURT: That's right. But Oron.com is going to have to show me why it should have to pay an obligation. I'm not going to release the money at this stage, Mr Pun. The evidence is insufficient.

MR PUN: Yes, very well.

COURT: I decline to make the order under paragraph (5) of Mr Pun's directions. Mr Pun may come back on three days' notice to apply to have that sum released if he can put appropriate evidence before the court. I will, however, make the order in terms of paragraph (6) so that the solicitors are paid. That's a proper business expense.

MS WONG: My Lord, the 100,000 that was released by the US court actually covered the Hong Kong/US proceedings.

COURT: I'm going to release 269,000 out of 13 million, Miss Wong. Don't ask for too much.

The costs on today's hearing will be reserved.

So your summons is adjourned, you've got directions for filing affidavits in response. You haven't got your money out but you can come back on three days' notice. All you have to do is file an affidavit and ask the court to re-list it in front of a judge on three days' notice. It may come back before me, you might get lucky; it may not. I don't know what will happen. So that concludes the matter, does it?

MR PUN: I'm grateful, yes.

COURT: Yes. Mr Arthur, I called you Mr Man, I'm sorry.

MR ARTHUR: No problem, my Lord.

COURT: Thank you.

MR PUN: Good-day.

**Hearing adjourns - 10.47 am**
**6 July 2012**

I/we certify that to the best of our ability and skill, the foregoing is a true transcript of the audio recording of the above proceedings

*[signature]*

..............................................
Name:  C J Collier
Date:  24 July 2012