Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation ) ) ) Plaintiff, ) ) vs. ) ) FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500, ) ) ) ) ) Defendants. ) ) ) ) ) | Case No.: 2:12-cv-01057 **OPPOSITION TO FF MAGNAT LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff Liberty Media Holdings ("Liberty") brought suit against foreign defendants in this district, under 28 U.S.C. § 1391[1], which provides that a foreign defendant can be sued in any judicial district.  In symbiosis, Federal Rule of Civil Procedure 4(k)(2) operates as the federal long-arm statute, and under that Rule, jurisdiction is proper over Defendant FF Magnat Limited d/b/a Oron.com ("Oron") in the United States.  Fed. R. Civ. P. 4(k)(2) permits federal courts to exercise

---

[1] Initially, Plaintiff cited 28 U.S.C. § 1391(d) which was amended in December 2011. The new section reads, "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

1  personal jurisdiction over a defendant that lacks sufficient contacts with any single state if the

2  complaint alleges federal claims and the defendant maintains sufficient contacts with the United

3  States as a whole.  See *Getz v. Boeing Co.*, 654 F.3d 852 (9th Cir. 2011).  Under the law,

4  jurisdiction lies within this district, unless Defendants concede to jurisdiction in another state,

5  which they have declined to do.

6       In this case, Plaintiff's claims arise under federal law, and Defendant has extensive contacts

7  with the United States (and purposely targets the United States market).  In light of the Defendant's

8  motion and supporting declaration, it is impossible to make the strongest possible arguments that

9  the Nevada long-arm statute applies without the benefit of jurisdictional discovery.  Nevertheless,

10  jurisdiction is clearly proper under Fed. R. Civ. P. 4(k)(2), and thus, the Court can dispense with

11  jurisdictional discovery and an analysis of the Nevada long-arm statute as long as the Federal long-

12  arm Rule applies.  It does.

13  **I.  INTRODUCTION AND FACTUAL BACKGROUND**

14       Defendant Oron is an alien corporation, purporting to operate outside the United States and

15  outside of the jurisdiction of any Court in the United States of America.  However, Defendant has

16  extensive beneficial business contacts in the United States, and chooses to victimize multiple

17  American companies by infringing upon their copyrights.  One of those companies is Liberty, a

18  company with its principal place of business in Las Vegas, Nevada.

19       Plaintiff's investigator viewed Defendant's website in Nevada.  Plaintiff's investigator

20  viewed the unlawful redistribution of its works in Nevada.  The harm from the Defendants'

21  unlawful activities is aimed at Plaintiff in Nevada, and the damage from the infringement on the

22  Oron site is felt in Nevada.[2]  While Defendant argues that it operates wholly extraterritorially, this

23

24  _____

25  [2]  This district has recently held analogously that, the District of Nevada, "has an interest in
discouraging injuries that occur within its boundaries, including injuries resulting from patent
infringement."  *Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2012 U.S. Dist.

26  LEXIS 19255, 19-20 (D. Nev. Feb. 16, 2012).  It is illogical that this would apply to patents and

27  not copyrights.  Plaintiff is a Las Vegas based business, which employs dozens of Las Vegas
residents, all of whose employment is imperiled by online piracy perpetrated by Defendants.  The

28  District of Nevada certainly has an interest in discouraging such activity.

1    is demonstrably false.  Defendant has set up a corporation outside the United States, and since
2    receiving notice of this dispute, moved one of its domain names (oron.com) offshore while leaving
3    others here.  Nevertheless, Defendant still maintains significant contacts with the United States,
4    makes substantial income from United States residents, and causes damage from its unlawful
5    activities in the United States.

6        Intellectual property piracy operations cannot be allowed to evade liability because pirates
7    register their companies in another country while selling goods and services to Americans,
8    contracting with Americans, advertising to Americans, and taking American money, with a
9    business model built upon infringing the copyrights of American businesses.  If they can, then this
10   Court will create a legal anomaly permitting intellectual property pirates to engage in their
11   unlawful activities while evading justice simply by smirking at its victims from behind a
12   transparent film of off-shore shell entities while playing a game of "three card monty" with its
13   principals to help evade justice.  The instant dispute involves a scheme that is specifically designed
14   to steal from Americans and then to use the stolen wares to make huge profits from Americans.  If
15   a foreign entity wants to steal from us, contract with us, sell goods and services to us, and amass
16   our dollars, then it must face our courts when it runs afoul of our laws.

17               **II.  THE COURT HAS JURSIDICTION OVER THE DEFENDANT**

18       Defendant devotes most of its motion to arguing that the Nevada long-arm statute does not
19   apply.[3]  Plaintiff acknowledges that Defendant's declaration[4] shifts the burden for demonstrating
20   jurisdiction onto Plaintiff's shoulders.  Without the benefit of jurisdictional discovery, Plaintiff
21   cannot fully and completely refute Defendant's arguments against the applicability of the Nevada
22   long-arm statute.  Nevertheless, jurisdiction is proper under Fed. R. Civ. P. 4(k)(2).  Therefore,

23   _____

24   [3] The Plaintiff has a good-faith belief that the Nevada long-arm statute would apply, but does not
     wish to waste party or judicial resources in conducting jurisdictional discovery to prove it, when
25   the proper application of Fed. R. Civ. P. 4(k)(2) will achieve the exact same result.
     [4] That said, the Plaintiff has evidence that suggests that Mr. Davidoglov's Declaration is highly
26   unreliable, if not perjurious.  See Exhibits 11, 15, 18, 19, 20; see also ECFs 22-10, 25-1, 83.
27   Despite these documents bearing names listed as owners of FF Magnat Ltd.'s websites and bank
     accounts, none of these documents acknowledge Mr. Davidoglov as having any connection to FF
28   Magnat Ltd. whatsoever.

rather than belabor this Court with jurisdictional discovery disputes and inevitable motions to compel and motions for protective orders, Plaintiff concedes that without jurisdictional discovery, it is unlikely to meet its burden under the Nevada long-arm statute.  If the Court wishes to save time, the Plaintiff concedes that without jurisdictional discovery to indicate to the contrary, the Nevada long-arm statute should not be the focus of the analysis, and the Court should concentrate on Fed. R. Civ. P. 4(k)(2).   Under the <u>Federal</u> long-arm jurisdiction conferred by Rule 4(k)(2), jurisdiction is indisputable.

**A.      A Foreign Defendant is Subject to Suit in any Judicial District**

Under 28 U.S.C § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district."  Fed. R. Civ. P. 4(k)(2) provides for federal personal jurisdiction in cases such as this.  Rule 4(k)(2) acts as a "federal long-arm statute."  *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999); *Getz*, 654 F.3d 852.

The Advisory Committee Notes to Fed. R. Civ. P. 4(k)(2) explain the purpose of the Rule. This Rule was enacted to:

> [c]orrect the gap in the enforcement of federal law.  Under the former rule, a problem was presented when the defendant was a non-resident of the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction.  In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule.

Specifically, Rule 4(k)(2) permits a court to exercise personal jurisdiction over a defendant if: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process.  See *Synthes (U.S.A.) v. G.M. Does Reis Jr.*, 563 F.3d 1285, 1293-94 (9th Cir. 2009); see also *World Tankers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996).

1

**B.    Rule 4(k)(2) Applies to This Case**

2

As the United States Court of Appeals for the Fifth Circuit has explained:

3
4
5
6

> Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under *federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.

7

*World Tanker Carriers Corp.* v. *MV & YA Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996).  The Ninth

8

Circuit is in agreement.  *Getz*, 654 F.3d at 858-859.

9

In *Elan Microelectronics Corp. v. Pixcir Microelectronics Co.,* 2011 U.S. Dist. LEXIS

10

36640 (D. Nev. Apr. 4, 2011), this court dealt with this very issue.

11
12
13
14

> [P]ursuant to FRCP 4(k)(2), this Court may also exercise jurisdiction where a claim arises under federal law, the defendant does not have minimum contacts with any one state to support jurisdiction, but where its contacts with United States as a whole are sufficient to meet the due process requirements. Synthes, 563 F.3d at 1293-94.

15

*Elan Microelectronics I,* 2011 U.S. Dist. LEXIS 36640 at *3 (citing *Synthes (U.S.A.) v. GM Dos*

16

*Ries Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)).

17
18
19
20

> "Rule 4(k)(2), … establishes jurisdiction over a defendant when process has been served and three requirements are met: '(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.'"

21

*Elan Microelectronics Corp. v. Pixcir Microelectronics Co.,* 2012 U.S. Dist. LEXIS 19255 at*6 (D

22

Nev. Feb. 16, 2012) (citing *Synthes*, 563 F.3d at 1294).  Rule 4(k)(2) applies in this case.[5]

23

24

25

26
27
28

---

[5] The Defendant makes a strange argument that since the *Holland America Line* case the Ninth Circuit had "never applied 4(k)(2)" that somehow means that five years later Courts should still not apply it.  It is not as if the court in that case declared the statute unconstitutional.  Further, it is predictable that 4(k)(2) will come into greater and greater use as international commerce grows.

### i.   Plaintiff's Claims Arise Under Federal Law

The analysis under the first prong is simple: This case is a copyright infringement case, thus it arises under federal law.  Copyright is governed by title 17 of the U.S. Code, and federal courts have exclusive jurisdiction over copyright cases.  28 U.S.C. §1338(a).

### ii.   FF Magnat Ltd. is Beyond the Reach of Any State Court of General Jurisdiction

The second prong is less simple.  While Plaintiff does not concede that there are no facts that will show that Defendant is beyond the reach of the Nevada long-arm statute, Plaintiff concedes that it may need jurisdictional discovery to do so.  In order to facilitate the 4(k)(2) analysis, Plaintiff is prepared to concede the inapplicability of the Nevada long-arm statute prior to conducting jurisdictional discovery.  Whether the Nevada long-arm statues applies or 4(k)(2) applies, the result will be the same – this Court must assert jurisdiction over Defendant; therefore, Plaintiff will narrow the issues by concentrating on Rule 4(k)(2), which requires no jurisdictional discovery.

Had the Defendant acknowledged Rule 4(k)(2)'s applicability, it may have presented arguments relevant to whether jurisdiction is proper in another state.  Under Fed. R. Civ. P. 4(k)(2), a foreign defendant has the privilege of conceding jurisdiction in an alternate state and then the plaintiff bears the burden of supporting its chosen forum.  Had the Defendant conceded that jurisdiction would be proper in Utah, Florida, or Rhode Island, the Plaintiff would have borne a burden to refute this position that could likely only be overcome after jurisdictional discovery (provided the alternate forum was not a clear farce).  Since the Defendant declined to do so, Defendant waived its ability to concede jurisdiction in another state and not go "all in." Since Defendant chose the "all in" approach by arguing that no U.S. Court may claim jurisdiction over it,

1  Plaintiff's choice of forum prevails unless Defendant can carry the burden of demonstrating that

2  jurisdiction in the United States would be inappropriate under Rule 4(k)(2).[6]

3        Plaintiff is not privy to information that would satisfy it (much less the Court) that any other

4  alternate state could properly exercise jurisdiction over the Defendant.[7]  However, Plaintiff does

5  not bear that burden under Rule 4(k)(2).  If the defendant challenges jurisdiction in the forum state

6  and declines to identify any other where suit is possible, then the federal court asserts jurisdiction

7  under Rule 4(k)(2).  *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 552 (7th Cir.

8  2001) ("[A] piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not

9  necessary.  Rather, so long as a defendant does not concede to jurisdiction in another state, a court

10  may use 4(k)(2) to confer jurisdiction."); see also *Silver Ring Splint Co. v. Digispint, Inc.*, 2007

11  U.S. Dist. LEXIS 25522 (W.D. Va. Apr. 5, 2007) ("Defendant knows very well what activities it

12  has conducted in the other 49 states, and deliberate coyness as to these activities is not a

13  justification for denying jurisdiction here. Accordingly, the burden is more properly placed on

14  Defendant to come forward with evidence that another forum would be correct."); *Steven Henry*

15  *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

16        Defendant declined to so much as suggest an alternate forum, let alone come forward with

17  evidence that another one of the 49 other states is more appropriate.  Therefore, the second prong

18  of Rule 4(k)(2) is satisfied.  Given that the portions of Rule 4(k)(2) which act analogously to a

19

20  [6] This is unfortunate, as the case has been settled, yet reams of paper must be wasted in litigating
moot issues.  ECF 32.  See *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (The court has
21  inherent authority under federal law to enforce a settlement agreement in an action pending before
it.); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).  See *also Marks-Foreman v.*
22  *Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998); *Harrop v. Western Airlines, Inc.,*
*550 F.2d 1143,* 1144-45 (9th Cir. 1977) (Both parties or their authorized attorneys must agree to
23  the terms of the settlement.)
24  [7] In fact, if the Plaintiff had such information, it would have filed suit there, but Defendant's
contacts with the United States seem to be scattered across the United States, from Utah,
25  California, Florida, Virginia, Pennsylvania, and a myriad of other contacts.  Meanwhile, the focus
of the harm was here in Nevada.  In fact, the Plaintiff initially considered filing in Pennsylvania,
26  since that was the address listed on Oron's public WhoIs information.  ECF 1-1.  But, before the
Plaintiff could file, (while parties were negotiating a pre-suit settlement), the Defendant quickly
27  moved the domain to Luxembourg in a transparent attempt to avoid jurisdiction in Pennsylvania.
28

1  long-arm statute are resolved in favor of this Court asserting jurisdiction, we must simply turn to
2  the question of whether it would offend due process to say that jurisdiction in the United States is
3  improper.  Even if due process is feeling particularly sensitive today it would fee no offense at this
4  Court asserting jurisdiction.

5      Defendant claims to have insufficient contacts with Nevada, meanwhile spreading out its
6  United States contacts over multiple states, leaving no single state as a clear nexus of American
7  activity.  The following table shows the United States contacts discovered by the Plaintiff to date:

8  **Table A**

| | Connection to U.S. | District | ECF/Exhibit |
|---|---|---|---|
| 1 | Payment Processor AMSVisa | Nevada | Exhibit 1 |
| 2 | Damages Felt by Plaintiff | Nevada | ECF 1 |
| 3 | Website Registration and Publicly Listed Contact Address | M.D. Pa. | ECF 1-1 |
| 4 | Domain Name Registration Company | E.D. Virginia | ECF 1-2 |
| 5 | Registration for GoOron.com | M.D. Pa. | ECF 17-7 |
| 6 | GoOron.com Terms of Service Jurisdiction Selection Clause | N.D. Cal. | Exhibit 2 |
| 7 | PornBB.org Registration through Moniker | S.D. Fla. | ECF 66-9 |
| 8 | Payment Processor CC Bill | Arizona | ECF 1-3 |
| 9 | Payment Processor PayPal | N.D. Cal., Nebraska | ECF 1-4, 1-5, 22-10 |
| 10 | Payment Processor SegPay | S.D. Fla. | Exhibit 3 |
| 11 | Payment Processor Rixty | N.D. Cal. | Exhibit 4 |
| 12 | Payment Processor Coinstar | W.D. Wash. | Exhibit 5 |
| 13 | Payment Processor PaymentWall | N.D. Cal. | Exhibit 6 |
| 14 | Oron Premium Blog Registered with Utah Company and Lists Utah Address in WhoIs | Utah | Exhibit 7 |
| 15 | Oron Premium Blog has Servers in San Francisco | N.D. Cal. | Exhibit 8 |
| 16 | Oron uses Google Mail to run its operations. | N.D. Cal. | ECF 83 |
| 17 | Oron agents use Skype, a Microsoft-owned service, to communicate with Oron affiliates. | W.D. Wash. | ECF 83 |
| 18 | Oron Makes Payments to Affiliates in USD | Nationwide | Exhibit 9 |
| 19 | Website Lists USD for Payments | Nationwide | Exhibit 10 |
| 20 | Bank Account Application Lists "USA" as primary market and income in USD | Nationwide | Exhibit 11 |
| 21 | Contracted with American Resellers | Nationwide | ECF 17-6 |

| | | Connection to U.S. | District | ECF/Exhibit |
|---|---|---|---|---|
| 22 | | More than 430,000 U.S. Visitors Transacted with Oron in June 2012; More than 3.5 million in 2012; More than 6.8 million from June 2011 – June 2012 | Nationwide | Exhibit 12 |
| 23 | | 13.4 % of Traffic is U.S.-based (most from any single country) | Nationwide | Exhibit 13 |
| 24 | | Oron.com is in U.S. English | Nationwide | ECFs 1-6, 1-8, 1-10, 17-5, 17-6, 71-2, 71-3, 71-4 |

With ties to multiple states across the country and multiple ties to the nation as a whole that are not state specific, where should Defendant answer for its actions if not in the jurisdiction the victim calls home?  See *Righthaven LLC v. South Coast Partners, Inc.,* 2011 U.S. Dist. LEXIS 12802,*4 (D. Nev. Feb. 5, 2011) (Willful infringement of a forum state resident's copyrights is sufficient to satisfy the *Calder* effects test); *Righthaven, LLC v. Va. Citizens Def. League, Inc.,* 2011 U.S. Dist. LEXIS 67659, *9-10 (D. Nev. June 23, 2011) (same).  Where else but where the vast majority of the harm was felt and where the greatest concentration of witnesses and evidence will be found?

In contrast, Defendant presented us with a constellation of data points across the globe as to where bits and pieces of its business are located.  While Table A shows the numerous and pervasive contacts that Defendant has with the United States, the evidence Defendant submitted shows tiny points of contact with various countries.  This evidence is presented below in Table B:

**Table B**

| | Connection to Foreign Country | Country | ECF / Exhibit |
|---|---|---|---|
| 1 | Fedor Goncherov, who acts for Oron and is believed to be the true owner, is based in Germany | Germany | ECF 66-10 |
| 2 | Putative Owner is Resident of Moldova, but has Executed Declarations both in Moldova and the Ukraine | Moldova | ECFs 71-1, 73-1; Exhibit 21. |
| 3 | Incorporation as Hong Kong Limited Company | China, Hong Kong S.A.R. | Exhibit 20 |
| 4 | Hosting provided by Leaseweb, B.V. | Netherlands | ECF 25-1 |
| 5 | Registration of Domain Names provided by EuroDNS | Luxembourg | Exhibit 14 |
| 6 | New corporate "owner" of Oron | United Kingdom | Exhibit 15 |

As seen in Table B, Defendant's operation seem to be run by a collection of individuals across the globe, using a shell corporation in Hong Kong that contracts for Oron's operations with

1    Dutch hosting, and Luxembourg domain name registration providers, for a Russian living in

2    Germany, or a Moldovan who seems to move from country to country with some degree of

3    regularity.   Simultaneously, Defendant's payment processing, and ostensibly the majority of its

4    economic activity, occurs within and is solicited from the United States.   Compared to Defendant's

5    disjointed and shadow-cloaked offshore operations, the Defendant has a consistent, systemic, and

6    deliberate economic relationship with the United States.   As such, jurisdiction is proper before this

7    Court.

8                  iii.      **Jurisdiction in the United States Would Not Offend Due Process
9                            Because Defendant Oron Has Extensive Contacts with the United States**

10           It is important that the Court recognize the breadth of the due process analysis.   Under Rule

11   4(k)(2), the Court does not ask whether due process would be offended if jurisdiction were asserted

12   in the <u>state</u>, but rather whether due process tolerates the suit in the United States as a whole.

13   "Under Rule 4(k)(2), the constitutional requirements are the same as with any other personal

14   jurisdiction inquiry, i.e., relatedness, purposeful availment, and reasonableness.   They are simply

15   applied as to the United States as a whole, rather than a particular state."   *ISI Int'l,* 256 F.3d at 552.

16                       The defendant's national contacts take center stage because the rule applies
17                       only to situations in which federal courts draw jurisdictional authority from
                         the federal sovereign (unreinforced by 'borrowed' state statutes), and, thus,
18                       the applicable constitutional requirements devolve from the Fifth rather than
19                       the Fourteenth Amendment.

20   *World Tanker Carriers Corp.*, 99 F.3d at 720.

21

22           Let us not forget that Defendants are alleged to have committed an intentional tort, namely

     copyright infringement.   ECF 1 ¶ 1.   They did so by infringing upon copyrights owned by Plaintiff,
23
     which they had to know were created by an American entity.   ECF 71-7.   As this very Court held:
24

25                       Ultimately, unless and until the Ninth Circuit overrules *Columbia Pictures*,
26                       this court remains bound by its express holding that where the defendant
                         "willfully infringed copyrights owned by [the plaintiff], which, as [the
                         defendant] knew, had its principal place of business in the [forum]," "[t]his
27                       fact alone is sufficient to satisfy' the Calder effects test."

28

1   *South Coast Partners, Inc.,* 2011 U.S. Dist. LEXIS 12802 at *4 (citations omitted).  See also *Va.*

2   *Citizens Def. League, Inc.*, 2011 U.S. Dist. LEXIS 67659 at * 9-10 ("This Court agrees with a

3   recent district court case which stated that 'unless and until the Ninth Circuit overrules Columbia

4   Pictures, this court remains bound by its express holding.'") (citing *South Coast Partners*).  By this

5   reasoning alone, the Court should rule that jurisdiction is proper.[8]  Defendant certainly knew it was

6   infringing upon American copyrights.  If it denies this, then this would be a proper subject for

7   jurisdictional discovery.  However, the only way that Oron could have been blind to this would be

8   if it was willfully so.  However, even in the absence of this clear rule, Defendant would still be

9   subject to jurisdiction in the United States under Rule 4(k)(2).

10      Defendant Oron has such pervasive and systematic economic ties to the United States there

11  is no doubt that it is subject to jurisdiction here.   See Table A, *compare* Table B.   Given

12  Defendant's extensive contacts with the United States, it cannot seriously argue that it lacks

13  minimum contacts with the forum **nation**, or that it could not reasonably anticipate being haled into

14  court in the United States.  Defendant Oron engages in so much commerce with the United States

15  that Due Process would not be so much as mildly chafed, let alone offended, by the exercise of

16  jurisdiction over Oron.

17      More than 430,000 <u>unique</u> American Internet users did business with Oron in June of 2012

18  alone; more than 3.5 million American Internet users did so in the first half of 2012; and in the last

19  year, Oron has transacted with more than 6.8 million American Internet users.  **Exhibit 12.**  A full

20  13.4% of Oron.com's traffic comes from the United States.   **Exhibit 13.**  Defendant claims that

21  "only" 13.4% of its customers are from the United States, but the United States represents (by far)

22  its largest market.[9]  *Id*.  Defendant makes the misleading assertion that its markets in Russia,

23  Europe, Asia, and Hong Kong make up a larger share of Oron's traffic.   However, Russia is

24

---

25  [8] The Defendant was certainly aware of the Plaintiff.  See ECF 83-53.  The degree of that
26  knowledge is unsure without jurisdictional discovery.  However, the Court should be able to assent
    to jurisdiction without it.

27  [9] By comparison, its second largest markets are India and Germany with 6.8%.  Accordingly, its
28  next two markets combined are about equal to its American market.  The Russian Federation, Japan
    and Brazil follow with 5.2%, 4.9%, and 4.4%, respectively.  **Exhibit 13.**

number four in its traffic list. *Id.* Hong Kong is not even in the top six. *Id.* Furthermore, Oron previously represented to their Hong Kong Bank that the United States was one of its primary markets. **Exhibit 11.** More than four hundred thousand Americans **per month** engage in interactive transactions with the Oron.com website, a number of which are known only to Oron – but obviously a significant one, based on the sheer quantity of Oron assets impounded by the injunctions issued by this Court and its Hong Kong counterpart – resulting in a payment from United States-based users to the Defendant. **Exhibit 12.** What is more likely – that it was lying then, or that it is lying now? Oron cannot seriously contend that it can serve more than four hundred thousand Americans per month (more than 6.8 million per year) and collect millions of U.S. dollars, yet it would offend Due Process for it to be compelled to answer for its unlawful actions in the United States. **Exhibits 1, 15.**

While the number of *Nevada* visitors to the site is irrelevant to the Rule 4(k)(2) analysis, the Plaintiff is confident that a significant number of Oron.com's visitors are Nevadans. This can only be truly determined through discovery but, statistically speaking, it is more likely than not that nearly 60,000 Nevadans enter into transactions with Oron.com every year[10]. Meanwhile, all of the infringements claimed in the Complaint were viewed and documented from Liberty's Las Vegas, Nevada offices. Therefore, even the Nevada long-arm statute would seem to be satisfied by such a number – especially so in light of the Court's rulings in *South Coast Partners* and *Va. Citizens Def. League*.

To add to the weight of Plaintiff's position, these numbers only apply to one of Defendant Oron's websites. While Plaintiff does not know how many websites FF Magnat Limted owns, Plaintiff is aware of four additional websites currently operated by the company and/or its affiliates: pornbb.org, forumophilia.com, oron-premium.com, and gooron.com. ECF 17-7, ECF 66-9, ECF 66-11. Pornbb.org and forumophilia.com received 378,039 unique American visitors in

---

[10] Nevada's population of 2,733,322 is .88% of the United States population of 311,591,917. If we assume that each state in the United States is represented in the Oron traffic proportionally to their population, 59,840 Nevada residents visit and enter into transactions with the Oron website every year.

1   the month of June 2012.[11]  **Exhibit 16.**  Accordingly, Defendant engaged more than eight hundred

2   thousand Americans in the month of June 2012 alone.   The United States of America

3   unquestionably represents the Defendants' largest and most important market.

4        In addition, Defendant Oron regularly engages in contracts and other business transactions

5   with Americans.  The Oron domain name was registered with full knowledge that the domain name

6   registrar was an American company (ECF 1-2, showing Network Solutions in Virgina); the

7   Oron.com WhoIs information listed an address in Pennsylvania (ECF 1-1); the largest number of

8   Oron's customers are from the United States (**Exhibit 13**); Oron used and continues to use various

9   American companies as payment processors (**Exhibit 1**, an application from FF Magnat Limited

10  for payment processing with a Las Vegas company; ECF 1-3, **Exhibit 15**, showing Oron utilized

11  CCBill, an Arizona company; ECF 1-4, 1-5, 22-10, showing Oron utilized PayPal, a company with

12  Nebraska headquarters; **Exhibit 3**, showing Oron utilized SegPay, a Florida company; **Exhibits 4-**

13  **5**, showing Oron utilized Rixty and Coinstar, companies located in California and Washington,

14  respectively; **Exhibit 6**, Oron used San Francisco company Paymentwall); and its terms and

15  conditions are entirely in English, and American English at that (ECF 1-10).

16       The website's signup form for premium accounts clearly and unequivocally targets United

17  States residents.  It has drop down menus for users that list the United States as the top option and

18  provides a space to fill in U.S. zip codes.  **Exhibit 17**.  While Oron's Terms of Service claim to

19  disallow pornography and "warez," Oron has a reputation of being a "porn" file host and has

20  sought out webmasters on message boards that frequently trade tips on the distribution of "warez."

21  **Exhibits 25-26.**

22       Defendant's claimed location in Hong Kong is nothing more than a ruse created for the

23  purpose of evading authority.  This entity that owns several pornographic message boards, and

24  profits from unlawfully redistributing pornography online expects this Court to believe that it chose

25  _____

26  [11]  The statistics for GoOron.com, which is apparently FF Magnat's "backup plan" in case
    Oron.com is shut down, are unknown.  The website Oron-Premium.com is a blog regarding the

27  benefits of premium accounts at Oron and does not have significant enough traffic for it to be
    monitored.  The Oron-Premium blog does, however, provide valuable information, such as how to

28  use other websites to search for files on Oron.  **Exhibit 27.**

1    to locate in a nation where pornography is legally prohibited?[12]  Given this fact, it is uncertain

2    whether Plaintiff would have the <u>ability</u> to advocate the merits of its claim in a Hong Kong court.

3    There is no evidence that anyone related to Defendant's website has ever resided in, or even

4    visited, Hong Kong.  Defendant has not even shown that it has a single member in Hong Kong, an

5    office there, employees there, or anything else except a registered agent and a bank account.

6    Davidoglov and the entity FF Magnat Limited assert that they did *not* do lots of things in Nevada or

7    the United States, (have employees, own real estate, and pay taxes); it is quite certain they did few,

8    if any, of those things in Hong Kong.[13]   In fact it seems that all that the Defendant did in Hong

9    Kong was sweep United States funds into an account there, and then periodically convert those

10   funds into gold which we can only presume is not stored in Hong Kong, and which it is certain will

11   prove quite difficult to find once a judgment is entered against the Defendant.  **Exhibit 18** at 5-6;

12   **Exhibit 19.**

13        Defendant knows of the value of Plaintiff's copyrighted works.  The Defendant also knows,

14   as evinced by its sale of unlimited downloads and substantial frozen assets, that it can make serious

15   profits by selling services that are completely derived from copyright infringement.  Defendant's

16   infringement of Liberty's copyrights is aimed at Plaintiff, who is located in the United States, thus

17   independently justifying the exercise of jurisdiction.  *South Coast Partners*, 2011 U.S. Dist. LEXIS

18   _____

19   [12] Hong Kong Control of Obscene and Indecent Articles Ordinance (CPA 390), available at
     http://www.hklii.hk/eng/hk/legis/ord/390/index.html.

20   [13] Despite Mr. Davidoglov's Declarations filed with this Court, Plaintiff has found no evidence that
21   the Oron.com website or FF Magnat Limited are actually owned by Stanislav Davidoglov.  The
     paperwork for FF Magnat Limited's Hong Kong incorporation papers references "Goncharov
22   Fedor," "Yew Kim Priscilla," and "Tam Lai Sheung," but never Stanislav Davidoglov in any
     iteration.  **Exhibit 20.**  The FF Magnat PayPal account is in the name "Goncharov Fedor," not
23   Stanislav Davidoglov.  ECF 22-10.  Defendant's HSBC account is in the name of "Goncharov
24   Fedor," not Stanislav Davidoglov.  **Exhibit 11.**  The Oron domain name registration was in the
     name of "Goncharov Fedor," not Stanislav Davidoglov.  ECF 66-10.  Even the letter from
25   Leaseweb, filed by the Defendant, lists "G. Maksim" as the account owner, not Stanislav
     Davidoglov.  ECF 25-1.  Furthermore, Defendant claims that Davidoglov is located in Moldova,
26   but in the Hong Kong action, he indicates residency in the Ukraine. ECF 73-1, **Exhibit 21.**  Should
27   this case proceed to discovery, Mr. Davidoglov's identity will be an interesting topic of discussion,
     as will be his explanation as to where he has been during every step of the company's operation,
28   and how he has only now come to the forefront, when FF Magnat needed a fall guy.

1   12802 at *4; *Va. Citizens Def. League*, 2011 U.S. Dist. LEXIS 67659 at *9-10.  For the same

2   reason, the infringement is aimed at harming Plaintiff in its business, and Defendant knew that

3   Plaintiff and most of its other victims are American companies and was aware that its infringing

4   activities would cause Americans to suffer harm.  Even if Defendant did not know the Plaintiff was

5   a *Nevada* company, Defendant knew that it was infringing on *somebody's* content and that content

6   obviously came from the United States.  See *South Coast Partners*, 2011 U.S. Dist. LEXIS 12802

7   at *4; *Va. Citizens Def. League*, 2011 U.S. Dist. LEXIS 67659 at *9-10.

8           Defendant is targeting, engaging, and profiting from American residents with its websites.

9   If Defendant can sense that surfers are coming from the United States, then the Defendant could

10  have chosen to simply "geo block" Americans and/or Nevadans, or to decline United States

11  memberships.  As Defendant elected to block specific individuals from accessing the Oron.com site

12  because they sent take-down notices under the Digital Millennium Copyright Act attempting to

13  remove their copyrighted content from the website, it surely had the capacity to cut off the United

14  States from accessing and transacting business with its site **Exhibit 23.**  Instead, Defendant chose

15  to specifically target the wallets of Nevadans and Americans alike.

16          For a party claiming that it should be immune from suit in the United States, Oron seemed

17  to eschew doing business with foreign companies in favor of U.S.-based companies (until this

18  dispute erupted, when it began flushing everything it could offshore).   Interestingly, when

19  Defendant registered for its bank account in Hong Kong, it listed "USA" as one of the countries

20  "Where Major Business Carried Out."  **Exhibit 11.**  It listed currency references in "US$," listed

21  "USA" as one of three countries under "Sales Location(s)," and listed "USA" as one of three

22  countries providing the "Source of Funds."  **Exhibit 11.**  Now that it serves its present purpose – to

23  disingenuously claim that it could not foresee litigation in the United States – FF Magnat Ltd.'s

24  "owner" seems to have forgotten all about the United States.  In the Hong Kong action, Defendant

25  claimed that it moved the Oron.com website to the European registrar after this suit was filed

26  because of "customer service concerns."   However, FF Magnat seems to have had no such

27  "customer service" issues with its other business.  GoOron.com is still registered with its United

28  States registrar.  **Exhibit 22.**  Defendant not only does significant business in the United States, but

1   seems to prefer the benefits of doing business here and actively solicits and caters to American

2   customers.  It is clear that Oron actively participates in the United States market, and only now, to

3   try to evade jurisdiction, does it attempt to minimize its contact with United States residents and

4   claim to operate wholly outside the United States.

5           **C.      The Court's Exercise of Jurisdiction Over Oron Is Reasonable**

6           Defendant lists the factors enumerated by the Ninth Circuit in *Amoco*, which are to be

7   balanced to determine the reasonableness of exercise of personal jurisdiction over a particular

8   defendant.  ECF 73 at 9; *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 (9th

9   Cir. 1993).  Liberty agrees that this standard is appropriate for determining personal jurisdiction

10  over a defendant in the State of Nevada, but Defendants in this case are subject to being haled into

11  Court here under other jurisdictional grounds – namely, Fed. R. Civ. P. 4(k)(2), rather than the

12  state's long-arm statute.  However, even if this question were analyzed under Nevada's long-arm

13  statute, the answer would be identical, as it "reaches the limits of due process set by the United

14  States Constitution." NRS 14.065; *Elan Microelectronics*, 2012 U.S. Dist. LEXIS 19255, 19-20,

15  *citing* Baker v. Eighth Judicial Dist. Court, 116 Nev. 527, 999 P.2d 1020, 1023 (Nev. 2000).

16  Nevertheless, and contrary to Defendant's assertions, Plaintiff believes these factors weigh in their

17  favor.

18              **i.      The Extent of Purposeful Interjection**

19          None of Defendant's above-described contacts with the United States are merely fortuitous.

20  Defendants expressly aimed at this market, and darn well hit their target – over eight hundred

21  thousand times per month.  Defendant successfully cultivated its economic relationships with the

22  United States.  First and foremost, Defendant's infringement was felt in, and aimed at, the United

23  States. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)

24  (finding that express aiming of infringement occurs "the defendant is alleged to have engaged in

25  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum

26  state"); *Design Tex Group, Inc. v. United States Vinyl Manufacturing Corp.*, No. 04-5002, *2005*

27  *WL 357125* at *1 (S.D.N.Y. Feb. 14, 2005) ("[B]ecause the plaintiffs (and their intellectual

28  property) are based in New York, the injury is felt within the state no matter where the

1   infringement takes place"). Additionally, the Oron website itself is highly interactive, and none of

2   its contacts with the United States are mere happenstance.

3       Under *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, Oron is at the most interactive end of the

4   website spectrum. 952 F. Supp. 1119 (W.D. Pa 1997).  In fact, any claim that Oron.com is not

5   interactive would be unsupportable.  By Defendant's own admission, Oron "offers its users the

6   ability to *upload and store large amounts of data* on remote and secure servers.  Oron assigns a

7   unique URL web address to the user's data for access purposes. [… T]he *user has complete control*

8   *over his or her documents and files* and makes the decision whether to share those documents and

9   files with others." (ECF 15 at 5:3-7) (emphasis added)  Under *Zippo* and its progeny, this is an

10  interactive service that not only allows, but invites, its users to upload data to its servers, and then

11  provides these users with the tools to share the uploaded files with others. 952 F. Supp. 1119.  This

12  is no passive service, but instead a highly interactive one that invites interactions of both data and

13  money with visitors within the United States.

14      Defendant claims that the unreasonableness of jurisdiction over it is so heightened that

15  purposeful availment of the forum does not over come and outweigh any "unreasonableness."  As

16  shown *supra*, Defendant claims that it lacks ties sufficient to bind it to a court of general

17  jurisdiction within any single state within the United States.  However, Defendant's pervasive ties

18  with the United States for its financial and business gain are more than sufficient to subject it to

19  jurisdiction in general in the United States.  *See* Table A, *supra*.  Accordingly, Defendant has

20  interjected itself and its business into the United States to a degree that more than justifies this

21  Court's exercise of personal jurisdiction over it.

22          ii.     **The Burden on the Defendant to Defend the Suit in the Chosen Forum,**
                    **if Any, Does Not Weigh Against This Court's Exercise of Jurisdiction.**
23

24      Defendant claims that it would be too burdensome for it to defend itself in a Nevada court,

25  and cites to a case that asserts that it is unfair to hale a foreign entity into a United States court.

26  However, Defendant is clearly capable of ably defending itself in Nevada, as it has already shown

27  by its many court filings and numerous attorneys scattered throughout the United States – locally,

28  from San Francisco, and from the District of Columbia.

There is, in fact, no other less burdensome jurisdiction where this action may be brought; any alleviation of Defendant's burden is immediately transferred onto Plaintiff. Plaintiff's rights in the copyrighted work may have little application, if any, beyond the borders of the United States. As seen in Table B, the disjointed and global nature of Defendant's operation make it unclear where, if anywhere, Defendant could effectually be sued. While its putative owner claims to be in Moldova, the corporation itself is organized in Hong Kong – though all of its business activities predominantly occur on Netherlands-based servers, through domain names registered through yet another European company, and its apparent real owners are Russians living in Germany. Rather than play "Where's Waldo?" a hemisphere away, it is in the interests of the Plaintiff and Defendant to litigate this case in this District, where attorneys have already been retained and admitted to practice before the Court, and in the country where the vast majority of the evidence lies. Based on the contacts seen in Table A, it is no burden for Defendant to conduct significant business with the United States, benefitting from its economic bounty and financial services. As Defendant can clearly retain the services of several United States law firms, it is not burdened by litigating in the courts of the country primarily responsible for its Internet traffic and, by all appearances, economic activity.

### iii.  The Extent of Conflict with the Sovereignty of the Defendant's State

Defendant notes that proceedings are ongoing in Hong Kong related to this case, but fails to note that the Hong Kong proceedings are not a full-blown lawsuit: They are simply a Mareva injunction in order to help solidify Plaintiff's ability to prevent dissipation of assets. Oron's account information, as filed in the Hong Kong action (and attached as **Exhibit 19**) shows that it regularly moves money from the United States to Hong Kong and then utilizes that money to purchase gold. Id. Since November 30, 2011, Defendant Oron has, according to its own bank statements, purchased 21,926,536.47 HKD (nearly three million in United States dollars) worth of gold. *Id*. The court in Hong Kong noted:

> [T]here is a bank statement which shows a company which is rapidly moving its money out of the United States and into another jurisdiction where it invests in gold. If that's not a *prima facie* case of dissipation, I'm not sure what is.

1   **Exhibit 18** at 2:A-C.

2   Furthermore, just as was allowed here, the Hong Kong court gave Oron leave to request the

3   disbursement of funds for legitimate business expenses.  While both the Hong Kong court and this

4   Court disbursed some funds to Defendant, see ECF 19: see also **Exhibit 18** at 6:E-F, both the Hong

5   Kong court and this Court have found that Defendant sought funds without truly justifying the

6   amounts requested.

7        **iv.**     **The Forum State's Interest in the Dispute**

8   As Defendant concedes, and as this Court has previously held, this factor weighs in favor of

9   Plaintiff.  See *Righthaven LLC v. South Coast Partners, Inc.,* 2011 U.S. Dist. LEXIS 12802,*4 (D.

10  Nev. Feb. 5, 2011) ("[T]his court remains bound by its express holding that where the defendant

11  'willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew, had its

12  principal place of business in the [forum],' '[t]his fact alone is sufficient to satisfy' the Calder

13  effects test."); *Va. Citizens Def. League, Inc.*, 2011 U.S. Dist. LEXIS 67659, *9-10 (same).

14  Liberty conducts its business and distributes its content over the Internet from this District.

15  Liberty employs dozens of Nevadans and supports their families.  If its goods are stolen, then harm

16  is felt in the local Nevada economy.  Accordingly, the Court has an interest in protecting these

17  intellectual property rights (as they can only be adjudicated before this Court).  Moreover, as

18  Liberty is situated in Nevada, not only is its injury by Defendant's infringement felt within the

19  state, but a substantial amount of the evidence needed to prove its case is also located within

20  Nevada's borders.  Accordingly, these factors weigh in favor of this Court's exercise of jurisdiction

21  over Defendant Oron. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

22       **v.**     **The Most Efficient Forum for Judicial Resolution of the Dispute**

23  As discussed *supra*, the action in Hong Kong is merely an application for a Mareva

24  injunction, rather than full-blown litigation on the merits of Defendant's copyright infringement.

25  In fact Plaintiff's copyrights are registered in the United States, but are not registered in Hong

26  Kong.  Accordingly, it is unlikely that Liberty would even have standing to bring a claim in Hong

27

28

Opposition to Defendant FF Magnat's Limited Motion to Dismiss

1    Kong.[14]  Plaintiff's copyrighted works fall exclusively under American federal law and would

2    hardly be able to be effectively litigated in countries that do not recognize American copyright

3    registrations, let alone in China, a country where the very nature of Plaintiff's work is not

4    necessarily permissible in Hong Kong, which lacks the United States' First Amendment

5    protections.[15]

6         Plaintiff and Defendant have already appeared before this Court, and actively litigated the

7    matters presently pending.  In fact, Defendant filed numerous motions with the Court before

8    lodging a responsive pleading under Fed. R. Civ. P. 12(b)(2).  As Defendant has an abundance of

9    ties with the United States justifying jurisdiction; Liberty, its injury, and the evidence needed to

10   prevail in this case all are found within the District; and Defendant has proven itself capable of

11   mounting an able defense before this Court based just on the record thus far, it would be most

12   efficient to keep the instant dispute before this Court, rather than to abandon nearly 75 docket

13   entries so that the action could be started over before another court.

14              **vi.    The Importance of the Chosen Forum to the Plaintiff's Interest in
                        Convenient and Effective Relief.**

15

16        Plaintiff does not seek to file suit in the United States out of mere convenience.  Plaintiff

17   has brought suit in the United States because Plaintiff does not do business in Hong Kong, nor are

18   its works even necessarily permissible in Hong Kong, and they are certainly not registered in Hong

19   Kong, Germany, Russia, Moldova, the Ukraine, Luxembourg, or the Netherlands.  Similarly,

20   Plaintiff does not do business, and does not have copyright protection, in the myriad of nations

21   involved in Defendant's scheme.

22   _____

23   [14] The undersigned does not claim extensive knowledge of Hong Kong intellectual property law,
     but if Hong Kong operates like the United States, a registration is a prerequisite to standing.

24   [15] Relatedly, and counter to Defendant's claim that "there will be a question in this case whether
     the Copyright Act's protection should even extend to plaintiffs like Liberty Media and [...]

25   pornography," (ECF # 15 at 5 n. 5) the Seventh Circuit Court of Appeals recently ruled that
     pornography is, in fact, entitled to copyright protection, reaffirming the Ninth Circuit's decision in

26   *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982). *FlavaWorks, Inc. v. Gunter et al.*, Case
     No. 11-3190, 2012 WL 3124826 at *2, _ F.3d _ (7th Cir. Aug. 2, 2012) (Posner, J.).  However if

27   the Court would like briefing on this issue, Plaintiff is prepared to engage in a separate hearing on

28   the copyrightability of erotic materials.

In contrast, Plaintiff's copyrights are all registered with the U.S. Copyright Office as works made in America.  Liberty's injury is felt here in America, and specifically within Nevada.  The evidence needed to prove Liberty's claims and secure judgment in its favor are found within America generally, with much of the evidence right here in Nevada.  Additionally, the largest percentage of individuals transacting with the Defendant are Americans.  **Exhibit 13.**  As seen in Table A, the Defendant has heavy contacts with the United States, which diminish any argument that it would be inconvenient for it to now involve itself with a United States matter.  If the Defendant can use the services offered by United States businesses to enrich itself as part of its copyright infringement scheme, then it is reasonable and equitable for the Defendant to defend itself for the wrongs arising from those relationships.

### vii.    The Existence of an Alternate Forum

Again, Hong Kong is not a viable alternate forum for full litigation.  The Parties are not actively litigating the same issues in the Hong Kong courts; the Parties are engaged in a Mareva injunction proceeding that was, itself, brought in aid of this case.  **Exhibit 18.**  The Mareva proceeding in Hong Kong is dependent upon this case and in no way stands independently from this action.  The Hong Kong matter is not an action for copyright infringement.  There is no actual litigation of the merits at bar in this case in Hong Kong.  The Plaintiff's harm did not occur in Hong Kong, and instead occurred, and is felt within, the United States.  Plaintiff's copyrights and harms exist within the United States, and are to be litigated here for the reasons stated *supra*.  In fact, Hong Kong has no interest in the merits of this case at all.

Defendant has failed, fatally, to take the opportunity to present an alternate forum state in the United States in which this lawsuit could progress forward.  Accordingly, the litigation must proceed within this District.

### III.  IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO CONDUCT JURSIDCTIONAL DISCOVERY

If Defendant continues to maintain its position that personal jurisdiction is improper and the Court is remotely concerned that there is any question, then Plaintiff requests leave to conduct jurisdictional discovery and participate in an evidentiary hearing.  "'Where pertinent facts bearing

1  on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts

2  is necessary' courts should allow for discovery." *Wells Fargo & Co. v. Wells Fargo Express Co.*,

3  556 F.2d 406, 430 (9th Cir. 1977); *Marshall v. McCown Deleeuw & Co*., 391 F.Supp.2d 880, 882

4  (D. Idaho 2005).   See also *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir.

5  1998).  It would seem that such an exercise would be an unnecessary waste of resources, given the

6  overwhelming factual and legal support for the maintenance of jurisdiction under Rule 4(k)(2), but

7  Plaintiff requests this in the alternative.

8                                    **IV.  CONCLUSION**

9          Piracy of copyrighted works is not new to the entertainment field.  Music, movies, videos,

10  and books have been copied and distributed without authorization or compensation to the rightful

11  owner for as long as creative people have memorialized their ideas on paper.  In the past, copies

12  were easier to spot and distribution of unauthorized works more difficult.  With the advent of the

13  Internet and the ability to replicate digital files *ad infinitum*, the ease of pirating copyrighted

14  material has contributed to the explosion of unauthorized material.   The global reach of the

15  Internet allows website operators to hide behind borders, fictional names, or outdated addresses,

16  thwarting attempts by copyright owners to seek compensation for the unauthorized use of their

17  intellectual property.   Traditional geographic borders have no meaning on the Internet, further

18  compounding the difficulty facing legitimate copyright owners attempting to enforce their rights

19  against unauthorized users.  Legitimate copyright owners must climb a steep hill to enforce their

20  rights when their works can be replicated at lightning speed by far away entities, only to be sold

21  back to the legitimate owner's customers in its home market while the pirates claim immunity from

22  prosecution.

23          Plaintiff, a Las Vegas based business with full ownership of United States copyrights,

24  documented numerous infringements of its works from its Las Vegas location. The Oron.com

25  website contains advertising directly targeted at Nevada residents and interacts directly with

26  Nevada residents, competing with Plaintiff for customers by selling Plaintiff's own works.

27          Defendants argue that claims for infringement of U.S. copyrights, rightfully owned by a

28  Nevada company, and infringed upon to produce income from Internet users and advertisers in the

1  U.S., may not be litigated in the State of Nevada or even in the United States.   However,

2  Defendants targeted American works, American users, and American dollars and are properly

3  before the jurisdiction of this Court. The due process requirements for Defendant to be haled into

4  this Court have been met.  Since Defendants have declined to stipulate to an alternative U.S. forum,

5  the Plaintiff's choice, its home forum, prevails.  The case should remain here.  Plaintiff respectfully

6  requests that the Motion be denied.

7

8  Dated: August 7, 2012                                    Respectfully Submitted,

9                                                                            s/Marc J. Randazza
                                                                        _____

10                                                                    Marc J. Randazza, NV Bar # 12265
                                                                        Ronald D. Green, NV Bar # 7360
11                                                                    J. Malcolm DeVoy, NV Bar #11950
                                                                        Randazza Legal Group
12                                                                    6525 W. Warm Springs Rd., Ste. 100
                                                                        Las Vegas, NV 89118
13                                                                    888-667-1113
                                                                        305-437-7662 (fax)
14                                                                    rlgall@randazza.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on August 7, 2012.

Dated: August 7, 2012

Respectfully Submitted,

_s/Marc J. Randazza_

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com