Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500,<br><br>Defendants. | Case No.: 2:12-cv-01057<br><br>**OPPOSITION TO ORON'S EMERGENCY MOTION FOR DISBURSEMENT OF ADDITIONAL FUNDS AND TO STAY EXECUTION OF JUDGMENT** |

Plaintiff Liberty Media Holdings, LLC ("Liberty," or the "Plaintiff"), by and through its counsel of record, hereby opposes FF Magnat's Emergency Motion for Disbursement of Additional Funds and to Stay Execution of Judgment filed by Defendant FF Magnat Limited d/b/a Oron.com ("Oron") (ECF 90). This Opposition is based upon the attached memorandum of points and authorities, the papers and pleadings on file in this matter, and any oral argument permitted by this Court.

\\

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On June 26, 2012, this Court denied Oron's previous demand for disbursement of nearly $400,000.00 from its frozen accounts because Oron did not "provide any itemization or accounting for the Court to consider in making its determination if the amount requested is reasonable." (*See* Order Re: ECFs 15 and 16, at 1 (ECF 19))  The Court provided Oron with specific instructions on how to make subsequent requests for disbursement, cautioning that:

> the Court will only consider such a motion if it is accompanied by an itemization specifying which funds are requested and for what purpose. This request should be **accompanied by an affidavit verifying the amounts requested**, their **current location** and their **intended use**. (ECF 19 at 1) (emphasis added)

On June 29, 2012, this Court denied Oron's demand for a second request of the nearly identical amount of EUR 348.845,29.[1]  (ECF 27)  The Court did so because the Defendant failed to provide adequate information to the Court and specifically advised Oron that:

> any future requests must be accompanied by a full accounting of Defendants accounts and presented with appropriate documentation. (ECF 27 at 2)

The Defendant again requests funds, and again fails to provide any documentation as this Court has Ordered on two separate occasions.

Oron has not submitted an affidavit as instructed by this Court nearly two months ago (ECF 19 at 1).  Oron also fails yet again to properly justify its request for disbursement.  The Defendant vaguely states that it needs $200,000 for "attorneys fees" with no description whatsoever of what these fees pertain to, or what attorney or attorneys is to be paid by these fees, let alone with the evidence this Court has requested.  (ECF 90 at 5)  Oron could have – and should have – submitted

---

[1] In Oron's prior Motion (ECF 15), it converted the funds it requested from Euros to American Dollars.  Presumably, it did not do so in the instant Motion in the hope that the Court would not notice that it was requesting almost the exact same amount.

evidence to the Court regarding its estimated fees on appeal, its predicted costs of filing fees, travel for oral argument, and other costs associated with continued litigation.  It further should have supported its request for funds as being reasonable by submitting the rates of its attorneys and affirmation that those funds were, indeed, reasonable.  None of that information is before the Court.

This is no mere accident or oversight.  Oron has been told twice by this Court that for funds to be disbursed, a full and proper accounting must be provided.  (ECFs 19, 27)  This kind of disregard for court orders, by bringing identical non-compliant motions that Liberty must defend, is exactly why Liberty sought fees under 28 U.S.C. § 1927 in its initial fee motion (ECF 34), and again in its emergency renewed motion for attorneys' fees (ECF 89).

Oron once again bemoans being "shut down" as something forced by the Plaintiff and this case.  (ECF 90 at 3)  Oron's inability to pay its vendors and any other financial issues Defendant suffers from are because of Defendant's own actions or inactions.  The Defendant has nearly three million dollars in gold stashed away (ECF 84 at 18; ECFs 84-18, 84-19).  Presumably, if the Defendant needed money to run its business, it would liquidate or sell a portion of this bullion.  It could presumably do the same to pay legal fees.  However, if it did so, it would be spending funds that were not traceable, and as a practical matter, were not likely to be seized.  This is presumably why the funds are laundered in this manner: first the funds are collected through PayPal, then wired to Hong Kong, then converted to gold, and then they are stashed away, free from the eyes of judgment creditors and other authorities. In this case, Oron only wants to spend the money that it most easily stands to lose in this very case.  Even if it were not sitting on nearly three million United States dollars in gold, Oron's troubles would be self-inflicted.  Oron has failed to make appropriate requests for appropriate business expenses, and it declines to disclose its accounts and vendor relationships with the Court.  These accounts, vendor relationships, or other information will reveal evidence that Oron has contractual relationships with American companies (See ECF 84

at 8, Table A; See also ECF 1, 1-1 through 1-6, 1-8, 1-10, 17-5 through 17-7, 22-10, 66-9, 71-2 through 71-4, 83, 84-1 through 84-13).  It will reveal evidence that Oron has bank accounts and funds that Plaintiff has not yet located and, thusly, not provided with the Court's Order regarding the asset freezing, and/or other evidence that could be relevant to these proceedings.  The fact that Oron has chosen to allow its business to collapse rather than disclose information to either this Court or the court in Hong Kong is telling.  Further, the Plaintiff has information that suggests Oron's "troubles" are all part of an overall scheme to try to manufacture an additional dispute. Exhibit A (unauthenticated email from a "Jason Voorhees").[2]

This Court already provided Oron with $100,000; the Hong Kong Court provided Oron with another 269,000 HKD.  Now, Oron demands the release of more funds from this Court yet again, conveniently from the one account that the Plaintiff has found – and where the Court could exercise equitable jurisdiction. (ECF 90)  Given that Oron agreed to a settlement on July 1, 2012, it certainly could have preserved much of that money had it simply lived up to its end of the bargain.  Oron chose to waste hundreds of thousands of dollars, and now seeks to waste more. What's more, Oron wants to waste them from its only United States based bank account. Meanwhile, Oron has at least nine accounts worldwide.  Exhibit B (list of Oron accounts).  Further, since November, Oron has purchased at 21,926,536.47 HKD (nearly three million in United States dollars) worth of gold with funds in its Hong Kong account.  (ECF 84 at 18; ECFs 84-18, 84-19) Presumably, that gold has not been lost.  Oron continues to generate money by running an identical business as novafile.com.  Meanwhile, it fabricates a tale that its business is shut down because of this Court's Order.  Even if so, the massive unlawful activity on Oron justifies its being shut down.

---

[2] To be fair, this email is unauthenticated.  However, given the facts in evidence, the information therein seems plausible.

4
Opposition to Emergency Motion for Disbursement of Funds

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.,* 878 F.2d 806, 810 (5th Cir. 1989) (terminating improper, illegal, and lawless use of intellectual property serves public interest); *Quick Technologies, Inc. v. Sage Group, PLC.,* 313 F.3d 338, 349 (5th Cir., 2002), *cert. denied,* 540 U.S. 814, 124 S. Ct. 66, 157 L. Ed.2d 29 (2003) (granting injunctive relief is proper where it makes misconduct unprofitable).  Oron's Motion should be denied.

## II.    ARGUMENT

### A.    Oron Fails to Meet The Court's Clear Standard for Disbursement.

Oron fails, for the third time, to submit evidence required by the Court for a disbursement of funds.  "Furthermore, any future requests must be accompanied by a full accounting of Defendants accounts and presented with appropriate documentation and any future requests for additional funds shall state the amount requested in U.S. dollars." (ECF 27 at 2)  This is a reiteration of the Court's previous order, requiring Oron to provide itemization of any further requested funds: "Defendant may file a subsequent motion for additional funds, but the Court **will only consider** such a motion if it is accompanied by an itemization specifying which funds are requested and for what purpose. This request should be accompanied by an affidavit verifying the amounts requested, their current location and their intended use." (ECF 19 at 1)(emphasis added) Oron fails to provide any affidavit, any identification of funds, and no itemization of actual or expected costs.  This Court has discretion to determine whether the funds Oron requests are reasonable, and to deny its request if it so finds. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995).  Here, where Oron once again inexplicably fails to comply with this Court's prior orders (ECF 19, 27), its request is manifestly unreasonable.

Even if a disbursement were to take place, it should not come from the only account in the United States.  Oron has nine known accounts and a stash of gold bars.  Nevertheless, Oron believes that this Court should only Order disbursements from the one U.S.-based account, the one

account where this Court's jurisdiction can have immediate effect. If Oron needs $200,000, then it should use, or borrow against, the three million dollars worth of gold bars it has stashed away.

### B. Oron's Request for Stay is Unreasonable.

#### 1. Oron Is Not Entitled To Rule 62(a)'s 14-Day Automatic Stay of Execution.

Defendant claims Plaintiff is required to wait until August 21, 2012 to collect. However, the 14-day stay against enforcement does not apply against "an interlocutory or **final judgment** in an action for an injunction or a receivership." Fed. R. Civ. P. 62(a)(1). As seen in the Complaint's request for relief §§ 2,3 and 5, injunctive relief is clearly requested (ECF 1).

Rule 62(a)(1) does not require that the final or interlocutory order *grant* an injunction - just that it be issued in an action *for* an injunction. "For these types of cases, a stay is not of right but within the sound discretion of the court even if the party tenders a bond." *Bray v. Fort Dearborn Life Ins. Co.*, Case No. 3:06-cv-0560, *2008 U.S. Dist. LEXIS 33469* at *4 (N.D. Tex. Apr. 23, 2008); *PLC Trenching Co., LLC v. Newton*, Case No. 6:11-cv-0515, *2012 U.S. Dist. LEXIS 69999* at *4 (N.D.N.Y. May 18, 2012) (refusing to stay enforcement of monetary judgment under Rule 62(a)(1) when issued in conjunction with an injunctive proceeding). This Court's August 7 judgment in Liberty's favor (ECF 86), in an action where Liberty sought injunctive relief against Oron (ECF 1), fits snugly in Rule 62(a)(1)'s framework. Indeed, this Court's order and judgment tacitly acknowledged this operation of Rule 62(a)(1), and instructed the clerk to issue a writ of execution forthwith. Oron's contention that Liberty's enforcement efforts are subject to the general 14-day stay of Rule 62(a) is erroneous, and takes an incomplete view of the Rule.

#### 2. Oron Is Not Entitled To Any Other Emergency Stay of Execution.

Oron further ambiguously requests that the stay be extended with no specification of the length of the extension they request, stating only that it should last until Oron's "post-judgment

motions can be decided." (ECF 90 at 2)  Oron has filed no post-judgment motions, nor a notice of appeal.  As such, its request for emergency relief is premature.

Simply contemplating an appeal (but without filing one), or filing other post-judgment motions, is insufficient to stay execution of a judgment. *Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563, 569 (9th Cir. 1979) (Rule 62(c) "presuppose[s] the existence of a valid appeal"); *Saldate v. Adams*, 573 F. Supp. 2d 1303, 1314 (E.D. Cal. 2008) (noting the court had denied a stay pursuant to Rule 62(c) as premature where an appeal had not yet been filed); *Barber v. Simpson*, No. 2:05-cv-2326-GEB-DAD, 2006 WL 2548189, at *4 (E.D. Cal. Sept. 1, 2006) ("a Rule 62(c) injunction appears premature since Plaintiff has not yet filed an appeal to the Ninth Circuit"); *In re Seizure of Approximately 28 Grams of Marijuana*, No. 3-01 M 30204 MHP, 2004 WL 2915286, *3 (N.D. Cal. Dec. 16, 2004) (finding motion for a stay under Rule 62(c) premature where movant had not filed an appeal); *Davila v. Texas*, 489 F. Supp. 803, 810 (S.D. Tex. 1980) ("Technically, Rule 62(c) is not properly invoked until 'an appeal is taken'"); *Corpus Christi Peoples' Baptist Church, Inc. v. Texas Dep't of Human Res.*, 481 F. Supp. 1101, 1111-12 (S.D. Tex. 1979), *aff'd per curiam*, 621 F.2d 438 (5th Cir. 1980) (noting that an injunction to preserve the status quo during the pendency of plaintiffs' "possible appeal" was inappropriate under Rule 62(c), which by its express terms applies only when an "appeal is taken").  Until a notice of appeal is filed, Oron's argument is mere conjecture.  Once Oron files a notice of appeal, it will be free to post a *supersedeas* bond for its settlement payment to Liberty, as well as any award of attorneys' fees, to stay Liberty's enforcement efforts during its appeal. *See* Fed. R. Civ. P. 62(d).

Even if Oron were entitled to seek a stay at this point, allowing such a stay would enable Oron to liquidate its money far beyond Liberty's reach – defeating the purpose of this Court's judgment.  Oron asks the Court to keep frozen only the sum of Plaintiff's current request for fees and the judgment entered against Oron.  However, if Oron simply paid Liberty in compliance with

the settlement agreement it signed (ECF 33-1), and which this Court enforced (ECF 85), there would be no need for the litigation over what funds should be released, and which should be kept frozen.  With every attempt to avoid paying Liberty the amount agreed upon in their settlement, Oron drives up Plaintiff's costs in defending a settled lawsuit, which Liberty intends to recover through supplementation of its renewed emergency motion for attorneys' fees (ECF 89).  *See Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994); *Clark v. Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986); *In re Nucorp Energy*, 764 F.2d 655, 661 (9th Cir. 1985) ("If attorneys were compensated only for time spent litigating the amount of the fee to which they are entitled, but not for time spent determining the amount, then the overall rate of compensation would be effectively decreased for all hours devoted to the case. This is precisely the result that statutory fee award provisions are designed to prevent").  Accordingly, given Oron's propensity for frivolous motion practice, it is well within reason to presume that Oron will force the expenditure of another $500,000 in attorney's fees in the United States and Hong Kong, if its stated intent comes to fruition.

### C.  Oron Must Provide an Accounting to this Court Before Releasing Any Funds.

As required by this Court, Oron's requests for disbursement must state where its funds are located if its motions are to succeed (ECF 19 at 1).  Liberty's Complaint alleges more than $38 million in damages against Oron for its intentional infringement of Liberty's copyrights.  Even if 1) Oron wins an appeal of this Court's ruling; and 2) upon the case returning to be litigated, the infringement is not found to be willful; Oron will still face liability for more than $6 million in damages from Liberty's claims alone.  Moreover, Liberty likely is only the tip of a massive iceberg for Oron:  Other lawsuits against that Defendant are pending in other districts (*Flava Works, Inc. v. John Doe et al.*, 1:12-cv-05844 (N.D. Ill. July 24, 2012)), and Liberty believes more may follow.  Oron's potential statutory damages will conservatively range into the tens of millions of dollars.  The equitable relief of disgorgement of ill-gotten profits will be impossible to effect if Oron

manages to sweep its illegal profits into bars of gold stashed across Eastern Europe, hidden bank accounts, or the many other crevices where their ill-gotten gains have been stashed.

The PayPal account frozen by this Court represents only one PayPal account known to Liberty, yet it contains in excess of $1 million. In accordance with this Court's prior orders (ECFs 19, 27), and to analyze the reasonableness of the withdrawals Oron demands of its frozen assets – and their potential for denying Liberty a right to redress its damages – the extent of Oron's assets must be completely disclosed to this Court. *See Noble Metals Int'l, Inc.*, 67 F.3d at 766; *FTC v. World Wide Factors*, 882 F.2d 344, 348 (9th Cir. 1989); *FSLIC v. Dixon*, 835 F.2d 554, 564-5 (5th Cir. 1987). This should include the location of the three million in gold, which should also be subject to the Court's injunction. Once again, though, Oron has failed to identify these other accounts where its money is being hidden. Instead, Oron prefers not to abide by Court orders by identifying the location of its funds. This conduct must not be rewarded, and the Court must be apprised of each and every account Oron has where money may be withdrawn and the location of its gold, before the Court even considers an additional disbursement, and disbursement allowals should apply to the gold first, accounts outside the United States second, and the PayPal account being the last account released if all other accounts are depleted.

Requiring Oron to account for all of its worldwide assets before withdrawing funds to pay further attorneys fees is not merely a requirement set by this Court (ECFs 19, 27), but it is also a necessary step to avoid their continued dissipation and concealment. *See Noble Metals Int'l, Inc.*, 67 F.3d at 766, *World Wide Factors*, 882 F.2d at 348, *Dixon*, 835 F.2d at 565. Without an appraisal of Oron's actual and unhidden assets as weighted against its likely liabilities, the Court may inadvertently deprive Liberty its right to redress while allowing Oron to withdraw funds to purportedly pay for appeals an post-judgment motions that have yet to materialize. Unless Oron fully and adequately informs the Court of the true resources and assets it has available, the Court

will be unable to properly assess the reasonableness of releasing any expenses to Oron, let alone its request for $200,000, or the release of *all of its uncommitted funds*. For certain, the instant motion must be denied.

### III.   CONCLUSION

For a third time, Oron ignored this Court's standard for demonstrating the need and propriety for any release of its funds. Without meeting this Court's requirements of accounting for where the desired funds will go, and how they will be used, Oron's request must be once again denied.

Beyond Oron's procedural defects, it has no legal basis for deferring or further delaying Liberty's enforcement efforts. This Court and the Federal Rules of Civil Procedure condone Liberty's immediate enforcement of its judgment. Because Oron has not filed a notice of appeal, its arguments for emergency relief are premature and must be denied, even assuming that they would be credited otherwise. Upon filing a notice of appeal, Oron is free to post a *supersedeas* bond under Rule 62(d) to provide Liberty with security in its judgment and stay Plaintiff's enforcement efforts. Apparently, Oron prefers not to do so. This preference should not be without consequence.

Accordingly, the Court should issue and Order denying the Motion (ECF 90). In the alternative, if the Court is inclined to grant the motion, it should require Oron to account for its nearly $3,000,000 in gold, and require it to use that for its defense and daily operating expenses. Should the Court be inclined to permit withrdawals from any account, it should be from the Defendant's accounts in Latvia (payspace.lv), or Switzerland (micropayment.ch), and not from it's United States Accounts. In short, Oron has millions of dollars at its disposal. The instant motion is an attempt to chip away at Oron's United States funds so that it can continue to reduce its risk of execution. The Court should not participate in this game.

Dated: August 15, 2012

                                         Respectfully Submitted,

                                         *s/Marc J. Randazza*

                                         Marc J. Randazza, Esq., NV Bar # 12265
                                         Ronald D. Green, NV Bar # 7360
                                         J. Malcolm DeVoy, NV Bar #11950
                                         Randazza Legal Group
                                         6525 W. Warm Springs Rd., Ste. 100
                                         Las Vegas, NV 89118
                                         888-667-1113; 305-437-7662 (fax)
                                         rlgall@randazza.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on August 15, 2012.

Dated: August 15, 2012

                                                Respectfully Submitted,

                                                *s/Marc J. Randazza*

                                                Marc J. Randazza, Esq., NV Bar # 12265
                                                Ronald D. Green, NV Bar # 7360
                                                J. Malcolm DeVoy, NV Bar #11950
                                                Randazza Legal Group
                                                6525 W. Warm Springs Rd., Ste. 100
                                                Las Vegas, NV 89118
                                                888-667-1113
                                                305-437-7662 (fax)
                                                rlgall@randazza.com