UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,        ) | Case No.: 2:12-cv-01057-GMN-RJJ |
|                                    ) | |
|         Plaintiff,                 ) | **ORDER** |
|   vs.                              ) | |
|                                    ) | |
| FF MAGNAT LIMITED, *d/b/a Oron.com*;  ) | |
| MAXIM BOCHENKO, *a/k/a Roman Romanov*; ) | |
| and JOHN DOES 1-500,               ) | |
|                                    ) | |
|         Defendants.                ) | |
|                                    ) | |

Pending before the Court is the Emergency Renewed Motion for Attorneys' Fees and Costs (ECF No. 89) filed by Plaintiff Liberty Media Holdings, LLC ("Plaintiff" or "Liberty Media" or "Liberty").  Defendant Oron.com ("Defendant" or "Oron") filed a Response (ECF No. 104) and Plaintiff filed a Reply (ECF No. 106).

I.      **BACKGROUND**

This suit originated when Plaintiff filed a Complaint alleging copyright infringement on June 20, 2012. (ECF No. 1.)  By commencing the lawsuit, Plaintiff expected to "cease Defendant's infringement of its copyrighted audiovisual works, and to recoup the lost sales of its content suffered through Oron's piracy." (ECF No. 89, 5:16-20.)  First, Plaintiff sought and obtained a Temporary Restraining Order ("TRO") against Defendant that also ordered that Defendant's accounts be frozen. (ECF No. 11.)  Additionally, Plaintiff filed a Motion for a Preliminary Injunction. (ECF No. 4.)  However, both parties later stipulated that the hearing on the Motion for Preliminary Injunction should be delayed and the effect of the TRO should be extended while the parties engaged in settlement discussions. (ECF No. 28.)  In granting this stipulation, the Court also set an extended briefing schedule for Plaintiff's Motion for

Preliminary Injunction. (ECF No. 29.)

Ultimately, the parties appeared to reach an agreement on the terms of a settlement (*see* ECF No. 33-1.)  Notably, Defendant agreed that it would pay $550,000 to the Plaintiff, that Defendant would "take both strong and bold measures to keep Liberty Media content off of its servers," that it would "assist Liberty in identification and civil prosecution of any parties who have been using Oron to distribute Liberty's copyrighted material," and that Plaintiff would have "unfettered access to takedown/delete any of Liberty's material that are being distributed through Oron.com." (ECF No. 33-1.)  However, once Plaintiff began performing the agreement, Defendant began disputing that these terms were actually agreed upon and had resulted in a binding contract (ECF No. 44).  While the parties were disputing the effect of the settlement agreement, Plaintiff necessarily continued to prepare its brief in support of its motion for preliminary injunction in accordance with the extended briefing schedule. (ECF No. 89.)

Subsequently, on August 7, 2012, the Court granted Plaintiff's Motion to Enforce the Settlement entered by the parties on July 5, 2012.  (ECF No. 85.)  In that Order, the Court determined that the parties had mutually agreed to the terms once they resolved all disputes surrounding the interpretation of those terms.  (ECF No. 85.)  Specifically, the Court stated that "[t]here can be no dispute that there was a meeting of the minds" when "Plaintiff's counsel orally accepted Defendant's interpretation" of the settlement terms. (ECF No. 85, 6.)   The Order further stated that "Defendant cannot plausibly claim that it no longer intended to be bound by all the other terms of the Settlement Letter when it 'got its way' . . . ." (*Id.* at 6:23-25.)

Thereafter, Plaintiff brought this motion seeking an award of attorneys' fees pursuant to, *inter alia*, § 505 of the Copyright Act. (ECF No. 85.)  Since the instant case was filed on June 20, 2012, both parties have been very active in advancing the case.  In fact, the docket contains over 100 entries, including Plaintiff's motion seeking a preliminary injunction (ECF No. 4), multiple motions that Defendant filed seeking disbursement of its frozen funds (ECF Nos. 20,

1  24, 90), Defendant's Motion to Dismiss (ECF No. 21), and Plaintiff's motion requesting
2  enforcement of the settlement agreement (ECF No. 33).  To pursue this case, Plaintiff enlisted
3  Randazza Legal Group and incurred charges ranging from $400-$500 per hour for partners,
4  $350 per hour for of counsel, $325 per hour for associate attorneys, and $125 per hour for law
5  clerks. (ECF No. 89.)  The resolution of this case required 325.90 labor hours from Randazza
6  Legal Group, resulting in Plaintiff incurring $134,910.00 in attorney fees and $64,911.50 in
7  costs. (ECF No. 89.)  Thus, Plaintiff filed this Motion requesting that this Court order Defendant
8  to pay Plaintiff $199,821.50. (*Id.*)  On August 26, 2012, Plaintiff supplemented its original
9  request for seeking attorneys' fees incurred in attempting to satisfy the judgment against
10 Defendant. (*See* ECF No. 101.)  According to the supplement, Plaintiff's counsel spent an
11 additional 40 hours of labor to obtain satisfaction of that judgment and respond to Defendant's
12 Motion for Disbursement of Fees, resulting in an additional $15,142.50 in attorneys' fees. (*Id.*)
13 Thus, the Plaintiff is requesting $150,052.50 in attorneys' fees and $64,911.50 in costs, totaling
14 $214,964.00. (*See* ECF No. 89, 101.)
15       In accordance with Local Rules of Practice, United States District Court, District of
16 Nevada, LCR 54-16, Plaintiff included a reasonable itemization and description of the work
17 performed.  For the reasons stated below, the Court finds that an award of **$131,797.50** in
18 attorneys' fees is appropriate.
19 **II.    DISCUSSION**
20       **A.    Costs**
21       Pursuant to Federal Rule of Civil Procedure 54(d)(1), "costs—other than attorney's fees
22 should be allowed to the prevailing party." However, Local Rules of Practice, United States
23 District Court, District of Nevada, LCR 54-1, requires that a party claiming such costs "shall
24 serve and file a bill of costs and disbursements on the form provided by the Clerk no later than
25 fourteen (14) days after the date of entry of the judgment or decree." LCR 54-1(a).  Local Rule

54-1(b) further requires that "[e]very bill of costs and disbursements shall be verified and distinctly set forth each item so that its nature can be readily understood. . . . An itemization and, where available, documentation of requested costs in all categories must be attached to the bill of costs." LCR 54-1(b).

Although Plaintiff provided an itemization of the work performed by its attorneys, Plaintiff failed to file the required Bill of Costs form (AO 133) and failed to file the required itemization of the *costs*. (*See* ECF No. 89-4.)  Therefore, to the extent that Plaintiff seeks an award for the costs incurred, other than attorneys' fees, Plaintiff's motion is denied.

### B.   Attorneys' Fees

Section 505 of the Copyright Act grants district courts discretion to award "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.  In determining whether an award of attorneys' fees is appropriate under § 505, a district court engages in a two-part inquiry.  First, a court determines whether the party requesting the attorneys' fees is actually a "prevailing party." 17 U.S.C. § 505.  Second, a district court exercises its "equitable discretion" in determining whether an award of attorneys' fees would "further[] the underlying purposes of the Copyright Act . . . ." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229-1230 (9th Cir. 1997) (citation and internal quotation marks omitted).  Once a district court determines that an award of attorneys' fees is appropriate, then the court calculates the amount of that award. *Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009).

### C.   Liberty Media is a "prevailing party" because the Order Granting Liberty Media's Motion to Enforce Settlement materially altered the legal relationship between the parties.

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, the Supreme Court determined that, in the context of the Fair Housing Amendment Act, "prevailing party" is defined as a party who has been awarded some relief by

1  the court. 532 U.S. 598, 603 (2001).  Subsequently, in *Cadkin v. Loose*, the Ninth Circuit
2  applied this definition of "prevailing party" to the use of that term in the Copyright Act. 569
3  F.3d 1142, 1148 (9th Cir. 2009).  Therefore, the touchstone of this inquiry is "whether some
4  court action has created a 'material alteration of the legal relationship of the parties.'" *Cadkin*,
5  569 F.3d at 1148 (quoting *Buckhannon*, 532 U.S. at 604).  In fact, the Supreme Court has
6  explicitly explained when this alteration of legal relationship can occur: "[n]o material alteration
7  of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce
8  a judgment, consent decree, *or settlement against the defendant*." *Farrar v. Hobby*, 506 U.S.
9  103, 113 (1992) (emphasis added)); *see also Cadkin*, 569 F.3d at 1145 (noting that "dismissal
10 without prejudice does not alter the legal relationship of parties for the purposes of entitlement
11 to attorneys' fees . . .").

12      In this case, Liberty Media is a prevailing party because the Order Granting Liberty
13 Media's Motion to Enforce Settlement materially altered the legal relationship between the
14 parties. (ECF No. 85.)  This Court previously determined that the parties formed an enforceable
15 contract on July 5, 2012, when Plaintiff's counsel orally accepted Defendant's interpretation of
16 the proposed settlement terms. (*Id.* at 6.)  Thus, at this time, Plaintiff was entitled to enforce that
17 settlement.  Moreover, in the Order Granting Liberty Media's Motion to Enforce Settlement, the
18 Court entered judgment against the Defendant in favor of the Plaintiff in the amount of
19 $550,000.00 and the Court dismissed the case *with prejudice*. (ECF No. 85, 7:20-8:7.)  Thus,
20 these actions resulted in the "material alteration of the legal relationship of the parties" that is
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

required to recover attorneys' fees under § 505 in the Ninth Circuit.[1] *Buckhannon*, 532 U.S. at 604.

### D. Granting Liberty Media's Motion for Attorneys' Fees furthers the underlying purposes of the Copyright Act.

Before awarding attorneys' fees under § 505 of the Copyright Act, district courts first determine whether such an award would "further[] the underlying purposes of the Copyright Act . . . ." *Entm't Research Grp.*, 122 F.3d at 1229-1230. When engaging in this analysis, a district court considers a number of factors, including "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (noting that the use of "nonexclusive factors . . . may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act . . .")).

In this case, the Court finds three of these factors especially persuasive in determining that an award of attorneys' fees for Plaintiff is appropriate: (i) the objective unreasonableness of the Defendant's factual and legal arguments; (ii) the degree of success obtained; and (iii) the need to advance considerations of compensation and deterrence. First, in its Order Granting Plaintiff's Motion to Enforce the Settlement Agreement, the court stated that "[t]here can be no dispute that there was a meeting of the minds" when "Plaintiff's counsel orally accepted Defendant's interpretation" of the settlement terms. (ECF No. 85, 6.) The order further stated

---

[1] Defendant argues that an award of attorneys' fees under § 505 is appropriate only when a party "secure[s] a judgment on the merits or [is] a party to a settlement agreement that is expressly enforced by the court *through a consent decree*." (ECF No. 104) (citing *NXIVM Corp. v. Ross Institute*, No. 1:03-cv-00976-GLS-DRH, 2005 WL 1843275, at *2 (N.D.N.Y. Aug. 2, 2005). To support this proposition, Defendant relies solely on an unreported case from the Northern District of New York. The Court does not find Defendant's argument persuasive. Instead, this Court relies on controlling authority within the Ninth Circuit. *See Cadkin*, 569 F.3d at 1148. Given that the Ninth Circuit has already provided a definition of "prevailing party" under § 505, Defendant's discussion of consent decrees is wholly irrelevant.

that "Defendant cannot plausibly claim that it no longer intended to be bound by all the other terms of the Settlement Letter when it 'got its way' . . . ." (*Id.* at 6:23-25.)  Therefore, Defendant's arguments in challenging the enforcement of the settlement agreement were objectively unreasonable.

Second, the Plaintiff negotiated a considerably successful settlement which required Defendant to both make a monetary payment to Plaintiff, as well as "take both strong and bold measures to keep Liberty Media content off of its servers," and "assist Liberty in identification and civil prosecution of any parties who have been using Oron to distribute Liberty's copyrighted material . . . ." (ECF No. 33-1, 2.)  Plaintiff also received "unfettered access to takedown / delete any of Liberty's material that are being distributed through Oron.com . . . ." (*Id.*)  Given the monetary payment, the measures that Defendant agreed to undertake to protect Plaintiff's intellectual property, and the cessation of future litigation between these parties, Plaintiff obtained marked success through the settlement agreement and the Order enforcing that agreement.

Third, the need to advance considerations of compensation and deterrence favors an award of attorneys' fees in this case for Plaintiff.  Not only does an award of attorneys' fees deter any copyright infringement, it also deters the needless extension of litigation regarding claims of copyright infringement, thus making it more financially feasible for copyright holders to protect their intellectual property.

**E.     The amount of Attorneys' Fees requested by Liberty Media is reasonable.**

Calculation of reasonable attorneys' fees requires a two-step inquiry.  First, the court computes the "lodestar" figure, which requires the court to multiply the reasonable hourly rate by the number of hours reasonably expended on the litigation. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  Next, the court considers the factors articulated by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.* and decides whether to increase or reduce the

lodestar amount. 526 F.2d 67, 70 (9th Cir. 1975); *see Fischer*, 214 F.3d at 1119.  Specifically, the court considers (1) the time and labor required, (2) the novelty and the difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. These factors are consistent with the Local Rules of Practice, United States District Court, District of Nevada, LCR 54-16, which governs motions for attorneys' fees. *See* LR 54–16(b)(3).

With respect to the first step, the hourly rates that Plaintiff's attorneys charged are reasonable rates in the Las Vegas legal market.  Plaintiff enlisted Randazza Legal Group and incurred charges ranging from $400-$500 per hour for partners, $350 per hour for of counsel, $325 per hour for associate attorneys, and $125 per hour for law clerks. (ECF No. 89, 8:2-5.) Plaintiff's attorneys claim that working on Plaintiff's case "consumed 325.90 hours preparing, filing, and responding to the many motions in this case." (ECF No. 89, 7:23-25.) After a review of the itemized bill, the Court denies those fees that are traditionally secretarial-type services, such as docketing.  The Court also denies those fees that are duplicative due to Plaintiff's attorneys' consulting together.  Rather, the Court allows only the fee for the one attorney in the consultation with the highest hourly rate.  Additionally, the Court denies those fees that Plaintiff incurred as a result of litigation activities in Hong Kong.  Thus, the court will exclude the costs incurred in these activities and awards a total fee award of **$131.797.50.**

Second, the Court sees no reason to increase or reduce the lodestar amount based on the *Kerr* factors.  This motion was filed in accordance with LRC 54-16 by including the "[a] reasonable itemization and description of the work performed" and "[a] brief summary" of the

relevant factors. Notably, this case has been active for slightly longer than two months and the number of filings in the docket already exceeds 100. In fact, the docket includes Plaintiff's motion seeking a preliminary injunction (ECF No. 4), multiple motions that Defendant filed seeking disbursement of its frozen funds (ECF Nos. 20, 24, 90), Defendant's Motion to Dismiss (ECF No. 21), and Plaintiff's Motion Requesting Enforcement of the Settlement Agreement (ECF No. 33). Plaintiff asserts that its attorneys' "ability to take on other representations and serve other clients was significantly, and necessarily, impaired" during this time. (ECF No. 89, 7:22-23.) Given the volume of filings in this case and Plaintiff's itemized list of attorneys' fees totaling over 320 labor hours, the Court agrees that by representing Plaintiff, its attorneys were precluded from other employment. In addition to the reasons stated in Section II.D. above, the Court finds that the volume of labor intensive filings further supports the conclusion that the amount of attorneys' fees need not be reduced based on the *Kerr* factors.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Renewed Motion for Attorneys' Fees (ECF No. 89) is **GRANTED.** Plaintiff is awarded attorneys' fees in the amount of **$131,797.50.**

**IT IS FURTHER ORDERED** that, due to Plaintiff's failure to file the required Bill of Costs form (AO 133) and the required itemization of *costs*, Plaintiff's Motion for Costs is **DENIED**. (*See* ECF No. 89-4.)

**DATED** this 4th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge