## JAMS ARBITRATION

| |
|---|
| FF MAGNAT LIMITED |
|       Claimant |
| v. |
| LIBERTY MEDIA HOLDINGS, LLC |
|       Respondent |

## CLAIMANT FF MAGNAT LIMITED'S
## NOTICE OF CLAIMS AND REMEDIES

### Introduction

Claimant FF Magnat Limited d/b/a Oron ("Oron") operates an Internet website which allows users to store and share files on the Internet. Liberty Media Holdings, LLC ("Liberty") produces pornography and is a copyright troll that files frivolous lawsuits against foreign defendants in order to force settlement. This dispute arises from the breach of a settlement agreement (the "Agreement") for one such frivolous lawsuit between Oron and Liberty. A copy of the Agreement is attached hereto as Exhibit A. The Agreement sought to settle the frivolous lawsuit filed by Liberty against Oron wherein Liberty alleged acts of copyright infringement by Oron's users and attempted to hold Oron liable for its users' actions. *See Liberty Media Holdings LLC v. FF Magnat Limited et al*, Case No. 2:12-cv-01057-GMN-RJJ (D. Nev.) (hereinafter, "*NV Litigation*").

1

The judge in the NV Litigation ruled on the enforceability of the Agreement and found the Agreement to be an enforceable obligation of both parties.[1] Under the court's order and pursuant to the Agreement, Oron paid $550,000 to Liberty and fully complied with its obligations under the Agreement.

However, despite misleading the court into enforcing the Agreement and despite Oron's compliance with the Agreement, Liberty has utterly failed to perform nearly every single one of its obligations pursuant to the Agreement. Liberty's failures constitute a breach of the Agreement.

As a result of the numerous breaches by Liberty, Oron has suffered staggering damages amounting to tens of millions of dollars and it is now bringing this arbitration proceeding in order to obtain relief pursuant to the terms of the Agreement which Liberty itself caused the court to enforce. Claimant is seeking the return of the $550,000 payment it made pursuant to the Agreement, the payment of further costs and expenses incurred by Oron as a result of Liberty's breach of the Agreement, and remedies for the tens of millions of dollars in business that Oron has lost as a result of Liberty's breach.

### General Background

Oron is a Hong Kong company that operated a "cloud" based storage business. Liberty is a United States based producer of pornographic video material. More significant, however, is that Liberty is a blatant copyright troll whose *modus operandi* is to employ excessively

---

[1] It bears noting that in the course of settlement discussions, Oron provided to Liberty a draft document for a potential settlement of the NV Litigation. Liberty rejected this settlement. However, after it became clear to Liberty that Oron will not agree to any further concessions, Liberty presented the draft proposal to the court and misrepresented to the court that the draft was in fact a final and executed settlement agreement between the parties, when in fact Liberty knew that the parties had not arrived at an agreement. As a result of this misrepresentation, the court issued an order enforcing the draft settlement proposal as if it were an actual contract.

aggressive legal tactics and initiate dozens of frivolous lawsuits in the United States against foreign and legitimate websites. This business practice serves as an attempt to force the victims to settle so as to avoid an expensive, baseless, and drawn-out long-distance litigation. Unfortunately, Oron is one of the many innocent victims in Liberty's path of destruction.

Before being forced to shut down by Liberty's improper actions, Oron was simply an online service provider which provided a file sharing system to its users. Oron allowed users to upload and store files. Oron strictly maintained the privacy of its users and it therefore did not index the materials which its users uploaded and it maintained no catalogue or search function within the website. For the storage services that it offered, Oron charged its customers a monthly fee if they chose to use its premium services of faster uploading, faster downloading, more storage space, and longer storage. Visitors to Oron's website, whether free or as paying premium customers, did not have access to other users' materials. The user who initially uploaded and stored his material on Oron's service had the sole control over the material which they uploaded and the sole discretion of whether to share anything with anyone else. Notably, Oron was not a "peer to peer" system like Grokster and Napster, which have been held to run afoul of the copyright laws. *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

Liberty's NV Litigation suit lacked merit on a number of grounds, particularly because Oron is not subject to the laws of the United States and, if it was, it complied with the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA").

The Nevada court lacked personal jurisdiction over Oron because Oron is a Hong Kong company with no offices or agents in the United States. Although Oron's services were available to individuals throughout the entire world (as almost every website on the Internet is available to

individuals throughout the entire world), the vast majority of Oron's users were not from the United States. In fact, it can be determined from publicly available information, such as WHOIS domain tools (*see* Site Profile on http://whois.domaintools.com/oron.com, last accessed on November 6, 2012, with copy attached hereto as Exhibit A), that only 10.6% of visitor's to Oron's website came from the United States. The majority of Oron's visitors and income came from Europe, Asia and Russia.

Moreover, even assuming *arguendo* that Oron was subject to suit in the United States, according to the DMCA, a service provider like Oron is not liable for infringement of copyright "by reason of the storage at the direction of a user" if it complies with a number of listed requirements. Oron has at all relevant times complied with each and every requirement to qualify for the DMCA safe-harbors.[2]

## NV Litigation Procedural Background

In the NV Litigation, Liberty claimed that some of its copyrighted materials were uploaded by third parties to Oron's computer servers and that Oron is therefore subject to liability for these actions in the United States – despite the fact that very little of Oron's business comes from the United States and Plaintiff's videos, if as alleged, comprised an infinitesimal portion of the data that was stored by users on Oron's servers. Moreover, Oron is not subject to the laws of the United States and, if it was, it would be entitled to the safe harbor defenses of the Digital Millennium Copyright Act (the "DMCA"). However, on the basis of its unjustified allegations, Liberty filed a frivolous lawsuit against Oron on June 20, 2012 in the United States

---

[2] Oron always acted expeditiously to remove any material on its service which it knew was infringing. Oron did not receive any financial benefit directly attributed to any allegedly infringing material that its users stored on its service. Oron had a designated agent registered with the United States Copyright Office to receive notifications of claimed infringement. Oron had a repeat infringer policy which it regularly applied. Oron even implemented technical measures beyond industry standards to identify and protected copyrighted works.

4

District Court for the District of Nevada claiming copyright infringement. *NV Litigation*, Docket No. 1.

Along with Liberty's complaint, Liberty filed an *ex parte* emergency motion for a temporary restraining order to freeze Oron's assets in all of Oron's banks and payment processing companies, including PayPal. *NV Litigation*, Docket No. 2. The Court granted Liberty's motion for a temporary restraining order on June 21, 2012. *NV Litigation*, Docket No. 11. Shockingly, Liberty went so far as to break into the e-mail account of Oron's affiliate, steal passwords from the account, and use them to access Oron's accounts at financial institutions. Oron then presented this illegally obtained information as evidence to the court.

Contemporaneous to the filing in Nevada, Liberty instituted legal proceedings against Oron in Hong Kong. Liberty obtained an order from the Hong Kong court freezing Oron's assets in Hong Kong as well -- the Hong Kong court specifically relied on the existence of the Nevada order in making its own identical order.

As a result of the court orders, millions of dollars of Oron's funds were frozen and Oron was unable access its funds to pay any of its service providers. As the result of having no access to its funds, Oron was eventually forced to shut down its website in July of 2012 (although at that time it was still possible to "resurrect" its business).

Even though the NV Litigation suit was frivolous, for the very reason that Oron is a foreign company (and it did not wish to be embroiled in a drawn-out lawsuit in the United States) and because Oron wished to have the freeze on its assets lifted as soon as possible so that it could pay its service providers without going offline, Oron initiated settlement discussions with Liberty.

On July 1, 2012 Oron and Liberty began settlement discussions and Oron circulated proposed terms for the settlement. Liberty rejected the terms. However, on July 6, 2012, when Liberty understood that Oron would not agree to any further concessions, Liberty pretended that an actual agreement was reached and filed a Motion to Enforce Settlement with the Nevada Court, *NV Litigation*, Docket No. 33. In that filing, Liberty misrepresented to the court that the parties had come to a binding agreement and that Oron was breaching it. Specifically, Liberty alleged that Oron refused to disburse the $550,000 as required pursuant to the settlement terms. Liberty was correct on this point – Oron did not disperse the $550,000 – but this is only because Oron and Liberty did not have a binding agreement.

Having been misled by Liberty, the Nevada court mistakenly granted Liberty's Motion to Enforce Settlement on August 7, 2012. *NV Litigation*, Docket No. 85. Oron filed a notice of appeal in order to preserve its right to appeal certain actions of the court. *See Liberty Media Holdings, LLC v. FF Magnat Limited*, Docket No. 12-16976 (9th Cir.). Most specifically, Oron is preserving its right to appeal the court's order for legal fees, which the court had no right to do in light of the release and arbitration clauses in the Agreement (discussed in further detail below).

### The Settlement Agreement

Given the Nevada court's order to enforce the Agreement, the Agreement is now a binding contract between Oron and Liberty. The Agreement calls for Oron to pay $550,000 to Liberty, which Oron did on or about August 24, 2012. In consideration for that payment, the Agreement specifically called on Liberty to, amongst other things:

(1)   Dismiss with prejudice the proceedings in both Nevada and Hong Kong (Paragraph 8).

6

(2)   Dissuade others from bringing suit against Oron (Paragraph 10).

(3)   Actively assist Oron in sending letters and taking all necessary steps to convince PayPal and other payment processors to continue accepting payments through their services (Paragraph 11).

(4)   Publicly announce that, after a careful review of facts, that Liberty believes that Oron is protected by the DMCA safe harbor and that a review of Oron's files shows that there was never any child pornography on Oron's website (Paragraph 12).

(5)   Craft a joint letter for publication with Oron stating that the parties were joining together to fight child pornography and copyright infringement (Paragraph 13).

(6)   Issue a letter asking that Oron's Hong Kong bank accounts be unfrozen to allow for Oron's payment to its hosting service, Leaseweb, and issue a letter to Leaseweb asking them to allow Oron additional time to pay its fees to the hosting service (Paragraph 14).

(7)   Keep the terms of the Agreement confidential (Paragraph 16).

## Claims

Despite requesting the Nevada court to enforce the Agreement and despite Oron's performance of all its obligations pursuant to the Agreement, Liberty failed to perform nearly all of its obligations thereunder and actually took additional affirmative steps to further damage Oron. Specifically:

(1)   In contravention of Paragraph 8 of the Agreement, Liberty did not dismiss the Hong Kong action with prejudice. Instead, the Hong Kong action continues to move forward and is costing Oron hundreds of thousands of dollars in legal fees.

7

(2)  In contravention of Paragraph 10 of the Agreement, Liberty has not dissuaded others from bringing suit against Oron. Instead, following the weekend after Oron paid Liberty $550,000, on August 28th Liberty assisted Datatech Enterprises, LLC in filing a copycat lawsuit against Oron in California. *See Datatech Enterprises, LLC* v. *FF Magnat Limited*, Case No. 3:12-cv-04500-CRB (N.D. Cal.). The complaint in the *Datatech* lawsuit alleges causes of action that are virtually identical to Liberty's against Oron.

(3)  In contravention of Paragraph 11 of the Agreement, Liberty has done nothing to assist Oron in convincing its payment processors, including PayPal, to unfreeze Oron's accounts. On the contrary, as set forth in more detail below, Liberty has engaged in activities which have made it even more difficult for Oron to unfreeze its funds.

(4)  In contravention of Paragraph 12, Liberty has not publically announced that Oron is protected by the DMCA safe harbor and that there was never any child pornography on Oron's service.

(5)  In contravention of Paragraph 13, Liberty has not crafted a joint letter with Oron.

(6)  In contravention of Paragraph 14, Liberty has not issued a letter to Oron's Hong Kong bank to unlock Oron's funds or to Oron's hosting service, Leaseweb.

(7)  In contravention of Paragraph 16, Liberty did not keep the Agreement confidential and instead included it in a publicly available filing with the Nevada court.

As stated above, not only did Liberty fail to adhere to the terms of the Agreement, it took active steps (in breach of the Agreement) to aid another copyright troll, Datatech, in filing an identical lawsuit against Oron. Following Liberty's advice and example, Datatech filed a lawsuit with virtually identical causes of action in California mere days after the NV Litigation was dismissed, and obtained an identical order freezing Oron's funds. Liberty's failure to unlock

8

Oron's funds resulted in Oron's inability to pay its vendors before Datatech's lawsuit caused Oron's funds to be frozen again.

As the result of Liberty's actions, Oron was unable to re-launch its website. Oron's legitimate and multi-million dollar business has been irreparably damaged as a result of the loss of service, the freezing of Oron's funds, Liberty's assistance to Datatech, and Liberty's failure to comply with nearly all other terms of the Agreement.

In other words, Liberty first mislead the Nevada court into enforcing the Agreement in order to obtain a $550,000 payment from Oron, and then took active steps in destroying Oron's business and helping another copyright troll to pursue its own frivolous action against Oron.

Finally, despite the fact that the Agreement is the final agreement between the parties, that the court enforced the Agreement and that, pursuant to Paragraph 15, the parties mutually released each other of all liability, on August 10, 2012 Liberty filed a motion for attorney's fees and costs. *NV Litigation*, Docket No. 89. The Nevada court granted Liberty's motion and ordered Oron to pay Liberty attorneys' fees in contravention of the Agreement in the amount of $131,797.50. These fees were not authorized by the Agreement, which required the parties to release each other, and therefore constitute further damages resulting from Liberty's breach of the Agreement.

## Liberty's Failure to Release the Hong Kong Funds

In a filing it made with the Hong Kong court, Liberty claimed that it was entitled not to comply with the Agreement on the basis that Oron had filed an appeal. This was a blatant misrepresentation of applicable law. A judgment or an injunction stays in effect during an appeal unless the court issues a stay pending the appeal. "Of course, where the power is not

9

exercised by the court, nor by the judge who allows the appeal, the decree retains its intrinsic force and effect." Hovey v. McDonald, 109 U.S. 150, 162 (1883) (attached hereto as Exhibit C). *See, also,* 20-308 Moore's Federal Practice – Civil 308.02 ("The mere filing of an appeal does not act to suspend execution or enforcement of a judgment or injunction.") (attached hereto as Exhibit D).

Rule 62(c) of the Federal Rules of Civil Procedure clearly states that the stay of an injunction is by the discretion of the court: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Rules 8(a) of the Federal Rules of Appellate Procedure confirms the court's discretionary power over staying an injunction: "A party must ordinarily move first in the district court for the following relief: (a) a stay of the judgment or order of a district court pending appeal . . . ."

Neither Oron nor Liberty moved to stay the court's order to enforce the Agreement. The court did not stay its order *sua sponte* either. Therefore, by the clear letter of the law, the Agreement continued to be in effect following Oron's filing of the Appeal and Liberty's refusal to comply with the Agreement is a breach of the Agreement.

## Conclusion

As a direct result of Liberty's breach of the terms of the Agreement, Oron is now embroiled in two lawsuits (in California and Hong Kong), its website is completely inoperable, its business prospects are nonexistent and it cannot access any of its funds in order to properly defend itself. Liberty's numerous breaches of the Agreement are irreparable and Oron's sole

10

remedies are the return of the payment Oron made to Liberty pursuant to the Agreement and indemnification by Liberty for the legal fees Oron has paid (and will continue to pay) in its appeal of the NV Litigation, the Hong Kong action and the *Datatech* action. Furthermore, Oron must be indemnified for the loss of business it sustained as a direct result of the shutdown of its business and Liberty's disparaging statements about it made to the public.

### Remedies

For the reasons outlined herein, Claimant Oron respectfully requests that the arbitrator:

(1) Find that Liberty has breached the terms of the Agreement;

(2) Order that Liberty return to Oron the $550,000 that Oron paid to Liberty pursuant to the Agreement;

(3) Order that Liberty return to Oron the $131,797.50 that Oron was ordered to pay to Liberty in contravention of the Agreement for Liberty's legal fees;

(4) Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the appeal of the judgment for legal fees in the NV Litigation;

(5) Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the Hong Kong action, currently amounting to over $150,000;

(6) Order that Liberty indemnify Oron for all legal fees paid, and all legal fees to be paid, by Oron in connection with the *Datatech* litigation, currently amounting to over $150,000;[3]

(7) Order that Liberty pay Oron for lost revenues arising out of or relating to Liberty's breaches of the agreement, which have resulted in Oron's inability to resume business operations, estimated to be over $20,000,000;

---

[3] The *Datatech* court issued an order for partial relief from its injunction freezing Oron's assets and allowed Oron to pay its legal fees of up to $125,000. The funds released by the court were completely consumed and Oron has continued to accrue significant legal expenses since that time.

(8) Order Liberty to pay Oron the legal costs and expenses incurred by Oron in prosecuting the present arbitration; and

(9) Order Liberty to indemnify Oron for all other costs and expenses related to Liberty's breach of the Agreement and any and all other losses and damages as may be determined by the arbitrator.

Oron reserves the right to supplement this notice in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.

Dated: November 16, 2012

Respectfully submitted,
FF Magnat Limited ("Oron")
By its attorneys,

Valentin Gurvits, Esq.
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Center, MA 02459
Tel: 617-928-1804 / Fax: 617-928-1802
vgurvits@bostonlawgroup.com
Massachusetts BBO# 643572