Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Third Party Objectors,
Randazza Legal Group and Marc J. Randazza

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500,<br><br>Defendants. | Case No.: 2:12-cv-01057<br><br>**THIRD PARTY OBJECTORS RANDAZZA LEGAL GROUP AND MARC RANDAZZA'S OBJECTIONS TO PLAINTIFFS' "EMERGENCY MOTION FOR ADJUDICATION"; MEMORANDUM OF POINTS AND AUTHORITIES** |

Third parties Randazza Legal Group ("RLG") and Marc J. Randazza ("Mr. Randazza") hereby object to Plaintiff Liberty Media Holdings, LLC's "Emergency Motion For Adjudication That Attorney's Charging Lien Is Unenforceable; For Declaratory Order; And For Order of Disbursement" ("the Emergency Motion"). RLG and Mr. Randazza object to the Motion being heard on an emergency basis and respectfully request an opportunity to brief and argue the issue upon a properly noticed motion and hearing. In addition, RLG and Mr. Randazza object to and oppose the Emergency Motion for the substantive reasons set forth in the attached Memorandum of Points and Authorities.

1       This Objection is based upon the attached Memorandum of Points and Authorities, the attached Declaration of Mr. Randazza, the attached exhibits, the files and records of this case, and any argument the Court may permit.

Dated: July 1, 2012

                                          Respectfully Submitted,

                                          *s/Marc J. Randazza*

                                          Marc J. Randazza, Esq., NV Bar # 12265
                                          Ronald D. Green, NV Bar # 7360
                                          J. Malcolm DeVoy, NV Bar #11950
                                          Randazza Legal Group
                                          6525 W. Warm Springs Rd., Ste. 100
                                          Las Vegas, NV 89118
                                          888-667-1113
                                          305-437-7662 (fax)
                                          rlgall@randazza.com

**MEMORANDUM OF POINTS AND AUTHORITES**

**I.     INTRODUCTION**

Plaintiff Liberty Media Holdings, LLC ("Liberty") has declared an emergency where one does not exist in order to demand relief to which it is not entitled from its former counsel in this matter, non-party objectors Randazza Legal Group ("RLG") and Marc J. Randazza ("Mr. Randazza") (ECF 140/141). Defendant FF Magnat Limited d/b/a Oron.com ("Oron"), has filed its response as well (EF 142/143). The Court should reject the purported "Emergency Motion" and decide this issue, if at all, upon a properly noticed Motion that will give RLG and Mr. Randazza a fair opportunity to respond to Liberty's incorrect and misleading claims. However, the Court should also recognize the impropriety of the motion, and the fact that it is Liberty's attempt to circumvent a pending employment arbitration and a state court breach of contract case.[1]

Mr. Randazza worked for Liberty and its alter ego, Excelsior Media Corporation ("Exelsior"), and in that capacity litigated this case on behalf of Liberty. Based on Mr. Randazza's contract with Excelsior (Exhibit A § 3(C)), he is entitled to 25% of the $550,000 settlement he achieved in this case; that sum is the subject of Liberty's Emergency Motion. He is also contractually entitled to the repayment of $25,000 in costs he advanced in the case, as reimbursement was due either upon settlement or within 7 days of Mr. Randazza's separation from employment – both events that have come to pass. Further, RLG is entitled to up to $81,000 in unpaid attorneys' fees from Excelsior/Liberty, which the company has refused to pay.

---

[1] Both Liberty and Oron have endeavored to make untrue and ultimately irrelevant claims about Mr. Randazza and RLG's abilities, candor, competence, and effectiveness in this litigation. This objection will not address them, and they will not be addressed unless requested by this Court. In Mr. Randazza and RLG's view, it is telling that the parties must rely on such unprofessional rhetoric rather than the facts underlying this new dispute.

RLG filed a civil claim against Excelsior/Liberty in the Clark County District Court for $81,000 in unpaid legal bills.  Separately, Mr. Randazza has filed an employment arbitration matter against Excelsior/Liberty regarding various wrongs, including his entitlement to those funds.  That arbitration ("the Arbitration") is pending before JAMS in Los Angeles.[2]

By this Emergency Motion, Excelsior/Liberty improperly seek a court order denying Mr. Randazza the security to which he is entitled, even though there is a genuine dispute as to at least $276,500 of the funds and he is entitled, under Nevada law, to retain that disputed amount in his trust account.  The Court should deny the Emergency Motion or set it for full briefing and hearing.

## II. RELEVANT FACTS

On August 28, 2012, Mr. Randazza secured the transfer of $550,000 from FF Magnat Limited's ("Oron['s]") PayPal Account with aid of this Court's orders.  That is the sum at issue in the Emergency Motion.  Up to that point, Jason Gibson (Excelsior/Liberty's CEO) had embarked on a campaign to attempt to secure the settlement from Oron, while conniving to deprive Mr. Randazza of his contractually owed due.  On August 29, 2012, Liberty terminated Mr. Randazza as its general counsel before the Court authorized him to release the funds to his client.  In part, Liberty's reason for doing so was to attempt to deprive Mr. Randazza of more than $150,000 he was owed as a percentage of that $550,000 under his contract with Liberty's alter-ego, Excelsior.

Excelsior hired Mr. Randazza in 2009.  The chief executive officer of both Excelsior and Liberty is Jason Gibson.  The companies act as one unified entity to produce and market adult entertainment under the Corbin Fisher brand, and remain distinct on paper in order to protect the unified business' copyrights, trademarks, and other assets from being subject to any judgment against it.  While the companies were masquerading as distinct entities, and Mr. Gibson proclaimed

---

[2] The unpaid funds are only part of the arbitration, but the objectors will not infuse this dispute with the facts leading to the arbitration unless the Court requests them.

them to be separate entities, that was the only manner in which they were so.  Mr. Gibson obfuscated the relationships among himself, Liberty and Excelsior, and strictly prohibited any employees – including Mr. Randazza – from acknowledging the unity of these entities.

Under Excelsior's employment agreement with Mr. Randazza, he is clearly entitled to a 25% non-discretionary bonus on the gross amount of any settlement or judgment funds he obtained for the company. (Exhibit A § 3(C))  A copy of Mr. Randazza's employment agreement with Excelsior is attached as Exhibit A to the Declaration of Mr. Randazza.  Based on Mr. Randazza's and Excelsior's practices, this provision came to encompass judgments Mr. Randazza obtained for Excelsior and its alter-ego, Liberty.  Based on the judgments obtained in this action - $550,000 to enforce the parties' settlement agreement (ECF 85), and nearly $132,000 on Plaintiff's motion for attorneys' fees (ECF 114) – Excelsior owes Mr. Randazza approximately $170,000 from this action alone, in addition to a $25,000 reimbursement to Mr. Randazza for the personal funds he was required to advance Liberty's Hong Kong counsel.  (Mr. Randazza has still other claims against Excelsior/Liberty which potentially are worth hundreds of thousands of dollars more; those are the subject of the Arbitration.)

Furthermore, RLG has a fee claim of $81,000 against the company pending in state court for unpaid legal fees due for the services of RLG attorneys aside from Mr. Randazza. Now, however, Liberty is acting on Excelsior's behalf to ensure any security Randazza has in being paid these funds is removed, and improperly attempting to enlist this Court to do so.  Further, Liberty is purposely obfuscating the actual underlying pair of disputes in an effort to mislead the Court into issuing an order compelling the discharge of funds, which are genuinely in dispute (and thus

properly retained until the dispute is finally resolved) and which could be retained even in the absence of an arbitrator's order that they remain held as security.[3]

In late 2012, Mr. Randazza commenced arbitration against Excelsior, Liberty, and Jason Gibson, the CEO of both companies after months of fruitless attempts to convince Liberty/Excelsior to simply pay what was clearly contractually owed. Currently before the arbitrator are the fully briefed questions of whether these three entities are alter-egos, and whether those that remain in the action must post a bond to secure Mr. Randazza's likely recovery in the arbitration counts that are above and beyond the contractual claims. On June 27, 2013, the Arbitrator indicated he would rule on those topics on July 3, 2013.

This is the second time Liberty has tried to do an end-run around Mr. Randazza's arbitration with its alter-ego. Previously, Liberty moved to stay the enforcement of its settlement agreement with Oron (ECF 121), in order to prevent the funds being released from Mr. Randazza's trust account, and available to be collected by Mr. Randazza under his employment agreement. The motion now before the Court (ECF 140/141) represents Liberty's latest attempt to neutralize the effect of pending arbitration that unambiguously concerns it and its assets, and is on the precipice of a ruling about its status as Excelsior's alter-ego – and the consequences for the company's assets, including the $550,000 held in RLG's trust account.

//
//
//

---

[3] Nevada Rule of Professional Conduct 1.15(e) requires separate safe-keeping of property held by the lawyer when there are disputed interests to the funds. At present, Liberty, Oron, Randazza and RLG all claim some interest in these funds. The funds held in trust are not simply Liberty's funds, as it claims, but Excelsior's funds as well based on companies' alter-ego status. Due to Randazza's unpaid 25% bonuses arising from these funds (Exhibit A § 3(C)), these funds – which are Excelsior's property as well as Liberty's – are directly in dispute.

### III. ARGUMENT

Liberty misstates that its current emergency motion is about a charging lien. A review of the motion's contents (ECF 140/141) and contentions, and the letter that Ronald D. Green sent to counsel for both parties in this action (ECF 140 Exh. 5), reveals the disconnect between what Liberty claims is the problem, and what the actual problem is. Mr. Green's letter discussed the conflicting orders that Liberty and Oron had given RLG and that both Liberty and Oron had demanded that RLG act contrary to the court order allowing release of the funds. Exhibit B contains Oron's full letter, including the relevant order from the United States District Court for the Northern District of California.

Additionally, Mr. Green asked for basic, written assurances that the parties' first settlement agreement was no longer effective, and that neither Randazza nor RLG would be liable for any transfer of the funds, despite the clear language in the agreement making them liable. Liberty refused to provide these assurances and instead filed its emergency motion currently pending before the Court. Oron's filing addresses this issue for the very first time (ECF 142/143). Rather than communicate with Liberty's counsel and address this issue informally as requested in Mr. Green's letter, both Liberty and Oron have elected to take this issue to the Court. The parties did this without any input from Mr. Randazza or RLG, and without regard for the actual substance of Mr. Green's communications (ECF 141 Exh. 5).

To further call the "emergency" into question, the Court should review ECF 108, which was a motion for disbursement that RLG filed on August 29, 2013. Shortly after that filing, Liberty terminated Mr. Randazza and discharged RLG. Defendant opposed the disbursement motion, and RLG composed a reply brief that Liberty chose to never file. Nevertheless, RLG and Randazza provided this work product to Liberty's initial successor counsel, Greenberg Traurig, and strongly

advised that it be filed. Liberty/Excelsior, fearing that a disbursement of the funds would result in Randazza and RLG getting paid for their work on this case, declined to file it.[4]

The Court should deny the Emergency Motion, or in the alternative set it for a properly noticed evidentiary hearing permitting full briefing.

### A. RLG and Mr. Randazza Are Entitled To Retain Disputed Funds

Liberty's motion and correspondence to RLG has focused on a charging lien that only Liberty is claiming RLG has asserted on the $550,000. RLG is not asserting a charging lien on these funds. Knowing full well how charging liens work, RLG asserted a charging lien in this case in the event Liberty moved to recover any of the nearly $132,000 in attorneys' fees this Court awarded to Liberty. Liberty did not seek to obtain any of these fees, even though it could have – a deliberate act intended to minimize any potential of liability to Randazza to recover those funds. Accordingly, RLG has not filed the necessary motion for adjudication of this lien with the Court. In short, Liberty's focus on the charging lien is a misdirection attempting to disguise what is really at issue here. Other than its first letter to assert its rights, RLG has taken no other action on the lien. Neither has RLG asserted its pending state court litigation with Liberty as a basis for any offset in the $550,000. (See ECF 140 Exh. 5)

Instead, the funds are subject to a dispute between Mr. Randazza and RLG, on the one hand, and the alter-egos Liberty and Excelsior, on the other. Mr. Randazza is entitled to at least 25% of these funds under section 3(C) of his employment agreement with Excelsior, plus $25,000 for reimbursement of cost advances. He further has a right to claim 25% of the fee award, even though Liberty/Excelsior (out of spite) refused to collect that award, which vested at the time the

---

[4] If Excelsior/Liberty's actions seem illogical, that is because they are. The underlying dispute is, at its core, a personal dispute between Randazza and Liberty/Excelsior's CEO, Jason Gibson. Gibson appears willing to take actions that are against his legal interests in order to spite perceived "enemies," as that is precisely what is happening in this case.

judgment was entered.  That portion of the $550,000 is very much in dispute – but for reasons other than what Liberty claims.

This District has had prior opportunities to evaluate the role of Nevada Rule of Professional Conduct 1.15(e) in fund disputes.  In *Name Intelligence, Inc. v. McKinnon*, the plaintiffs sued an attorney who disbursed funds as demanded by defendants while plaintiffs claimed an interest in the property. Case No. 2:10-cv-1202-RCJ-GWF, *2012 WL 2780062* at *1 (D. Nev. July 9, 2012).  The *McKinnon* court, acknowledging that the claims against the attorney defendant were only allegations at that point, opined that if he "disbursed funds … while award that [other parties] claimed rightful ownership of the entire amount, he may have violated NRPC 1.15(e)." *Id*. at *4.

The McKinnon analysis comports with the plain language of Rule 1.15(e).  Here, a non-party to this litigation, Mr. Randazza and RLG are claiming an entitlement to the funds that conflicts with Liberty's and Excelsior's.  Rule 1.15(e) specifically contemplates that one of the persons who claims an interest in the funds may be the attorney who holds them in trust. Accordingly, knowing full well of Mr. Randzza's competing claims to the funds, Mr. Randazza and RLG arguably would violate Rule 1.15(e) by making any release of them.

Liberty's motion attempts to place Mr. Randazza into a no-win situation.  Because of this compliance with Rule 1.15(e) and retaining disputed funds in trust, Liberty has come to this Court to impugn the objectors without providing the Court the full scope of the underlying dispute, and seeks to wrest the funds away from Mr. Randazza and RLG over his claim to them.  Furthermore, both Liberty and Oron have made conflicting claims about the funds, and until Liberty filed its emergency motion, the parties did not seem to even be in agreement as to whom the funds should be disbursed.  Liberty knows full well of Mr. Randazza's claim to the funds through Mr. Green's letter (ECF 141 Exh. 5), the state court litigation, and the employment arbitration.  If Liberty succeeds in its campaign against Mr. Randazza to release these funds while they are still disputed,

its counsel will be required to report a violation of Rule 1.15(e) for releasing funds despite another person's claim to them – namely, Mr. Randazza's. *See* Nev. R. Prof. Cond. 8.3(a) (requiring reporting of conduct raising "substantial question" of unethical behavior).

Under Rule 1.15(e), the funds held in trust must have all claims of ownership resolved before they can be disbursed. Mr. Green's letter explained this to Liberty (ECF 141 Exh. 5), yet Liberty filed the instant "emergency" motion regardless. Because of the status of arbitration between Mr. Randazza and Excelsior (and by extension, its alter-ego Liberty, which is a party to the arbitration) over these very funds, the arbitrator, rather than this Court, would be the appropriate forum to determine Mr. Randazza's entitlement to the funds in trust, with the remainder released to Liberty. This will economize party resources, as Liberty/Excelsior is already engaged in arbitration with Mr. Randazza, avoid concurrent litigation of identical issues, and ensure that the objectors fully comply with Rule 1.15(e).

### B. Liberty's Discussion of The Facts And Law is False And Irrelevant

Liberty attempts to frame the dispute – falsely – as being about RLG's entitlement to statutory attorney fees. That is not the issue. As is discussed above, Mr. Randazza and RLG are entitled to retain $276,500 of the $550,000 under Nevada law because they are in genuine dispute, not based on the lien. Moreover, Liberty and Oron have made conflicting claims to the funds, and have refused to clarify whether Mr. Randazza's and RLG's liability for the funds is released – and thus *all* the funds should be retained until these conflicting claims are resolved.

The Court is aware, from enforcing the settlement agreement between Liberty and Oron, that the agreement made RLG and Mr. Randazza personally liable for any amount of the $550,000 improperly released, *plus* a $55,000 penalty. (ECF 44-2 ¶ 2). Mr. Randazza sought assurance from Oron and Liberty before he releases any funds that he is no longer liable under those terms. (ECF

140 Exh. 5). As noted, Oron's assurance came only after Liberty filed the instant Motion. Tellingly, Liberty has still refused to give any such express, written assurance.

Randazza's caution is sensible and not invented: Liberty's silence on this issue is compelling proof of bad faith and chicanery, particularly when combined with Liberty's current scorched-earth campaign against Mr. Randazza. Liberty has frivolously sued RLG for legal malpractice in Nevada state court, pointing to the firm's success in this litigation as the basis for its claim. Jason Gibson, the controller and alter-ego of Liberty and Excelsior, has also filed baseless bar complaints against Mr. Randazza in all five states where he is licensed – Nevada, Florida, Massachusetts, Arizona and Florida – presumably to obtain an advantage in his alter-ego companies' disputes with Mr. Randazza and RLG.[5] Moreover, as Mr. Randazza pointed out in his letter to Liberty, Liberty and Oron have made ***competing demands over the $550,000*** (ECF 140 Exh. 5), a discrepancy that Liberty ignores and fails to resolve.

Those disputes are the basis for Mr. Randazza's postion, not any lien. But it bears pointing out – because it shows that Liberty is attempting to mislead this Court – that Liberty's arguments about statutory entitlement to attorney fees are simply wrong. One of the main planks of Liberty's Emergency Motion, as well as its campaign against Randazza and RLG, are purported "misrepresentations" to the Court in its motion for attorneys' fees before the Court (ECF 89). Liberty maintains that because it has not paid RLG for its work,[6] and because it claims it was entitled to certain discounts on RLG's rates due to its long-standing relationship with RLG, the

---

[5] This came as no surprise to Mr. Randazza, as Gibson's counsel in the arbitration, Wendy Krincek of Littler Mendelson P.C., tacitly threatened this disciplinary action if Mr. Randazza would not settle the dispute with Gibson on favorable terms. Randazza did not acquiesce to this extortionate activity. A truncated and redacted copy of this Sept. 6, 2012 letter from Ms. Krincek, which has been edited to remove any settlement-related content and leave only the statements relevant to the charge raised in this objection, is attached hereto as Exhibit C.

[6] This issue is currently being litigated in state Court.

firm's motion for attorneys' fees contained "blatant" misrepresentations. (Decl. of L. Bielinski, Exhibit D ¶ 3)   To the contrary, the drafters of that motion conducted a reasonable inquiry as to its contents before it was filed, and had no knowledge that any statement contained within it was anything less than true; regardless, Liberty has forced RLG into litigation over semantics as punishment for Randazza seeking to hold his former employer to its contract.

Liberty's position is belied by federal precedent nationwide.  A "reasonable" attorney's fee is determined by the market, rather than a client's willingness to pay or actual payments to the attorneys, and evaluated on that basis.  When calculating a reasonable attorney's fee award under 17 U.S.C. § 505, as the Court did in this case, "the *actual* fee arrangement between the client and the attorney *is immaterial*." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996) (emphasis added). That a client "did not actually pay attorneys' fees out of pocket" cannot "preclude an award of reasonable attorneys' fees." *Deininger & Wingfield, P.A. v. IRS*, Case No. 4:08-cv-00500-JLH, *2009 WL 3047576* at *2 (E.D. Ark. Sept. 18, 2009). Courts award fees at their market value - not the rate a client actually paid. *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix, Corp.*, 73 F.3d 150, 153 (7th Cir. 1996); *see Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) ("reasonableness must be assessed using the market's mechanisms").

The measure for reasonableness is not what a client actually paid, but what a "reasonable, paying client would be willing to pay," in consideration of the case's complexity, the capacity of opposing counsel, and the resources needed to prosecute the case effectively, as well as the case's time demands. *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 493 F.3d 110, 112 (2d Cir. 2007).  The federal courts have expressly rejected Liberty's exact position in its malpractice action: That attorney's fee awards are limited to the fees *actually* paid in the matter, rather than the market value of the fees incurred. *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 934 (Fed. Cir. 2000) ("courts have neither interpreted the 'incurred' term in these statutes to restrict

or limit the payment of fees to those *actually* incurred, nor prevented market-rate fees from being awarded.") (emphasis in original).

Despite explaining to Gibson, Liberty, and Excelsior that its contentions on this issue are meritless, and RLG comporting with the vast body of federal law on this issue, Liberty manufactured a frivolous malpractice claim against RLG based upon its attorneys' fee motion. In this instance, RLG's conduct is overwhelmingly in the right, justified, and was in Liberty's best interests, yet it is still forced to bear the costs of dubious litigation because of Mr. Gibson, Excelsior, and Liberty's grudge against Randazza.   While this is but one example from Mr. Randazza's dispute with Mr. Gibson and his companies, it typifies the character of all of these actions: Mr. Gibson is using the courts to act out his personal grievances, deeply offended that Randazza would not simply give up his rights to contractually due wages.

### C.  The Right To A Portion of the $550,000 Is At Issue In Arbitration

As is noted above, Mr. Randazza commenced arbitration before JAMS in Los Angeles against Excelsior over issues including, but not limited to, his entitlement to the 25% of the $550,000 and reimbursement of the $25,000 in costs.  Mr. Randazza's motion for preliminary relief seeking a declaration that Excelsior, Liberty, and Mr. Gibson is pending; the Arbitrator has stated he will rule on July 3, 2013.  Mr. Randazza has asked the Arbitrator to consider treating the $550,000 in trust as a source of funds to secure an anticipated judgment, given the fact that Randazza is fully aware that Excelsior/Liberty is rapidly losing sales, revenue, and human capital, and that the companies are deliberately structured in order to avoid payment of legitimate debts. Randazza has therefore asked the arbitrator to issue an order freezing the remaining portions of the funds over and above the $276,500 that is in direct dispute; that portion of the motion is also under submission.  The Arbitrator, informed of Liberty's Emergency Motion (ECF 140/141), declined to issue any interim request or order concerning the $550,000.

The Arbitration represents a legal proceeding through which Excelsior's connection to Liberty, and Mr. Randazza's entitlement to a portion of the $550,000, will be adjudicated.  This Court should therefore not issue any emergency order concerning those funds.  Instead, if the Court is inclined to issue any order, it should do so in light of the Arbitrator's anticipated July 3, 2013 order, and upon full briefing and a hearing.

### IV.   Conclusion

The facts and law are not as Liberty claims.  There is no basis to grant its motion on any basis, let alone an emergency basis.  The Court should either deny the motion or set it for a hearing with a full and fair opportunity for briefing.

Dated July 1, 2013

                                  Respectfully Submitted,

                                 *s/Marc J. Randazza*

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served on all parties using this Court's CM/ECF system on July 1, 2012.

Dated: July 1, 2012

Respectfully Submitted,

*s/Marc J. Randazza*

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com