# EXHIBIT A

**CONTRACT OF EMPLOYMENT FOR CORPORATE GENERAL COUNSEL**
*By and Between Excelsior Media Corp. and Marc J. Randazza*

By the signature mark below, Excelsior Media Corp. (hereinafter "Excelsior") hereby extends this offer of employment to Marc J. Randazza (hereinafter "Randazza"), which is contingent upon satisfactory results of a criminal background investigation and reference verification. Randazza, by his signature mark below, does accept such offer as detailed by the terms and conditions set out in this Agreement and the fully integrated Addendums specified herein.

1.     **Pre-Employment and Transition Period**

A.     *Duties Owed to Former Clients*

Excelsior understands and acknowledges that as an attorney, Randazza owes certain duties to those clients whom he has represented prior to accepting employment with Excelsior. Randazza will make every reasonable effort to conclude all representational efforts with respect to such clients (except as provided for in Section 6C, below) prior to commencing employment with Excelsior. However, to the extent that Randazza is called upon to advise, provide information to, or otherwise engage with his former law partners or subsequent counsel for the benefit of former clients and with respect to matters for which previous representation was provided, Excelsior expressly authorizes him to do so.

The parties understand that the majority of Randazza's current client work will taper down as quickly as ethically and practically possible.  However, during the first 90 days of this contract's duration, Excelsior shall liberally grant Randazza accommodations to facilitate the winding down of his private practice.

Also, as outlined in Section 6C, Randazza shall continue to render ongoing representation to a select portfolio of private clients.

B.     *Relocation*

While Randazza shall, initially, have the right to determine his regular location of employment, Excelsior shall have the right to request that Randazza relocate to another location for the convenience of the company.  Randazza shall be entitled to delay any relocation for a time period sufficient to sell his residence or to lessen the disruption on any school-age children by having any move scheduled for the summer time, after the school year ends, and if his wife is employed at the time of any request, similar accommodations shall be granted.

If Excelsior requests that Randazza relocate to a location other than San Diego or Tampa, uncontemplated by the parties at the time of the execution of this agreement, then Randazza may refuse to relocate and be deemed to be unilaterally discharged, as defined in Section 7B of this Agreement, and shall be entitled to the severance compensation provided therein.

In the event that Randazza elects to relocate to San Diego, reasonable relocation expenses and two house hunting trips will be paid for by Excelsior.

2.     **Start Date, Location, Job Title, Job Duties, and Reporting Relationship**

A.     *Start Date*

Randazza's employment with Excelsior will commence no earlier than July 1, 2009 and no later than September 15, 2009, and will continue thereafter on an at-will basis until terminated by either party pursuant to the procedures and specific provisions of this contract.

>   B.   *Work Location*

Excelsior and Randazza agree that the job duties of General Counsel may be performed at a location of Randazza's choice.  However, Excelsior will only provide relocation assistance if Randazza is to relocate to San Diego, California, or if Excelsior, for its own convenience, requires Randazza to relocate to another geographic location at some point in the future.  However, any such "required relocation" shall be subject to the other terms and conditions of this contract.

During periods when Randazza resides outside of San Diego, California, Randazza will work primarily from a home office, or other office space maintained and paid for wholly at Randazza's expense. Randazza will generally be available electronically via internet and telephone during normal business hours.  Randazza's office space, if paid for by Randazza may be used jointly for outside projects.  However, no Excelsior equipment (as discussed below) may be used for any outside projects.

Should Randazza relocate to San Diego, Randazza will work primarily from Excelsior's San Diego office.

However, should Randazza relocate to San Diego, Randazza shall be permitted and entitled to work remotely. It is contemplated that if Randazza relocates to San Diego, he may work remotely for extended periods of time from Massachusetts, New York, or elsewhere.  These extended periods shall be approved by Excelsior, and Randazza shall be fully available and "on duty" during these periods.  These periods shall not be during times that, for Excelsior's convenience, Randazza's presence in San Diego is required.  Additionally, these periods shall not be of such duration as to cause inconvenience to Excelsior.

In the event that Randazza relocates to San Diego, any days required for such relocation (including house hunting) shall not be charged to Randazza's vacation time.

>   C.   *Job Title, Job Duties, Reporting Relationship*

Randazza's job title will be General Counsel, reporting to Jason Gibson, CEO. The position of General Counsel encompasses a variety of duties and responsibilities, which may include, but are not limited to, those outlined in the General Counsel Job Description, attached hereto as Addendum A.

**3.    Remuneration**

>   A.   *Starting Salary*

Randazza will earn an annual starting salary of $208,000.00, which will be paid by Excelsior on a weekly basis in the amount of $4,000.00 per week.   In the event that Randazza relocates to San Diego, his salary shall be raised to $239,200 annually or $4,600 per week.

>   B.   *Salary Reviews and Adjustments*

After six months, Randazza and Excelsior's CEO shall conduct a salary and performance review.  At that time, Randazza's salary may be adjusted if deemed appropriate by both parties.

Thereafter, subject to overall satisfactory job performance as determined by Excelsior's CEO, Randazza's annual salary will be reviewed on each employment anniversary date and increased by not less than 5% of his then current annual salary.  If unforeseen business

conditions make it necessary, the annual salary increase may be deferred or waived by the execution of a Memorandum of Understanding signed by Randazza and Excelsior, which will be attached and fully integrated into this Agreement.

In the event that an annual review does not result in an increase deemed sufficient by Randazza, then Randazza shall have the right to request a mid-year salary review six months thereafter.  Excelsior shall not be obliged to re-adjust at this mid-year review, but shall in good faith endeavor to resolve any discrepancies between actual remuneration and salary expectations at that time.

      C.    *Nondiscretionary and Discretionary Bonuses*

Randazza will receive, as a nondiscretionary bonus, twenty-five (25) percent of any settlement funds paid to Excelsior in connection with legal matters (whether or not formal litigation is commenced). Settlement fund bonuses will vest at the time of settlement, and be paid within thirty (30) days of the date that the funds are received by Excelsior.  If Randazza's employment terminates, for any reason by either party, Randazza will be entitled to all vested settlement bonus amounts, regardless of when the settlement funds are collected. Randazza will also be eligible to receive other nondiscretionary bonuses, such as year-end bonuses, incentive program bonuses, or profit-sharing bonuses, as determined by Excelsior's current and future bonus plans, according to the terms of such plans.  Randazza will be eligible for discretionary bonuses, such as merit or performance bonuses, as determined solely by Excelsior.

      E.    *Vacation and Paid Holidays*

Randazza will earn 15 days of Paid Time Off (PTO), accrued on a weekly basis as labor is performed, during the first year of employment; and 20 PTO days per year for the 2nd and 3rd year, 25 PTO days per year for 4-6 years, and 30 PTO days per year for 7th year onward. These PTO days would be accrued weekly per the company policy.

Randazza will be entitled to paid holidays under the same terms and conditions as other Excelsior employees.

      F.    Sick time: Randazza shall have the same sick time privileges as afforded to all other Excelsior employees.

      G.    Changes to company policies:  In the event that Excelsior changes from a PTO policy to separate Vacation and Sick Time policies, Randazza's PTO as contemplated in this Agreement shall be deemed to be vacation time.

**4.    Fringe Benefits**

As of commencement of employment, Randazza will be eligible to participate in and be covered by the health, dental, disability and life insurance plans offered by Excelsior to its employees, subject to the terms and conditions of those plans. Following the required waiting period, Randazza will be eligible to participate in Excelsior's 401k plan, and to receive employer matching contributions, as determined by the terms and conditions of the plan. Randazza acknowledges that the terms and conditions of the fringe benefit plans offered by Excelsior to its employees may change following the Effective Date of this Agreement.

**5.    Professional Memberships, Liability Insurance, and Resources**

      A.    *Bar Association Dues*

At the time of employment, Randazza is licensed in Florida and Massachusetts and in all federal and appellate courts in those states, as well as in the Federal Circuit.  During all periods

of employment, Excelsior will pay annual state bar association dues for each state in which Randazza is licensed as an attorney, renewal fees for federal and appellate court licenses, and continuing legal education credits required to maintain his bar memberships in good standing. Excelsior shall also cover membership fees for Bar practice sections relevant to Randazza's role as General Counsel.

> B.      *California Bar Exam*

Excelsior acknowledges that membership in the State Bar of California is necessary for effective performance of the position of General Counsel, and that as of the Effective Date of this Agreement, Randazza is not yet a member of the State Bar of California. Excelsior agrees to pay all fees and costs required for Randazza to prepare for and pass the California Bar Exam, including all application and background investigation fees and costs, all BarBri or similar bar study course fees, as well as all incidental costs associated with taking the required exams, including travel, meal and lodging expenses.

In addition, Excelsior acknowledges that preparing for the California Bar Exam will require study time that Randazza would otherwise spend performing his job duties. Excelsior agrees that during the sixty (60) day period preceding the test date selected by Randazza and Excelsior, Randazza will be expected to dedicate no more than fifteen (15) hours per week to General Counsel job duties, with the understanding that the remainder of his time will be spent studying and otherwise preparing to take the California Bar Exam. During the 21 days preceding the selected test date, Excelsior agrees that Randazza will perform no work related duties, and will devote all of his time to exam preparation. Randazza will be permitted to devote this time and focus to preparing for and taking the bar exam without reduction in salary, and without using accrued PTO.  During this period, Randazza and Excelsior will cooperate to arrange work load and work commitments to permit Randazza to focus on bar exam studies, and that depending on business needs, it may be necessary to engage outside counsel to handle certain assignments during this period.

> C.      *Professional Liability Insurance*

Excelsior warrants that it maintains corporate Errors and Omissions insurance and that the work performed by its General Counsel is covered by such insurance. Randazza will also maintain professional malpractice insurance, as separate coverage, and at his sole discretion and expense.

Randazza's outside projects shall not be covered by any professional liability insurance provided by Excelsior, and Randazza must carry his own liability coverage or self-insure for those purposes.

> D.      *Other Professional Memberships and Resources*

*Memberships*: Excelsior agrees that Randazza's membership in the First Amendment Lawyer's Association (FALA), which is the adult entertainment lawyers' guild, is valuable to his role as Excelsior's General Counsel, and agrees to pay the annual dues required to maintain such membership. In addition, Randazza's membership in the International Trademark Association is deemed valuable to Excelsior and shall be paid for as well.  Randazza will attend the twice-annual conferences of FALA, the annual conference of the International Trademark Association, and any other conferences or engagements that are agreed by both parties to be beneficial to Randazza's duties as General Counsel including AVN, Internext, and the like. Excelsior will pay all reasonable necessary and incidental fees and costs associated with attending these events, including for travel, lodging, meals, and business networking.

*Legal Research*: Excelsior will open and maintain a Lexis® or Westlaw® account, with a subscription level sufficient to permit Randazza to fully perform the duties of General Counsel.

Excelsior will also purchase required treatises or other tools deemed by Randazza to be needed to perform his duties as General Counsel effectively, subject to a reasonable annual budget that may be set by Excelsior.

*Secretarial Support*:   At the time of the execution of this agreement, it is not anticipated that Randazza will require secretarial support.  However, in the event that Randazza does require secretarial support, Excelsior agrees to either hire secretarial support for Randazza, or to reimburse Randazza for part-time secretarial services that may be available in any space-sharing arrangements or offices that Randazza may rent.  In particular, Randazza is contemplating an office rental (and he shall pay for that office rental) in Massachusetts, where secretarial services may be purchased on an hourly basis.  In the event that secretarial support is required, Randazza shall endeavor to use part-time assistance prior to retaining full time support staff assistance.

*Equipment*:  Excelsior shall reimburse Randazza for the cost of a PDA/Phone, a laptop computer (preferably Apple operating system), a high-speed internet connection, and a dedicated fax/phone line.  While these may, occasionally and incidentally, be used for personal purposes, their primary use shall be for Excelsior.

*Education and CLE*:  Excelsior shall pay for any Continuing Legal Education (CLE) required to maintain good standing in the various Bars to which Randazza is admitted.  Additionally, should Randazza identify a CLE or a course, which would benefit Excelsior, Randazza shall petition Excelsior for approval.  Shall such course be approved, Randazza shall have his tuition for such course or program reimbursed by Excelsior.

6.      **Ethics and Conflicts; Confidentiality, Inventions, Interference, and Solicitation; Outside Projects**

        A.      *Ethics and Conflicts*

        Excelsior acknowledges that in addition to complying with accepted business ethics standards and Excelsior's internal code of conduct, Randazza is bound to adhere to the professional ethical standards imposed upon attorneys by state bar associations and under the common law. Excelsior covenants it will not require, as any condition of initial or continued employment, that Randazza breach an ethical standard as required by law and the bar associations to which he belongs. This includes the continuing duties of confidentiality and loyalty Randazza owes to his former clients. Excelsior agrees that it's insistence on a course of conduct that violates a legally mandated professional ethical standard would be a material breach of this Agreement, constituting Excelsior's unilateral termination of this Agreement and entitling Randazza to the severance provisions of this Agreement as detailed in Section 7B below.

        B.      *Confidentiality, Inventions, Interference and Solicitation*

        In exchange for the consideration detailed herein, Randazza agrees to be bound to the Confidentiality and Inventions Assignment Agreement attached hereto as Addendum B, which is fully integrated into this Agreement. Excelsior and Randazza agree that the Confidentiality and Inventions Assignment Agreement is intended to comply with, and be construed in accordance with, California Business and Professions Code Section 16600 (prohibiting noncompete agreements) and the rules of professional conduct of the California, Florida, and Massachusetts state bar associations.

        Randazza is the owner of Exile Political Media, LLC, and publishes a legal blawg (currently called "The Legal Satyricon"; although the name may change in the future without detriment to ownership rights).  Excelsior acknowledges that this blawg is 100% Randazza's intellectual property.

        C.      *Outside Projects*

Insofar as such activities do not violate any professional ethical standard or the Confidentiality and Inventions Assignment Agreement attached hereto as Addendum B, Excelsior agrees that Randazza may, without breaching such duties and agreements, provide professional services to a limited number of outside clients on an ongoing basis, as long as such services are rendered without legal or professional conflict with Excelsior, and such projects are rendered through a separate legal entity, such as Marc J Randazza, PA or another outside law firm.  Under no circumstances shall Randazza represent, nor allow the perception to exist, that such services are being rendered as part of his duties with Excelsior.

Randazza agrees that any such outside projects shall be rendered during non-working hours, on vacation days, or on unpaid leave days.  If a necessity arises to be available for an outside project during working hours, Randazza shall be obligated to either take a vacation day or an unpaid leave period during that time of necessity, or shall make up the time to Excelsior.  In any circumstance where there is such a necessity, yet it conflicts with an Excelsior project or an Excelsior appointment, the Excelsior responsibility shall **always**, without exception, prevail.

In the event that Excelsior's management perceives that Randazza's outside projects are interfering with his duties as General Counsel, the parties shall endeavor, in good faith, to resolve the issue.  However, Randazza acknowledges that his duties as General Counsel are paramount and that his first duty of legal and temporal loyalty must always lie with Excelsior.

Excelsior equipment, such as any laptop paid for by Excelsior, shall not be used for any outside projects. Incidental or de minimis use shall not constitute a violation of this policy.  Nevertheless, Randazza shall keep a "wall of separation" between Excelsior and any outside work.

        *D.*    *Excelsior Pro Bono Services*

From time to time, at Randazza may present to Excelsior a pro-bono project to be conducted under the auspices of Excelsior's legal department as part of his duties as General Counsel.  These projects shall generally be free speech and civil rights cases, and they shall only be rendered under this paragraph if Excelsior approves of them as being in Excelsior's best interest.

When such projects are rendered, Randazza shall coordinate his efforts with Excelsior's public relations staff to maximize the benefit to Excelsior for such community service.

**7.**    **Contract Termination and Severance**

        *A.*    *Contract Termination*

This Agreement may be terminated by either party, with or without advance notice to the other party, and with or without cause.

        *B.*    *Severance*

Excelsior acknowledges that in accepting its offer of employment, Randazza forgoes a valuable partnership in an established law firm, and in so doing, withdraws from representing the vast majority of his clients and passes such representation to other attorneys. It is highly unlikely that Randazza can reclaim representation of such clients if his employment relationship with Excelsior terminates. In recognition of this, Excelsior agrees that if it unilaterally terminates Randazza's employment and this Agreement, severance will be paid to Randazza according to the following schedule and in the following amounts:

If termination occurs during the first year of employment, Excelsior will pay Randazza as severance the equivalent of forty-eight (48) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the second year of employment, Excelsior will pay Randazza as severance the equivalent of thirty-six (36) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the third year of employment, Excelsior will pay Randazza as severance the equivalent of twenty-four (24) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the fourth year of employment or at any time thereafter, Excelsior will pay Randazza as severance the equivalent of twelve (12) weeks salary at his then effective salary rate, less applicable withholdings.

*Exceptions*: Excelsior will not be deemed to have unilaterally terminated Randazza, and no severance benefits will be owed, if (a) Randazza resigns voluntarily and without coercion, or (b) if Excelsior unilaterally terminates Randazza, after full investigation and upon detailed written explanation, for gross misconduct or for non-performance without correction as defined below.

For the purposes of this Agreement, the term "unilaterally terminates" shall be understood to mean a decision by Excelsior to terminate Randazza's employment for any reason, including by layoff, business closure or bankruptcy, or the creation or allowance of working conditions constituting a constructive discharge including any involuntary reduction in salary or material change to the terms of employment.

Additionally, Randazza is accepting employment largely as a result of his working relationship with the current Excelsior management.  In the event that Excelsior is acquired by another company or merged with another company, this shall constitute "unilateral termination" by Excelsior, even if the new or successor entity offers employment on the same or more favorable terms than previously provided by Excelsior.  However, if Randazza continues employment with the new or successor entity, and if this Agreement is superseded by a new agreement between Randazza and the new or successor entity, a "unilateral termination" will not have been perfected.

The term "gross misconduct" shall be understood to mean discharge for acts of violence against persons or property, theft, embezzlement, acts of dishonesty causing verifiable harm to Excelsior or its reputation, or conviction for a felony offense.

The term "non-performance without correction" shall mean that Randazza has been duly terminated pursuant to the following procedures:

    i.    **Step One - Verbal Counseling**:

As the first step in correcting unacceptable performance or behavior, Excelsior's management should review pertinent job requirements with Randazza to ensure his or her understanding of them. Verbal counseling should consider the severity of the problem, Randazza's previous performance appraisals and all of the circumstances surrounding the particular case, stating that a written warning, probation or possible termination could result if the problem is not resolved should indicate the seriousness of the performance or misconduct. Randazza shall be asked to review what has been discussed to ensure his or her understanding of the seriousness of the problem and the corrective action necessary. The verbal counseling session shall be documented for future reference

immediately following the review.

ii.      **Step Two - Written Counseling**:

If the unacceptable performance or behavior continues, the next step should be a written warning. Certain circumstances, such as violation of a widely known and key policy or safety requirement, may justify a written warning without first using verbal counseling. The written warning defines the problem and how it may be corrected. The seriousness of the problem is again emphasized, and the written warning shall indicate that probation or termination or both may result if improvement is not observed. Written counseling will become part of Randazza's personnel file, although his supervisor may direct that the written warning be removed after a period of time, under appropriate circumstances.

iii.     **Step Three - Probation**

If the problem has not been resolved through verbal counseling, followed by written counseling, Randazza shall be placed on probation. Probation is a serious action in which the employee is advised that termination will occur if improvement in performance or conduct is not achieved within the probationary period.

The probation period for Randazza shall be at least 30 days and no longer than 90 days, depending on the circumstances.

The probation period shall commence with a meeting between Randazza and Excelsior's CEO (or other party that the CEO shall designate).  In this meeting, Randazza and Excelsior shall agree upon a "probation plan," which shall include a statement of the following:

- A review of oral and written warnings;
- The length of probation;
- The specific behavior modification or acceptable level of performance;
- suggestions for improvement;
- A scheduled counseling session or sessions during the probationary period, during which both parties shall endeavor in good faith to resolve the issues leading to probation; and
- A statement that further action, including termination, may result if defined improvement or behavior modification does not result during probation.

"Further action" may include, but is not limited to, reassignment, reduction in pay, grade or demotion.

Excelsior's CEO should personally meet with Randazza to discuss the probationary letter and answer any questions and to create an outline of goals and actions, which will result in a resolution of the probationary status.

Randazza shall acknowledge receipt by signing the letter.  Such signature shall not be deemed to be an acknowledgement of any wrongdoing – but shall be evidence that the probationary document was delivered and received.

The probationary letter becomes part of Randazza's personnel file. On the defined probation counseling date or dates, Randazza and his supervisor will meet to review the his progress in correcting the problem that led to the probation.  There shall be no fewer than two "progress meetings."  Brief written summaries of these meetings should be prepared with copies provided to Randazza.  Randazza shall be given written feedback after each meeting, informing him if the probationary period is resulting in the desired improvement, and/or suggesting additional improvements.

At the completion of the probationary period, the Excelsior's CEO will determine whether Randazza has achieved the required level of performance and to consider removing him from probation, extending the period of probation or taking further action. Randazza is to be advised in writing of the decision. Should probation be completed successfully, Randazza should be commended, though cautioned that any future recurrence may result in further disciplinary action.

iv.      **Step Four – Unpaid Leave**

In the event the above procedures do not correct the employment problem that led to the probationary period, either party may demand that Randazza be placed on unpaid leave.  During the period of unpaid leave, Randazza may not engage in any of his prior duties nor shall he collect any pay nor benefits, and Randazza shall render his work station empty and shall return all company property and cease using any company resources.

During the unpaid leave period, Randazza shall not report to Excelsior's premises, except at Excelsior's request or per Excelsior's permission. Additionally, during this period, Randazza shall be permitted (and encourages) to seek alternate employment and Excelsior shall be permitted to seek a replacement for Randazza.

It is understood that during the Unpaid Leave period, Randazza shall collect neither pay nor benefits of any kind from Excelsior, nor may he represent to anyone but potential subsequent employers that he is employed by Excelsior.  Randazza may apply for unemployment benefits during the unpaid leave period, and Excelsior shall not dispute any claim for benefits.

During the unpaid leave period, if Randazza and Excelsior wish to come to a new employment arrangement, they are permitted to do so. However, neither party shall be obliged to do so, and both parties shall presume that the unpaid leave period is a prelude to involuntary termination or resignation.

Both Randazza and Excelsior agree that during the unpaid leave period, Randazza will not be deemed to have either been terminated or to have resigned, and that for the purposes of California Labor Code Sec. 201, 202, and 203, Randazza is not entitled to be paid all final wages, including accrued but unused PTO/vacation benefits until the time of termination or resignation as expressed in writing, or as provided in Step Five below, and that no waiting time penalties will be due to Randazza during the period of unpaid leave.

v.   **Step Five:  Involuntary Termination**:  In 60 days, the Unpaid Leave period shall automatically end and the employee shall be deemed to be terminated.  The parties may lengthen or shorten this time by mutual agreement.

## 8.   Dispute Resolution

Excelsior and Randazza hereby agree that any controversy, dispute or claim arising out of this Agreement or relating to Randazza's employment with Excelsior—including any claims arising under state or federal anti-discrimination laws—shall first be settled through good faith negotiation and voluntary mediation. If the dispute cannot be settled through negotiation or mediation, the parties agree to settle such dispute by binding arbitration administered by the Judicial Arbitration and Mediation service or American Arbitration Association pursuant to its Employment Arbitration Rules & Procedures and subject to its policies on employment arbitration minimum standards for procedural fairness. Judgment on any Award made by the arbitrator may be entered in any court having jurisdiction. This agreement to arbitrate shall include the following terms, as required by California law:

A.   *Initiation of Arbitration.* Once either party determines that efforts at good faith negotiation and mediation have failed, within 60 days of notifying the other party of this determination, either party may initiate arbitration proceedings by submitting to the Judicial Arbitration and Mediation service or American Arbitration Association a written demand for arbitration listing the name and contact information for both parties, along with a copy of this Agreement, and providing the other party a copy of the written demand.

B.   *Fees and Costs of Arbitration.* Excelsior agrees to pay all forum fees and all fees and expenses charged or incurred by the arbitrator. Each party shall bear their own attorneys fees and costs; however, the Arbitrator is hereby authorized to direct the non-prevailing party to pay to the prevailing party their attorneys fees and costs, in the Arbitrator's sole discretion.

C.   *Arbitrator Selection.* This Agreement does not provide for the pre-selection of a specific arbitrator. A neutral arbitrator will be selected according to the normal rules and procedures of the Judicial Arbitration and Mediation service or American Arbitration Association, as agreed to by the parties.

D.   *Discovery.* The arbitrator will determine the appropriate scope of discovery as governed by the normal rules and procedures of the Judicial Arbitration and Mediation service or American Arbitration Association, and will in any case be sufficient to permit each party to fully investigate and present their claims and defenses.

E.   *Written Decision.* The arbitrator will provide all parties with a written decision that details the arbitrator's findings of law and fact, as well as the arbitrator's reasoning in making those findings. The arbitrator is expressly authorized to award either party any and all remedies to which he would otherwise be entitled under state or federal law, as if the matter were brought in a civil court of competent jurisdiction.

F.   *Place of Arbitration.* The arbitration will be conducted within 40 miles of the city of San Diego, California, or as otherwise mutually agreed to by the parties.

G.   *Statute of Limitations.* Any claim governed by this Agreement shall be filed no later than the legally applicable statute of limitations for the type of claim

presented, accruing from the date that the claim is discovered, or one year from the last date of employment, whichever comes first.

9.      **Miscellaneous Terms and Conditions**

      *A.*      *Effective Date*

The Effective Date of this Agreement will be the last date that any party signs the Agreement.

      *B.*      *Counterparts*

This Agreement may be executed in multiple counterparts or on multiple pages bearing a party's signature, as if the Agreement was signed by all parties on the same page.

      *C.*      *Severance of Unenforceable Provisions*

Should any court or arbitrator with authority to interpret and enforce this Agreement rule that any provision, paragraph or term of this Agreement be is unenforceable, such unenforceable terms will be severed and the remaining provisions, paragraphs and terms of the Agreement will remain in full force and effect.

      *D.*      *Modification*

Any modification of this Agreement must be made in writing and signed by Randazza and Jason Gibson, CEO of Excelsior.

      *E.*      *Governing Law*

This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws. Any action to enforce an arbitrator's award will be venued in San Diego County, California, unless otherwise agreed to by the parties.

      *F.*      *Integrated Addendums*

            Addendum A – General Counsel Job Description
            Addendum B – Confidentiality and Inventions Assignment Agreement

**BY SIGNING BELOW, EACH PARTY REPRESENTS THAT THEY ARE AUTHORIZED TO ENTER INTO THIS AGREEMENT, AND DO SO KNOWLINGLY AND VOLUNTARILY, THAT EACH HAS HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL REGARDING THIS AGREEMENT AND HAS EITHER DONE SO OR DECLINES TO DO SO, AND THAT EACH PARTY INTENDS TO BE BOUND BY THE TERMS, CONDITIONS AND PROMISES EXPRESSED IN THIS AGREEMENT AND ITS INTEGRATED DOCUMENTS.**

Date: *June 9, 2009*                    Date: *6/10/2009*

Signed:                                      Signed:

_____              _____
Marc J. Randazza, Esq.                   Jason Gibson, CEO, Excelsior Media