Mitchell J. Langberg, Nevada Bar No. 171912
MLangberg@bhfs.com
Laura Bielinski, Nevada Bar No. 10516
LBielinski@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:    (702) 382-2101
Facsimile:    (702) 382-8135

*Attorneys for Plaintiff*
Liberty Media Holdings, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>FF MAGNAT LIMITED d/b/a ORON.COM; MAXIM BOCHENKO a/k/a ROMAN ROMANOV; AND JOHN JOES 1-500,<br><br>  Defendants. | CASE NO.: 2:12-cv-01057-GMN-NJK<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR ADJUDICATION THAT ATTORNEY'S CHARGING LIEN IS UNENFORCEABLE AND FOR DECLARATORY RELIEF** |

Plaintiff Liberty Media Holdings, LLC ("Liberty"), hereby files its Supplemental Brief (this "Brief") in Support of Plaintiff's Emergency Motion for Adjudication that Attorney's Charging Lien is Unenforceable and for Declaratory Relief (the "Motion", Doc. #140), pursuant to the Court's Minute Order, dated July 2, 2013 (Doc. #148), regarding whether the Court has subject matter jurisdiction to hear the Motion.

Specifically, the Court has subject matter jurisdiction to hear the dispute set forth in the Motion pursuant to the doctrine of ancillary jurisdiction. This Brief is based upon the papers and pleadings on file herein and the memorandum of points and authorities attached hereto.

///

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court has jurisdiction, in every sense of the term, to adjudicate the Motion. The appeal in this case has now been dismissed, eliminating any procedural impediment to this Court's consideration and adjudication of the Motion. Additionally, the Court has personal jurisdiction not only over the parties hereto, but also over non-party Randazza Legal Group ("RLG"), which filed the Complaint giving rise to the instant case on Liberty's behalf. *See Argentena Consolidated Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 533, 216 P.3d 779, 782–83 (2009) (establishing the rule regarding the court's jurisdiction over charging liens). And, finally, because the Court incorporated the terms of the parties' agreement (the "Settlement Agreement") settling the instant case (the "Action"), it retained subject matter jurisdiction, pursuant to the doctrine of ancillary jurisdiction, to hear post-judgment disputes relating to the Settlement Agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (establishing the aforementioned rule). Accordingly, RLG cannot, nor should it be permitted to, hide behind unfounded procedural arguments in an attempt to continue evading its legal and ethical duty to provide its former client with the fruits of the Settlement Agreement.

## II. RELEVANT FACTUAL BACKGROUND

Whereas the facts have been more fully recounted in the Motion, and in the interest of brevity, only a brief factual background is provided herein.

On July 1, 2012, Liberty and Defendant FF Magnat Limited d/b/a Oron.com ("Oron") entered into the Settlement Agreement. (Doc. #33, Ex. A). Thereafter, Liberty made a motion to enforce the same, (Doc. #33), which the Court granted on August 7, 2012 (the "Dismissal Order", Doc. #85). In the Dismissal Order, which quoted from the Settlement Agreement, the Court entered judgment against Oron for $550,000.00. (Doc. #85 at 7–8). Liberty executed this judgment and shortly thereafter, in August of 2012, $550,000.00 (the "Settlement Funds") transferred from Oron's bank account to the RLG trust account. No one disputes (nor could they) that these Settlement Funds were disbursed to the RLG trust account for the benefit of Liberty, rather than for the benefit of RLG.

Nonetheless, some four (4) months later, Ronald D. Green, Esq., of RLG sent Liberty's undersigned counsel a letter purporting to constitute a "Notice of Charging Lien Pursuant to NRS 18.015". (*See* Ex. 1 to the Motion). In the Lien Letter, RLG purported to assert "a charging lien . . . as to $81,433.98 in unpaid . . . attorneys' fees" arising from the Action. *Id.* On June 14, 2013, following resolution of unrelated appellate issues, Liberty's undersigned counsel wrote to RLG's counsel to inform him that, "Liberty and Oron have resolved their lawsuit", and that, consequently, Liberty requested that RLG "transfer the [F]unds to [Liberty's counsel's] client trust account immediately". (*See* Ex. 2 to the Motion). This exchange resulted in additional, unfruitful correspondence with RLG, which, despite the clear instructions of the parties to release the Settlement Funds, and despite the fact that RLG lacks any reasonable basis for refusing to do so, has left resolution of the entire Action hanging in the balance.

## III. ARGUMENT

This Court has subject matter jurisdiction to hear the instant dispute pursuant to the doctrine of ancillary jurisdiction. "[A]ncillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters . . . that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. This form of subject matter jurisdiction arises "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (internal citations omitted).

In the specific context of post-judgment disputes arising from settlement agreements, it is this second head of ancillary jurisdiction which bestows upon the Court the authority to continue hearing the case, and which, for the reasons set forth more fully below, requires the Court to intervene and adjudicate the instant dispute.

///

///

///

      (A)      <u>The Facts Presented Fall Within The Plain Language Of The Supreme Court of the United States' Decision In *Kokkonen*, Which Provides For Ancillary Jurisdiction Over Post-Judgment Settlement Disputes If An Order Of Dismissal Incorporates The Terms Of The Settlement Agreement.</u>

      Although the Supreme Court of the United States (the "Supreme Court") has held that courts do not possess "inherent authority" to enforce settlement agreements pertaining to cases previously before them, courts do possess ancillary jurisdiction to hear disputes arising out of such agreements where either (1) the court expressly reserved such jurisdiction in the order of dismissal, or (2) the court incorporated the terms of the settlement agreement into the order of dismissal. *See Kokkonen*, 511 U.S. at 380–81 (articulating the rule); *Arata v. Nu Skin Int'l., Inc.*, 96 F.3d 1265, 1268–69 (1996) (adopting the *Kokkonen* rule in the Ninth Circuit); *Mallard Auto. Group, Ltd. v. U.S.*, 343 F. Supp. 2d 949, 955 (D. Nev. 2004) (applying the *Kokkonen* rule in the District of Nevada).

      The facts herein presented fall squarely within the second *Kokkonen* scenario; the Court did not merely reference the Settlement Agreement, but incorporated its terms by quoting from it in the first paragraph of the Dismissal Order. (Doc. #85). Indeed, therein, the Court recited the very provision regarding the disbursement of Settlement Funds Liberty now seeks to enforce. *Id.* ("Liberty will immediately, once the terms of the agreement are agreed to[,] issue a letter asking that the HK bank accounts be unfrozen allowing the payment to the Randazza Trust and then to Leaseweb as well as send a letter to Leaseweb asking them to allow Oron ten (10) days to pay as the settlement of the matter is imminent.")). Courts in the Ninth Circuit have found this type of incorporation to be sufficient for purposes of retaining jurisdiction under the *Kokkonen* standard. *See Linebarger v. U.S.*, 927 F. Supp. 1280, 1281 (N.D. Cal. 1996) ("Defendant contends that the terms of the settlement agreement were not incorporated into the order of dismissal, yet paragraph 1 of the order of dismissal plainly sets forth the obligations of the parties under the settlement agreement . . . . . Thus, the terms were incorporated as part of the dismissal order and this court therefore retains jurisdiction to enforce the terms of the settlement agreement.").

      Having shown that the Court incorporated the terms of the Settlement Agreement into the Dismissal Order, "a breach of the [settlement] agreement would be a violation of the order, and

ancillary jurisdiction to enforce the agreement would therefore exist." *Arata*, 96 F.3d at 1269 (quoting *Kokkonen*, 511 U.S. at 381). Here, RLG—which is Liberty's former counsel, and therefore former agent—refused categorically and without legal justification to disburse to Liberty the over half-a-million dollars in RLG's trust account, to which Liberty is unequivocally entitled. This clearly constitutes a breach of the Settlement Agreement and is therefore a violation of the Court's Dismissal Order. *See Bennion v. Pronto Foods, Inc.*, 469 P.2d 208 (Wash. Ct. App. 1970) (holding that, where defendant's agents had not been included in the initial settlement agreement, whereby defendant consented to cease certain activities, the court properly enjoined such agents from performing the same activities, as to hold otherwise would allow the defendant to do, through its agents, that which the court forbid defendant to do).

Accordingly, the Court may easily find that under the *Kokkonen* standard, it retains jurisdiction to adjudicate the instant dispute.

(B) <u>Even Under The Most "Excessively Limited" Interpretation Of Ancillary Jurisdiction Pre-*Kokkonen*, The Court Has Jurisdiction To Hear The Instant Dispute</u>.

Notwithstanding that the present facts fit squarely within the scenario outlined in Section (A), even under the most "excessively limited" interpretation of ancillary jurisdiction pre-*Kokkonen*, the Court has jurisdiction to hear this dispute.

Prior to establishing the two above-described exceptions, the *Kokkonen* Court criticized dicta from its prior opinions, which, in describing the doctrine of ancillary jurisdiction, ranged from what the Supreme Court called "expansive" to "excessively limited". 511 U.S. at 379. On the "expansive" front, which over-extended the doctrine, the Supreme Court had previously described ancillary jurisdiction as arising either (a) to secure a court's judgment or (b) where a party sought equitable relief with regard to a judgment. *Kokkonen*, 511 U.S. at 379 (quoting *Julian v. Central Trust Co.*, 193 U.S. 93, 113–14 (1904) ("A bill filed to continue a former litigation in the same court . . . to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties . . . or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court, . . . is an ancillary suit.")). The facts presented

5

herein fall easily within this interpretation; Liberty comes before the Court seeking to secure the fruits of the prior proceedings, the Settlement Funds, by equitable means or otherwise, the claim to which Funds indisputably arose from the underlying action.

Even more telling, however, this dispute falls squarely within the second characterization of ancillary jurisdiction quoted in *Kokkonen*, which the Supreme Court rejected as "excessively limited": "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat. Bank of Atlanta v. Hozier*, 267 U.S. 276, 280 (1925)). Here, the Settlement Funds, which clearly constitute "property or assets" at the heart of the principal suit, definitively came under the Court's control as evidenced by the Dismissal Order, wherein the Court ruled in Liberty's favor in the amount of $550,000.00. Therefore, even under the most "excessively limited" interpretation of ancillary jurisdiction, this Court may adjudicate the instant dispute.

    (C)    <u>Common Sense Considerations Of Judicial Economy Dictate That The Court Has Jurisdiction To Hear The Instant Dispute</u>.

Finally, even strength of the legal arguments aside, common sense and judicial economy dictate that the Court should exercise jurisdiction over the instant dispute. Already familiar with the tortured history and facts of this case, which is now all but resolved, absent one, final stumbling block, the Court is best positioned from an economy standpoint to order the Settlement Funds disbursed to Liberty. *See Gilmartin v. Abastillas*, 10 Haw. App. 283, 295, 869 P.2d 1346, 1352 (1994) ("We believe that, generally, the interests of judicial economy would be better served if the original trial judge, who is already familiar with the facts of the case, were allowed to resolve any controversies arising out of a settlement agreement negotiated by the parties."). To find otherwise would be to condemn the issue to the state court, wherein the parties will once again have to present the issues and facts resulting in the original settlement agreement, an outcome economical for neither the parties nor the Nevada judicial system.

As further evidence of the logical soundness of Liberty's position, this situation presents facts diametrically opposed to those in cases wherein courts declined to exercise jurisdiction: (1)

here, the facts of the underlying action, rather than some new set of facts which transpired post-judgment, will guide the Court's determination as to whether Liberty, as opposed to its former counsel, is entitled to the settlement proceeds, *contra Kokkonen*, 511 U.S. at 381 (declining to exercise jurisdiction in part because "[t]he facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit . . . ."); (2) adjudication of the dispute over the Settlement Funds will not result in a "second judgment" in the case, but will merely constitute an interpretation of the Dismissal Order's treatment of the Settlement Funds, *contra Walton v. Mueller*, 180 Cal. App. 4th 161, 172, 102 Cal. Rptr. 3d 605, 613 (2009) (holding that final judgment in the case precluded entry of a "second judgment"); and (3) because the Settlement Agreement was incorporated into the Dismissal Order, its enforcement constitutes the enforcement of one of the Court's prior orders, *see Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."), and is, therefore, essential to the conduct of the court's business, *contra Kokkonen*, 511 U.S. at 381 (declining to exercise jurisdiction in part because "automatic jurisdiction over such [settlement] contracts is in no way essential to the conduct of federal-court business.").

Therefore, on the simple and logical grounds of common sense, the Court should retain jurisdiction to hear this dispute.

## IV.  CONCLUSION

For any or all of the reasons set forth above, the Court has subject matter jurisdiction to adjudicate the Motion.

DATED this 23rd day of July, 2013.

Brownstein Hyatt Farber Schreck, LLP

By: /s/ Laura E. Bielinski
Mitchell J. Langberg, Nevada Bar No. 171912
Laura Bielinski, Nevada Bar No. 10516
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:(702) 382-2101
Facsimile: (702) 382-8135

# CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of Brownstein Hyatt Farber Schreck, LLP, and that a true and correct copy of **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR ADJUDICATION THAT ATTORNEY'S CHARGING LIEN IS UNENFORCEABLE AND FOR DECLARATORY RELIEF** was served via electronic service, via CM/ECF, on this 23rd day of July, 2013, and to the address(es) shown below:

John Scott Burris, Esq.
David S. Kahn, Esq.
Sheri M. Thome, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
300 S. Fourth Street
11th Floor
Las Vegas, NV 89101
702-727-1400
702-727-1401 (fax)
j.scott.burris@wilsonelser.com
david.kahn@wilsonelser.com
sheri.thome@wilsonelser.com
*Attorneys FF Magnat Limited*

Anne E. Kearns, Esq.
Kenneth K. Keller, Esq.
Michael D. Lisi, Esq.
Stan G. Roman, Esq.
KRIEG KELLER SLOAN REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
415-249-8330
415-249-8333 (fax)
akearns@kksrr.com
kkeller@kksrr.com
mlisi@kksrr.com
sroman@kksrr.com
*Attorneys for FF Magnat Limited*

Steven A. Caloiaro, Esq.
Michael D. Rounds, Esq.
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV 89511
775-324-4100
scaloiaro@watsonrounds.com
mrounds@watsonrounds.com
*Attorneys for Maxim Bochenko*

Stevan Lieberman, Esq.
GREENBERG & LIEBERMAN, LLC
2141 Wisconsin Ave., NW Suite C2
Washington, DC 20007
stevan@aplegal.com
*Attorney for FF Magnat Limited*

Matthew Shayefar, Esq.
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
matt@bostonlegalgroup.com
*Attorney for FF Magnat Limited*

///

///

///

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, on this 23rd day of July, 2013, and to the address(es) shown below:

Marc J. Randazza, Esq.
RANDAZZA LEGAL GROUP
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118

                                /s/ Erin Parcells
                                Employee of Brownstein Hyatt Farber Schreck, LLP

016194\0001\10596618.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada
(702) 382-2101