Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
ecf@randazza.com

Attorneys for Third Party Objectors,
Randazza Legal Group and Marc J. Randazza

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Liberty Media Holdings, LLC, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FF Magnat Limited d/b/a Oron.com; Maxim Bochenko a/k/a Roman Romanov; and John Does 1-500,<br><br>Defendants. | Case No.: 2:12-cv-01057<br><br>**THIRD PARTY OBJECTORS MARC RANDAZZA AND RANDAZZA LEGAL GROUP'S REPLY TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION** |

Third parties Randazza Legal Group ("RLG") and Marc J. Randazza ("Mr. Randazza") file this reply brief to Plaintiff Liberty Media Holdings, LLC's ("Liberty[']s") Supplemental Brief (ECF 151) to correct numerous factual misrepresentations and inaccuracies within Liberty's brief. The objectors request that these corrective facts be taken into account in advance of the Court's July 26, 2013 hearing on Liberty's pending emergency motion (ECF 140/141).

I. **Introduction**

If this latest skirmish between the objectors and Liberty within this case seems bizarre, that is because it is, indeed, bizarre. The real issue underlying Liberty and the objectors' latest briefing (ECF 140/141, 146, 151) is that Liberty's CEO and Mr. Randazza are engaged in a separate dispute, and Mr. Randazza brought a claim in arbitration against Liberty and its alter-ego, Excelsior Media Corporation ("Excelsior"). As a result, Liberty's CEO, Jason Gibson, is using this litigation to lash out personally at Mr. Randazza, and is including his firm (RLG) for leverage. With this in mind, Liberty's positions should come into better focus: They are improper.

As directed by the Court (ECF 148), Liberty has filed a supplemental brief regarding the Court's jurisdiction to adjudicate its pending emergency motion. However, Liberty's briefing is premised on a number of factual misrepresentations and material omissions revealed by a careful examination of the record. Despite some of these issues being raised in Mr. Randazza and RLG's prior objection (ECF 146), Liberty has refused to acknowledge them. With its brief, Liberty does not correct its course, but doubles down on its misrepresentations and omissions. As a result, Liberty has submitted a brief to the Court that fails to disclose – and analyze – the following pertinent facts:

- RLG has repeatedly disavowed Liberty's claim that it is withholding funds pursuant to a charging lien[1];

- Mr. Randazza and RLG have legitimate claims to part of the funds as non-discretionary bonuses, reimbursements, and payments conditioned on the litigation's success;

- RLG is presently engaged in state court litigation, and Mr. Randazza is engaged in employment arbitration with Liberty and its alter-ego Excelsior[2];

---

[1] ECF 146 at 10:15-13:13 (detailing basis for holding more than $276,500 in disputed funds, as "[the funds] are in genuine dispute, not based on the lien"); *see* ECF 140 Exh. 5 at 2 (identifying Mr. Randazza's arbitration as the basis for withholding disputed funds, and saying nothing as to a charging lien as a basis for holding disputed funds).

[2] This arbitration is not limited to Liberty and its alter-ego Excelsior's refusal to pay the funds owed to Randazza, but these are the claims relevant to this brief.

- Mr. Randazza specifically assured to Liberty and Oron that he would disburse all undisputed funds following his conferences with ethics counsel; and

- Mr. Randazza honored those assurances and did disburse undisputed funds. RLG's disbursement of all $273,116.65 in undisputed funds <u>one full week</u> before Liberty filed its supplemental briefing.

These facts are directly relevant. Yet they are nowhere to be found in Liberty's briefing, which is rendered misleading by their deliberate omission.[3] As set forth below, the actual facts in this case, which have developed since RLG and Mr. Randazza first objected to Liberty's emergency motion in late June, materially alter the Court's analysis of this issue. Rather than a simple dispute between a client and an attorney over fees incurred in the course of litigation, the "dispute" Liberty has asked this Court to rule upon are actually two separate actions – an arbitration and state court litigation simultaneously prosecuted before two different forums at Liberty's insistence – that are actively pending.

Rather than resolve a *bona fide* conflict that has risen anew between the objectors and Liberty, Liberty's motion is brought in an underhanded attempt to seek an order (or orders) that will have preclusive effect on these other pending proceedings. As these disputes are actions based in state law and distinct from this litigation, the Court need not and should not exercise its discretionary supplemental jurisdiction over them. Given the maturity of these disputes, doing so would weigh against the exercise of judicial economy. Most problematic, though, is the manner in which Liberty sought to obtain this result without informing the Court of all the relevant facts.

Mr. Randazza has no concerns about litigating fully in this Court – when it is the proper venue. Here, with respect, it is not. While Liberty fails to address the issue in its Supplemental Brief, litigating these issues here would require Liberty to waive its right to have these issues resolved in presently pending confidential arbitration, and would require a full investigation of facts and briefing in this Court, including material facts which Mr. Randazza has not disclosed because of the confidential nature of the arbitration. However, as is set forth below, this Court should not exercise jurisdiction over this dispute, which is at issue in two other venues.

---

[3] Perhaps these facts were not deliberately omitted, but no other explanation makes sense without further factual development.

## II.  Summary of Relevant Facts

Since mid-June, Liberty and Oron have provided RLG and Mr. Randazza with escalating and contradictory demands.  Many of these correspondences are on record with this Court as exhibits to Liberty's Motion (ECF 140/141) and RLG and Mr. Randazza's objection (ECF 146).  However, since RLG and Mr. Randazza's objection, there have been new and important developments in this dispute, which Liberty deceptively failed to disclose to the Court.  In the interest of marshaling this data into an efficient format, the following chart summarizes the relevant dates and events immediately relevant in this dispute.

| Date | Activity |
|---|---|
| June 14, 2013 | • Liberty sends RLG a letter demanding release of $550,000 in settlement funds to its counsel's trust account.  Liberty's letter states that Oron's counsel will confirm that RLG and Mr. Randazza will not be liable for such a transfer of funds. (ECF 140 Exh. 2) |
| June 15, 2013 | • Oron sends RLG a letter demanding release of $550,000 in settlement funds to Liberty's counsel's trust account.  Oron provides no assurances as to RLG and Mr. Randazza not being liable for the transfer.  Oron's letter also provides an order from the U.S. District Court for the Northern District of California, unfreezing assets only to be transferred to Oron's counsel, Boston Law Group. (ECF 146-2) |
| June 17, 2013 | • RLG and Mr. Randazza respond to Liberty and Oron's conflicting demands through counsel. (ECF 140 Exh. 4) |
| June 24, 2013 | • RLG sends correspondence to counsel for Liberty and Oron, requesting that they resolve the conflicting instructions in their letters, and the conflict between their orders and the Northern District of California's order. (ECF 140 Exh. 5) |
| June 26, 2013 | • Without any interim communication with RLG or clarification of its requests, Liberty files its emergency motion. (ECF 140/141) |
| June 27, 2013 | • Oron files its response to Liberty's motion, stating **for the first time** that Mr. Randazza will not be liable for any transfer of the $550,000 in settlement funds. (ECF 142/143)  RLG previously requested such assurances from Oron on June 24, 2013. (*see* ECF 140 Exh. 5) |

| | | |
|---|---|---|
| | July 1, 2013 | • RLG and Mr. Randazza file their objections to Liberty's emergency motion. (ECF 146) |
| | July 2, 2013 | • The Court enters a minute order on Liberty's motion and sets a hearing for July 26, 2013. (ECF 148) |
| | July 8, 2013 | • Having not heard from Liberty or Oron following the Court's minute order setting a hearing on Liberty's motion, RLG sent a letter to counsel for Liberty and copied Oron's counsel on the correspondence.  RLG's letter repeats its request for Liberty and Oron to coordinate their requests to be consistent with one another and the Northern District of California's Order, and to clarify that RLG and Mr. Randazza will not be liable for any transfer of the funds. (Exhibit A) |
| | July 10, 2013 | • Oron's counsel sends RLG a letter seeking the release of all non-disputed funds to Liberty, assuring RLG and Mr. Randazza that they will not be liable for this release of the funds. (Exhibit B) |
| | July 10, 2013 | • Liberty's counsel sends RLG a letter demanding the immediate release of the full $550,000, including funds RLG and Mr. Randazza previously identified as disputed (*see* ECF 146 at 5, 93-10:14). (Exhibit C) |
| | July 10, 2013 | • In light of Oron's litigation threats, RLG responds to Oron and Liberty, again requesting that the parties better coordinate their contradictory demands, and identifying the amounts in dispute and basis for the dispute.  RLG's letter clarifies that Mr. Randazza is conferring with ethics counsel and will release the funds following his conference with ethics counsel (Exhibit D). |
| | July 11, 2013 | • RLG and counsel for Oron exchange further e-mails regarding Randazza's forthcoming transfer of undisputed funds from RLG's trust account to Liberty (Exhibit E). |
| | July 15, 2013 | • Oron answers RLG's final ethical question – who owns the settlement funds held in trust – and Mr. Randazza confirms to Oron and Liberty that he has commenced a wire of the undisputed funds to Liberty. (A truncated, redacted version of this e-mail exchange is attached as Exhibit F) |
| | July 15, 2013 | • RLG sends Oron and Liberty additional information confirming that a wire of $273,116.65 in undisputed funds to Liberty has been initiated. (A truncated, redacted version of this e-mail exchange is attached as Exhibit G) |
| | July 16, 2013 | • RLG sends Oron and Liberty confirmation that the $273,116.65 in undisputed funds had been wired to Liberty. (A truncated, redacted version of this e-mail exchange is attached as Exhibit H) |

| | |
|---|---|
| July 26, 2013 | • Liberty files its supplemental briefing (ECF 151), omitting or misrepresenting these facts. |

These facts are highly relevant to the Court, but nowhere to be found in Liberty's supplemental brief. The only funds remaining in RLG's trust account are genuinely disputed in extent proceedings before Judicial Arbitration and Mediation Services (JAMS) and in Nevada state court. Despite repeated requests from RLG, Liberty has consistently refused to coordinate its actions with Oron and to substantively engage RLG in good faith (ECF 140 Exhs. 2, 5; Exhibits A, C, D).[4] The full facts relevant to the instant dispute are radically different from what Liberty has presented to the Court in both its motion and supplemental brief (ECFs 140/141, 151).

### III.   Argument

Liberty's supplemental brief fails to inform the Court of numerous important facts that may affect its ultimate decision on this issue. Accordingly, these facts are established and discussed in this brief. Because Liberty's legal analysis begins from a flawed premise that is unsupported by the actual facts before the Court (let alone the facts that Liberty seeks to conceal from the Court), it is frankly untrustworthy. All that is clear from Liberty's submissions to this Court is that Liberty is engaged in a contentious dispute with RLG that is based on claims that are unrelated to the copyright litigation underlying this case.[5] As such, the Court should decline to exercise jurisdiction over Liberty's claims for relief.

//
//
//
//

---

[4] This analysis provides Liberty and Oron the benefit of the doubt with its actions. It is entirely likely that Liberty and Oron have, indeed, coordinated their efforts in order to collusively place Mr. Randazza and RLG in this position. Oron regards Mr. Randazza as personally responsible for destroying its international piracy operation (*see* ECF 39 at 6:12-22, ECF 44 at 2-3), while Liberty, Excelsior, and their CEO are now locked in a contentious dispute with Mr. Randazza.

[5] The real issue here is that Liberty's CEO has become obsessed with lashing out at Mr. Randazza in any possible forum. This has manifested itself in Liberty's oft puzzling attempt to manufacture a malpractice or ethical claim against him (see ECF 146 at 11:17-13:13,146-4).

### A. Liberty Has Failed to Disclose and Misstated Numerous Material Facts.

Since RLG and Mr. Randazza filed their objection to Liberty's emergency motion (ECF 146), much has transpired that Liberty's supplemental brief ignores. Most notably, the undisputed portion of the funds previously held by RLG were wired to Liberty. However, this important fact was not disclosed in Liberty's supplemental brief, despite its author having knowledge that the funds were disbursed for seven full days before Liberty filed its brief (ECF 151). Similarly, Mr. Randazza and RLG have further clarified their claims to the disputed funds held in trust. Liberty, however, continues to ignore Mr. Randazza and RLG's actual positions (rather than the one Liberty desires to project upon them) and analyze them for the Court in good faith.

#### i. Liberty Failed to Disclose That RLG Disbursed $273,116.65 to Liberty One Week Before Liberty Filed Its Supplemental Brief.

Liberty's supplemental briefing attempts to present RLG as improperly withholding $550,000 of Liberty's funds. This is false. It was knowingly false at the time it was written, and there is no more polite way to state this issue. On July 15, 2013, Mr. Randazza confirmed that he initiated a transfer of $273,116.65 to Liberty after having vetted the ethical issues surrounding the undisputed funds. (Exhibit F) Liberty's counsel, and the signatory of Liberty's supplemental brief, was a recipient of this e-mail. Shortly thereafter, also on the night of July 15, Mr. Randazza sent another e-mail with wire transfer details. (Exhibit G) Once again, Ms. Bielinski was a recipient of this e-mail. On the morning of July 16, Randazza sent yet another e-mail confirming that the $273,116.65 had been wired to Liberty, and attached a wire confirmation form, and once again, Ms. Bielinski received that message. (Exhibit H)

Despite being notified in **triplicate** that RLG had released $273,116.65 in undisputed funds to Liberty, Liberty's counsel has knowingly based its supplemental brief upon a falsehood. Liberty claims that RLG has withheld the settlement funds – defined as $550,000 arising from the Oron litigation – without any reasonable basis for doing so. (ECF 151 at 3:1-11) Liberty further claims that:

> RLG—which is Liberty's former counsel, and therefore former agent—refused categorically and without legal justification to disburse to Liberty the over half-a-million dollars in RLG's trust account, to which Liberty is unequivocally entitled.

(ECF 151 5:2-5) There is no diplomatic way to address Liberty's assertion: This statement is a deliberate lie to the Court. It was false **a full week** before it was made to the Court (*see* Exhibits F-H). Moreover, this statement was made by the <u>same person</u> who received <u>all correspondence</u> detailing RLG and Mr. Randazza's claims to the funds arising from its disputes with Liberty and its alter-ego company, and RLG's release of $273,116.65 in undisputed funds to Liberty (ECF 140 Exh. 5; Exhibits A, D). **Liberty's attorney knew that nearly half of the settlement funds – and all the funds not subject to an immediate and pending dispute – had been transferred to Liberty** a week before misrepresenting to the Court that RLG refused to transfer any of the $550,000. (ECF 151 at 5:2-5) **The signatory of Liberty's supplemental brief knew that RLG and Mr. Randazza have constantly reiterated their claims to the funds in dispute.** Yet, Liberty's submission discloses none of those facts. Having ample knowledge of RLG's positions, Liberty's failure to accurately state them to the Court cannot be presumed to be an innocent mistake. The Court should view every factual assertion and legal argument Liberty makes with, at best, skepticism in light of this deliberate and misleading omission.

### ii. RLG Has Repeatedly Informed Liberty That There Is No Charging Lien At Issue.

Liberty once again claims that the basis for RLG's holding of the Oron settlement funds is based on a charging lien. (ECF 151 at 3:1-11; see ECF 140 at 3:16-4:2) This is not the case. Moreover, Liberty <u>knows</u> it is not the case, yet chooses to misrepresent it to the Court. On July 10, Ronald D. Green sent a letter to counsel for Liberty and Oron detailing the calculation of disputed and undisputed funds, and the rationale for which the disputed funds were disputed (Exhibit D). Mr. Green wrote this letter in response to correspondence from counsel for Oron and Liberty, dated that same day, which once again provided contradictory instructions for distribution of the Oron settlement funds (Exhibits B, C; *see* Exhibit D).

As explained in Mr. Green's letter, the rationale for maintaining more than $276,500 in disputed funds in RLG's trust account is as follows:

• $137,500 as a 25% (of gross) non-discretionary wage payment from the Settlement Funds;

- $25,000 as reimbursement for advanced costs in the Hong Kong legal action, to be paid from the Settlement Funds;

- $32,949 as a 25% (of gross) non-discretionary wage payment from the attorneys' fee award entered by the U.S. District Court from the District of Nevada, to be paid from any funds recovered in the action; and

- $81,433.98 in attorneys fees from Randazza Legal Group, which Liberty is obliged to pay at the litigation's successful conclusion (and which are subject to ongoing litigation in state court).

(Exhibit D at 2). Mr. Green's letter makes no mention of a charging lien. In fact, the only party to claim a charging lien was being used to maintain the disputed funds in trust is Liberty (*see* ECF 140/141, 151). Much like its failure to disclose the $273,116.65 that had been released to Liberty, Liberty knew that RLG had not asserted a charging lien as to the funds maintained in its trust account (*see* Exhibit D at 1, addressed to Laura Bielinski; ECF 146 at 8:7-19 ("RLG is not asserting a charging lien on these funds"), 10:16-23 (stating that the maintained funds are held because they "are in genuine dispute," and "not based on the lien")).

Instead, RLG bases its maintenance of these funds in trust on the firm's, Mr. Randazza's, and Liberty's claims to the funds arising from the Oron litigation (Exhibit D at 2). When these funds are in dispute, *any* distribution of them would be unethical. *See Name Intelligence, Inc. v. McKinnon*, Case No. 2:10-cv-1202-RCJ-GWF *2012 WL 2780062* at *4 (D. Nev. July 9, 2012) (holding that the alleged distribution of funds claimed by multiple parties may constitute an ethical violation if proven). Where funds are in dispute, as they are here (Exhibit D at 2), it is proper for an attorney to hold the funds in trust, and such maintenance of funds is not a basis for civil liability. *Lopez v. Corral*, ___ Nev. ___ , Case No. 51541 *2010 WL 5541115* at *17-18 (Nev. Dec. 20, 2010) (holding that an attorney holding disputed funds in trust has not, as a matter of law, converted those funds). The stark contrast between Liberty's position that the funds unequivocally belong to it (despite its disputes with Mr. Randazza and RLG arising from the settlement funds), and RLG and Mr. Randazza's repeated, documented claims to the funds held in trust (ECF 140 Exh. 5 at 2; Exhibits A, D), demonstrates that these are funds genuinely in dispute. Therefore, they are to be held in trust until the bodies currently hearing those disputes adjudicate the funds' ownership.

Simply because Liberty claims that RLG has asserted a charging lien does not make it so. This is especially the case where RLG has specifically disavowed a charging lien, and has communicated to Liberty the exact bases for holding the disputed funds (Exhibit D at 2). *See Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) (relaying the story of Abraham Lincoln pointing out that simply calling a calf's tail a "leg" does not make it a leg; "merely calling someone a copyright owner does not make it so"). There is no charging lien at issue before this Court.

### B. As Liberty's Fee Dispute Arises From State Law Claims In Active Litigation and Arbitration, There Is No Need For the Court to Exercise Supplemental Jurisdiction Over Them.

Mr. Randazza has no concerns about litigating before this Court when it is the proper venue. However, it is not. The correct venues for this dispute are the pending JAMS arbitration proceeding (the rules of confidentiality of which prevent Mr. Randazza from fully explaining his position and Liberty's conduct) and the state court proceeding. Liberty has not set forth a valid basis for this Court to exercise jurisdiction over RLG and Mr. Randazza. Indeed, Liberty's only support for the notion that Liberty's former agents may be bound by Liberty's agreement is an old, fact-specific case with no bearing on the facts at hand. The disputes between Liberty and RLG, and Liberty and Mr. Randazza, are all based on claims that have no relation to the copyright infringement action that originally vested this Court with subject matter jurisdiction in this case. Just because the funds at issue were derived in this case does not confer subject matter jurisdiction over the subsequent disputes over those funds. This Court's jurisdiction ended when it enforced the settlement between Liberty and Oron and carried it into effect (ECF 85). Based on the disputes between Liberty and RLG and Mr. Randazza, the forums where these entities are currently prosecuting heir disputes are the appropriate venues for disputes over the fees due to RLG and Mr. Randazza in the Oron litigation – not this Court.

#### i. Liberty's Theory of This Court's Jurisdiction over RLG and Mr. Randazza is Deeply Flawed.

Liberty's reading of *Kokkonen v. Guarain Life Insurance Company of America* is tenuous as it applies to RLG and Mr. Randazza. 511 U.S. 375, 380-381 (1994). Liberty argues that because

RLG was previously Liberty's agent, its performance of the settlement agreement – to which RLG is not a signatory – can be compelled by the Court and supersede it and Mr. Randazza's duties for the safe-keeping of client funds under Nevada Rule of Professional Conduct 1.15(e). See *McKinnon*, 2012 WL 2780062 at *4 (affirming attorney's duty to safely maintain disputed funds). While the parties' original settlement agreement placed a requirement to properly hold the funds onto Mr. Randazza, the agreement's material terms were between Liberty and Oron (ECF 44-2). While Mr. Randazza signed the agreement for Liberty, this memorializes only that Mr. Randazza was authorized to sign that agreement on Liberty's behalf – not that RLG, which Liberty has since terminated and sued, is required to turn over disputed funds held in its trust account. While Liberty may very much like this to be the case, as requiring RLG to disburse funds from which it and Mr. Randazza's disputes with Liberty arising from the Oron litigation will deprive them of any security in recovering funds to which they are entited, it leads to the bizarre result where a client can assert the benefits of an agency relationship even after terminating it.

Tellingly, the one case Liberty relies upon for this new theory of agency is a 1970 decision from the Washington Court of Appeals, *Bennion v. Pronto Foods Incorporated*, 469 P.2d 208, 2 Wn. App. 621 (Wash. Ct. App. 1970). The facts of *Bennion* are inapposite here. In that case, Pronto Foods sought relief from an injunction that had been entered against it based on the enforcement of a prior settlement agreement between the plaintiff/appellee and Pronto Foods' co-defendants, the Hattori Brothers, who contracted their operations to Pronto Foods. 2 Wn. App. at 623-24. The Washington Court of Appeals held that the trial court's order prohibited third parties from engaging in conduct prohibited under the plaintiff and Hattori brothers' settlement agreement. *Id*. at 626. The appeals court found this outcome arose because the trial court's order was made with the "obvious intent" to "forbid the defendant [Hattori brothers] from entering into any agreement with a third party," such as Pronto Foods to violate the injunction.[6] *Id*.

The dissimilarities between *Bennion* and this case are substantial. RLG and Mr. Randazza's relationships with Liberty have been severed for nearly one year, and the time in-

---

[6] This alone is indicative that the *Bennion* decision is highly specific to the facts of that case, and not properly applicable as a broad proclamation of agency law as Liberty presents it.

between characterized by contentious disputes. Liberty's CEO has sent frivolous and malicious bar complaints to every state in which Mr. Randazza is barred.[7] RLG and Mr. Randazza cannot now be credibly said to be Liberty's agents. Additionally, the *Bennion* court held a contractor to be bound by a broad injunction entered against a party with which it contracted. 2 Wn. App. at 626. Here, Liberty is asking for the Court to divest RLG of funds properly held in trust based on a long-terminated agency relationship.

Based on a once-existing agency relationship, Liberty now claims that RLG and Mr. Randazza are parties to the settlement agreement it seeks the Court to enforce. Setting aside the analysis of whether the Court's order enforcing the settlement agreement vested it with jurisdiction to continue hearing these proceedings, Liberty's theory stretches agency law past its breaking point to force RLG into a contract its former client signed with Oron. RLG itself is neither a signatory nor a party to Liberty's second settlement agreement. Further, not all details of the new settlement agreement are known to Mr. Randazza or RLG – Liberty and Oron have refused to disclose them, and instead have made contradictory demands to the funds (*see* ECF 140 Exhs. 2, 3; ECF 146-2; Exhibits A, B, C, and D at 1). However, the facts about it that Mr. Randazza has learned make it clear that it is constructed to attempt to serve Mr. Gibson's goal of depriving Mr. Randazza and his firm of their financial entitlements. Accordingly, and at the very least, if Liberty and Oron claim that their <u>new</u> settlement agreement is at issue, then they should produce it, and permit Mr. Randazza and RLG with the opportunity to conduct discovery as to whether it is a fraudulent, collusive, or otherwise invalid agreement.

In this action alone, Liberty is now two sets of counsel removed from its relationship with RLG. Liberty's reliance on obscure, inapplicable case law to argue RLG is bound by Liberty's new settlement agreement of other matters reveals that it does not have a sound legal position. Relying on such an argument lays bare Liberty's intent to use this court to short-cut the arbitration and litigation pending with Mr. Randazza and RLG in alternate forums.

---

[7] The States of Arizona and Florida have already dismissed these complaints with responses forthcoming from the other bars.

### ii. The Facts Underlying Liberty's Disputes with RLG and Mr. Randazza Weigh Against This Court's Exercise of Jurisdiction.

A district court's exercise of supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367. Under § 1367(a), a district court with original jurisdiction over an action may exercise supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same cause of controversy." However, a district court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if:

1. The claim raises a novel or complex issue of state law,
2. The claim substantially predominates over the claims or claims over which the district court has original jurisdiction,
3. The district court has dismissed all claims over which it has original jurisdiction, or
4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, although the disputed funds were obtained during RLG's representation of Liberty in this case, that is where their relationship with this case ends.

Liberty and its alter-ego, Excelsior, are engaged in arbitration and state court litigation with Mr. Randazza and RLG. These disputes were both initiated in 2012 and are well into their maturity. The claims in both are based on matters of state law, and concern matters of contractual and economic relationships between RLG and Liberty, and matters of state employment law with respect to Mr. Randazza.

In contrast, this action was commenced as a copyright infringement suit by Liberty against Oron and Mr. Bochenko. The entire basis for this action and this Court's original jurisdiction arises from the Copyright Act, 17 U.S.C. § 101 *et seq*. Liberty's copyright claims against Oron have nothing to do with the state law claims RLG and Mr. Randazza have asserted against Liberty and Excelsior (and vice-versa).

But for Liberty's efforts to divest RLG of contested funds, this case is – and has been – concluded. As of August 2012, this Court had dismissed defendants Bochenko and Oron with prejudice and entered judgment in Liberty's favor. (ECF 85 at 8) Oron frivolously appealed, and this appeal has been dismissed. On July 3, this Court entered its order on the United States Court of

Appeal's mandate dismissing Oron's appeal (ECF 150). Excepting Liberty's recent motion practice, there is no case pending before this Court.

No judicial economy would be preserved or obtained by turning this Court into the third forum for RLG, Mr. Randazza, Liberty, and Excelsior to resolve their claims currently being heard in two other forums. However, this appears to be Liberty's plan. While this Court does not have the benefit of full discovery in these disputes as the state court and arbitration forum do, Liberty apparently hopes that presenting a small, cherry-picked, and dishonest slice of the relevant facts (*see* Section A, *supra*) will lead this Court to issue orders prejudicial to Mr. Randazza and RLG in their other pending actions. This is not only antithetical to the notions of conserving limited judicial resources, but it is gamesmanship of the worst kind. Attempting to use incomplete information before to obtain orders that would be prejudicial in proceedings where discovery is both appropriate (and still developing) is contrary to the civil dispute process and harmful to its fair administration. Based on Liberty's conduct and representations to the Court, RLG and Mr. Randazza can only conclude that such an outcome is Liberty's intent.

### iii. Precedent Supports the Court Declining Jurisdiction Over Liberty's Disputes With RLG and Mr. Randazza.

Other district courts have properly declined to exercise supplemental jurisdiction over similar disputes. In *Taylor v. Kelsey*, the United States Court of Appeals for the Fourth Circuit affirmed a district court's decision to not exercise jurisdiction over a fee dispute that "bore no relationship" to the underlying litigation's subject matter and "had no effect upon the litigants or the outcome of the case." 666 F.2d 53, 54 (4th Cir. 1981). That Court of Appeals further affirmed of the district court's conclusion that it lacked jurisdiction over the dispute where it did not have control over the funds in controversy, and that neither judicial economy nor fairness militated in favor of federal jurisdiction. *Id*. at 54. Ultimately, the *Taylor* court found that, like here, the dispute the district court declined to exercise jurisdiction over "arose purely from a private contract

dispute" between two residents of the same state.[8] *Id.*, *citing Fairfax Countywide Citizens Assn. v. County of Fairfax*, 571 F.2d 1299 (4th Cir 1978) (holding that the federal courts' power to consider ancillary disputes presupposes valid underlying jurisdiction); *Bounougias v. Peters*, 369 F.2d 247 (7th Cir. 1966) (holding that litigation over attorneys' fees was not a controversy dependent upon or ancillary to the litigation which generated the fees, and that the district court had no jurisdiction over that secondary dispute).

Indeed, disputes over attorneys' fees are not, at their heart, federal causes of action. A dispute over attorneys' fees is "essentially a state law claim over which the Court has no independent subject matter jurisdiction." *Central Marine Svcs., Inc. v. M/V Magic*, Case No. 87-3547, *1994 WL 180206* (E.D. La. May 3, 1994). A party to the litigation cannot use a dispute over attorneys' fees "to re-open" the litigation and "have a federal court adjudicate [a] state law claim." *Id*. As in this case, the state law basis for disputes over attorneys' fees is underscored when there is concurrent state court litigation over the fees. Seeking a federal district court to adjudicate an issue currently before a state court, based on state law, merely "duplicate[s] the efforts" of the state court. *Sports Box, Inc. v. Meyerson*, Case No. 95 cv 82, *1995 WL 767879* (S.D.N.Y. Dec. 29, 1995). In *Sports Box*, the Southern District of New York declined to exercise federal jurisdiction over an attorneys' fee dispute because of a concurrent pending action in New York's state courts "in which the amount due him from plaintiff can be ascertained." *Id*. These facts closely resemble the scenario before this Court among RLG, Mr. Randazza, Liberty, and Excelsior.

It is undisputed that Liberty and RLG are in litigation over fees arising from the Oron litigation, which were to be paid upon the settlement reached on or about July 5, 2012 (ECF 85 at 7:1-7). Liberty's emergency motion even conceded that Mr. Randazza's dispute with Excelsior, while squarely arising from the Oron funds (Exhibit D at 2), is "a separate, unrelated dispute." (ECF 140 at 5:22). When analyzed with the guidance of *Sports Box* and *Central Marine*, RLG's pending litigation with Liberty is also recognizable as an entirely separate dispute that, while arising from funds obtained in the Oron litigation, bears no other relation to that action. Consistent

---

[8] In the disputes ancillary to this action, Mr. Randazza's claims arise from employment law as well as contract law, but all are governed by state law.

with the actions of other district courts faced with concurrent state court litigation over state law claims, the factors of 28 U.S.C. § 1367(c) weigh in favor of this Court declining to exercise supplemental jurisdiction over Liberty's fee dispute with RLG and Mr. Randazza.

## IV. Conclusion

The Court should not rely on Liberty's evasive and dishonest representations when making its ultimate decision as to jurisdiction in this matter. As explained in this brief and evinced in the attached exhibits, numerous material facts have not been disclosed to this Court, or have been misrepresented so as to not reflect the truth of the matters asserted. The third party objectors submit this brief in order to rectify these errors.

Because the actual facts underlying Liberty's claim of jurisdiction are different from what Liberty represents to the Court, the legal conclusions too must differ. Liberty's legal analysis is inapt, and relies on a tortured theory of agency law that holds RLG beholden to Liberty long after their relationship ends. Liberty's theory also attempts to use this Court's power to supersede RLG and Mr. Randazza's ethical duties and rights. However, a review of the law as it applies to the facts actually before the Court – rather than how Liberty has represented them – reveals a starkly different conclusion. The disputes between Liberty and Excelsior on one hand and Liberty and Mr. Randazza on the other are fundamentally based on state law claims, bear no relation to the long-dismissed copyright claims underlying this litigation, and are not a sufficient basis to invoke the jurisdiction of this Court. Accordingly, Liberty's motion (ECF 140/141) should be denied. This Court should decline to exercise jurisdiction over Liberty's emergency motion (*id.*) and decline any of its further attempts to turn this Court into its third front in its conflicts with RLG and Mr. Randazza.

//
//
//
//
//
//

Dated: July 23, 2013

Respectfully Submitted,

*s/Marc J. Randazza*

Marc J. Randazza, NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
rlgall@randazza.com

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served on all parties using this Court's CM/ECF system on July 23, 2013.

Dated: July 23, 2013

Respectfully Submitted,

 *s/Marc J. Randazza*

Marc J. Randazza, Esq., NV Bar # 12265
Ronald D. Green, NV Bar # 7360
J. Malcolm DeVoy, NV Bar #11950
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
ecf@randazza.com