UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION

| | | |
|---|---|---|
| LIBERTY MEDIA HOLDINGS, LLC., | ) | CASE NO: 2:12-CV-01057-GMN-NJK |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Las Vegas, Nevada |
| | ) | |
| FF MAGNAT LIMITED, ET AL. | ) | Friday, July 26, 2013 |
| | ) | (9:09 a.m. to 9:48 a.m.) |
| Defendants. | ) | |

MOTION HEARING

BEFORE THE HONORABLE GLORIA M. NAVARRO,
UNITED STATES DISTRICT JUDGE

Appearances:              See Next Page

Court Recorder:           Araceli Bareng

Courtroom Administrator: Michael Zadina

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


Plaintiff:                  LAURA BIELINSKI, ESQ.
                            Brownstein Hyatt Farber Schreck
                            100 City Parkway
                            Las Vegas, NV 89106

Defendants:                 JOHN COTTON, ESQ.

                            - And -

                            RONALD D. GREEN, JR., ESQ.
                            MARC J. RANDAZZA, ESQ.,
                            Randazza Legal Group
                            6525 W. Warm Springs Road
                            Suite 100
                            Las Vegas, NV 89118

                            JAMES M. DE VOY, ESQ.
                            Randazza Legal Group
                            3969 Fourth Avenue
                            San Diego, CA 92103

1          **Las Vegas, Nevada; Friday, July 26, 2013; 9:09 a.m.**

2                              **Call to Order**

3          **THE CLERK:**  All rise.

4          **THE COURT:**  Thank you, you may be seated.

5          **THE CLERK:**  Now calling *Liberty Media Holdings LLC*

6  *versus FF Magnat Limited,* Case Number 2:12-CV-01057-GMN-NJK

7  regarding a Motion Hearing.

8          Counsel, please note your appearances for the record.

9          **MS. BIELINSKI:**  Good morning, your Honor.  Laura

10  Bielinski and Mitchell Lambert for Liberty Media Holdings.

11          **THE COURT:**  All right.  Good morning.

12          **MR. COTTON:**  Good morning, Judge.

13          **THE COURT:**  Good morning.

14          **MR. COTTON:**  John Cotton on behalf of Marc Randazza

15  and the Randazza Legal Group, specially appearing nonparties.

16          **THE COURT:**  Good morning.  And anyone else want to

17  make their appearance on the record?

18          **MR. RANDAZZA:**  Marc Randazza, the party in interest

19  here.

20          **THE COURT:**  All right.

21          **MR. DE VOY:**  James Malcolm DeVoy for the Randazza

22  Legal Group.

23          **MR. GREEN:**  And Ronald Green for the Randazza Legal

24  Group.

25          **THE COURT:**  All right.  Well, good morning,

4

1    everybody.  I did have an opportunity to review the late filing

2    from yesterday afternoon at 3:30 and I do have some questions,

3    but I thought I would maybe just open it up by saying I'm not

4    sure that the statute even applies that seems to be part of the

5    controversy here so I might need to have a little bit of a

6    factual background review, maybe, a little 101?

7          My understanding, and to begin with something, was

8    that the settlement was negotiated by the Randazza law group

9    and, therefore, the Defendants paid the Randazza law group the

10   settlement amount which was deposited in the Trust account, and

11   that is still where it sits except for some monies that have

12   now already been paid so it seems to me like it's not the

13   situation that's really covered in this kind of attorneys lien

14   statute, but rather there is more of a retainer lien on the

15   funds.

16         Now I know there was a lien that was filed and there

17   was a question of whether it's timely and whether it's been

18   perfected and so on, but I'm not -- I'm just not really sure

19   that that applies so maybe -- I know that there's another case

20   with a JAMS arbitrator somewhere else and so maybe that's

21   what's confusing me, so if someone wants to maybe just jump in

22   and clarify that it might make things easier.

23         **MS. BIELINSKI:**  Sure, your Honor.  I think at this

24   point the parties, I believe, both agree that the charging lien

25   statute is inapplicable here.

1          **THE COURT:**  Okay.

2          **MS. BIELINSKI:**  Originally there was a charging lien

3    letter that was sent, and in our original papers we focused on

4    that because we believed that that was the basis for the

5    retention of the funds.  But at this point -- I wasn't prepared

6    to argue that because it was my understanding that that wasn't

7    applicable at this point.

8          **THE COURT:**  Okay, good.  All right.  Well, then I'm

9    glad to hear that we're all on the same page so that makes me

10   more optimistic that we can resolve this today.

11         All right.  Well, who wants to go first then?  I know

12   we've got a couple of different Motions, but they really

13   essentially are all part and parcel of the same thing so do you

14   just want to go ahead and get started?

15         **MS. BIELINSKI:**  Sure, your Honor.  First, I also had

16   an opportunity to review the late filing from yesterday and I

17   just -- it sounds like your Honor is aware of what's been going

18   on, but if there's any other factual issues you would like --

19         **THE COURT:**  Well, I think I know, but I don't know

20   and I don't know so go ahead and give me everything you think I

21   should know.

22         **MS. BIELINSKI:**  All right.  And then I know your

23   Honor had asked me to -- had asked Liberty to submit a

24   Supplemental Brief on the -- on the jurisdictional issues --

25         **THE COURT:**  Yes.

1       **MS. BIELINSKI:**  Is -- are there any --

2       **THE COURT:**  Because it seems to me there's two

3   different things going on here and I'm not sure that the

4   agreement between the Randazza law group and the other entity

5   that they claim is perhaps an alter ego or all the same thing

6   because they share the same CEO, I don't know if that's really

7   properly before this Court.  I don't know that it's really

8   related enough sufficiently for me to even exercise

9   jurisdiction over, whether or not that is a valid count

10  contract, whether it's enforceable, whether it can be enforced

11  on the monies that were settled in this case.  I'm not clear on

12  that.

13      **MS. BIELINSKI:**  Sure.  Right.  To the extent that --

14  just to be clear, Liberty's position is not that the Court

15  should be adjudicating disputes that are before other --

16  currently pending before other tribunals.

17      There are two cases that are live right now.  One of

18  them is the what I'll call the "fee case" which is pending in

19  State Court here, and the other one is an arbitration between

20  Mr. Randazza and Excelsior, which is not even Liberty Media.

21      But I think it's important to keep in mind here the

22  history of the case and how these funds got to be in RLG's

23  possession.

24      Your Honor, about a year ago I went through a very

25  detailed analysis of the settlement agreement and pursuant to

1   the Court's Order dismissing the case, the funds were

2   transferred, as you mentioned, from Oron's account to RLG to be

3   held in trust for Liberty.  Oron subsequently filed an appeal.

4   The parties have resolved their dispute.

5          Those funds have been held in trust for Liberty since

6   they were transferred.  Now the fact that the parties have

7   disputes or related entities, or Mr. Randazza or whatever it

8   is, has nothing to do with this money, and that's why we

9   believe that it's appropriate for your Honor, who ordered that

10  these funds be transferred, specifically looked at the

11  settlement agreement, we think it's appropriate for this Court

12  to determine, based on its own Order, that the funds should be

13  transferred to Liberty.

14         One other thing that I'd like to keep in mind here is

15  the -- there are mechanisms in place in these other disputes

16  and we don't want you to, you know, get in the middle of these

17  other cases, but there are mechanisms to obtain funds or attach

18  funds, Writs of Attachment, Motions for Preliminary Injunction

19  and that either -- could have been done in either case and, in

20  fact, in one of the cases was.

21         There's in the -- what I'll call the "employment

22  dispute" Mr. Randazza filed a Motion for Preliminary Injunction

23  asking the Arbitrator to, you know, enjoin transfer of the

24  funds and I'm not sure if it was phrased that way, but

25  essentially the funds that he disputes.

1        **MR. RANDAZZA:**  Your Honor, I have to object.  The

2   arbitration is confidential.  I'm not allowed to reveal

3   anything about it.  I can't believe that this is happening in

4   open court right now when I'm bound by that confidentiality.

5        **THE COURT:**  All right.  Well, do we want to seal the

6   proceeding or do you want to just not -- I mean, do you think

7   it's necessary to go into it because if you do we could -- we

8   can see if we --

9        **MR. COTTON:**  We could seal it -- we could seal it,

10  but as a practical matter the underlying facts of the

11  arbitration -- Laura was outlining them in an argument in the

12  abstract really, not -- as opposed to specifics.  It probably

13  wouldn't violate a confidentiality, but we'd have to keep it

14  pretty general without sealing it.

15       **THE COURT:**  Okay.  Well, I suppose I'm not sure

16  whether we're still on point.  Maybe that's the problem, are we

17  getting off point, or is it necessary for me to know the

18  details of the other case --

19       **MS. BIELINSKI:**  Okay.  To the extent that I don't --

20       **THE COURT:**  -- other than, you know, there's a

21  different case --

22       **MS. BIELINSKI:**  Sure.

23       **THE COURT:**  It's just, in my eyes I think it's

24  ancillary, it's collateral, it's not related to this particular

25  case, but do you think differently?  Do you think it is

1 related?  Do you think somehow --

2 　　　　　MS. BIELINSKI:  Well, no, your Honor.  I think that

3 -- here's the distinction that -- that needs to be drawn in

4 terms of how they are claiming that they are entitled to retain

5 the funds.  They've set it to a Rule of Professional Conducts

6 which says that when funds are in dispute, that the attorneys

7 shall, you know, keep them separate until the dispute is

8 resolved.

9 　　　　　The point here is that these funds are not in

10 dispute.  These funds are Liberty's property, and what RLG is

11 asking the Court to do here is to attach those funds when

12 there's no basis to do so.  They don't -- there has to be some

13 kind of connection.  If the Court were to adopt RLG's position

14 then any time a lawyer had a dispute with its client and had

15 funds in its account and claims some, you know, in a separate

16 proceeding, claims that they were entitled to the funds, they

17 could just hold onto them, and I don't think that the rule can

18 be read that way reasonably.

19 　　　　　THE COURT:  Well, the retaining lien, I think I'm

20 trying to understand your -- I think your argument is that like

21 a retaining lien would really just be for the work that's

22 rendered or any other associated costs or liabilities pursuant

23 to hopefully a written fee agreement, but unrelated to that

24 particular representation.

25 　　　　　Now in some cases -- well, in a lot of cases you have

1   a law firm that has a particular client who is retaining them

2   for all of their work related to a particular area of law,

3   perhaps of a specialty or something.  So then that's where it

4   might get dicey because maybe you do have a contract that is

5   more of an umbrella for a series of cases as opposed to just

6   the routine one party, one attorney, one contract per case

7   situation.  So I'm assuming that that's the problem here, is

8   that there's more than just one thing going on.

9           But, regardless, I don't know if I have jurisdiction

10  over that other -- I'm calling it an "umbrella contract" for

11  lack of a better word, but that other contract that may or may

12  not exist with Excelsior, but may or may not be related to

13  Liberty.  I'm not sure that's really properly before this Court

14  because the only case that was before the Court was the Liberty

15  and Magnat case, and that one was settled, and so whatever the

16  settlement terms were for that particular case, whatever fee

17  agreement applies to that particular case is the only thing

18  really that I think I have jurisdiction over, and only because

19  I would exercise my discretion to do that, just to not force

20  some other judge to have to get into the details of the case

21  that I'm already somewhat familiar with.

22          So I think maybe we're on the same page as far as

23  that other monies that may or may not be due pending the

24  resolution of this other contractual dispute.  I don't think

25  that's something that I really have the authority or the

1    inclination even if I did have the discretion, to get into the

2    little -- the little pieces of.  I think that that's probably

3    something that is already being addressed by another judge or

4    an arbitrator, whatever the case may be, and that's not

5    something that I need to rule on.

6             But if feels like you're telling me that I should

7    rule that the money doesn't belong in that trust account and it

8    does belong to Liberty, and I'm not sure that I can make a

9    ruling either way.  So that was my request for jurisdictional

10   clarity.

11            **MS. BIELINSKI:**  Sure.  And so I guess what I'd go

12   back to is I think where you were headed talking about when a

13   client gives money to a lawyer to hold in trust as a retainer

14   or if funds are transferred in, you know, pursuant to a

15   settlement agreement where there is a contingency agreement in

16   place, that's a different situation than what we have here.

17            Mr. Randazza was a -- an employee and was being paid

18   a salary.  I just -- I don't -- I don't understand how he can

19   claim entitlement to funds that were transferred pursuant to

20   this Court's Order, and by the way he was involved in the

21   settlement.  As you can see, he signed the settlement

22   agreement.  He obligated his firm to take certain action under

23   the agreement, and that is before your Court, and that's why I

24   believe that the funds are properly before you and that they

25   should be transferred back to Liberty Media.

1          **THE COURT:**  All right.  At first when I was looking

2   at this I was looking at the need for an interplead or

3   something like that, or some kind of third party escrow account

4   or just somewhere else where the money could sit until

5   everything is resolved by the other courts.  I don't know if

6   that's an option that you-all have looked into, but I'm not

7   really sure that I want to exercise any discretion over the

8   funds that are at issue related to some kind of employment

9   agreement that I've never seen in depth or really seemed to

10  need to if there's another court already that is looking into

11  that.

12          Why don't we hear from Mr. Cotton and then we'll go

13  ahead and allow Ms. Bielinski to have the last word?

14          **MR. COTTON:**  Thank you, Judge.  I have to confess to

15  a degree I'm here selfishly asking the Court not to exercise

16  discretion or jurisdiction.

17          I was retained as Defense Counsel in the legal realm

18  after this counterclaim to the action that was filed in

19  arbitration initially and pulled up in the District Court.

20          All of the issues involved these contracts, fees,

21  fees that were earned, that were the subject of a retention

22  lien at this point in time are all involved in that litigation.

23  The balance of them are involved in the other arbitration

24  before JAMS.  I'm already in the situation of having the job of

25  three different matters, to try to keep this whole issue

1    straight.

2         But the practical matter is at the point in time when

3    these funds were finally ready to be released, which is just

4    not too long ago, all of those matters had been pending and are

5    pending today and there are judges and arbitrators who are

6    prepared to look at those issues, the contract issues the

7    Court's identified, the direct actions for legal fees, all of

8    the claims that we've got here basically arise out of this

9    litigation, the fees from this litigation.

10        There's a 25 percent fee on $550,000; there's an

11   additional fee on the attorneys fee award.  There's actual

12   hourly rate fees that the Randazza Legal Group incurred in this

13   matter, and in addition to that there's also a $25,000 advanced

14   cost claim.  All of those are subject to a retaining lien, and

15   under Nevada law, with a retaining lien, there's the Jolly Urga

16   (phonetic) case, it's case *Argentena* with an "e" at the last

17   towards the N as opposed to an I, *Argentena Mining Group versus*

18   *Jolly Urga.*  It's at 216 Pacific 3d, 779, a 2009 case, that

19   basically states that it's a passive lien that sits there until

20   matters are resolved.  If the parties --

21        **THE COURT:**  That's the one that's mentioned by

22   Justice Pickering in the Leventhal, Black and LoBello case?

23        **MR. COTTON:**  Exactly.  Right.  And that lien sits

24   there passively until the parties seeking the funds makes a

25   request.  That's functionally in place right now with the

1    actions we've got pending in State Court.

2         What I'm concerned about, if the Court exercises

3    jurisdiction here, is we could end up with two or three

4    different rulings on the same issue, and I think it's better

5    left to sit down at the State Court.  We're moving forward on

6    those claims at this point.  The funds aren't going anywhere,

7    they're sitting in a Trust account, and anyone moving them out

8    of there at this point would be subject to some pretty hard

9    sanctions from the Bar Association, so I don't see any damage

10   or harm to the parties if the Court were to decline

11   jurisdiction and, in fact, we'd end up with a more efficient

12   utilization of our State's resources and judicial resources

13   than keeping it here.

14        **THE COURT:**  Okay.  Thank you.

15        Ms. Bielinski, I'm looking at Title 28 of the United

16   States Code, Section 1367(c)(3), the gist of which is that if

17   the underlying case in controversy, in this case would be the

18   copyright claim, has already been resolved and dismissed, then

19   I have the discretion whether or not to exercise jurisdiction

20   over any other controversy that is somehow related.  I would

21   say that this is very tenuously related if it even is, so I'm

22   not convinced that I really need to exercise jurisdiction, but

23   I do want to give you the last word and make sure that I'm

24   clear on if there is any other case law or public policy or

25   anything else that you want to give to me that you want

1   considered to see if there's a reason why I should get involved

2   in this.

3          **MS. BIELINSKI:**  Well, your Honor, I understand your

4   concerns.  I guess one thing that I would add is the -- at the

5   end of -- when you were speaking before you had mentioned, you

6   know, you don't want to get into the middle of contractual

7   disputes before other people.  And so to the extent that you're

8   inclined -- or you are disinclined to exert jurisdiction to the

9   extent that there are disputed findings between Mr. Randazza

10  and, by the way, a totally unrelated entity, I understand your

11  inclination.

12         But there is case law out there that says that you do

13  have jurisdiction to deal with the -- you know, to the extent

14  that there are claims for fees or a charging lien that's been

15  asserted, or a retaining lien.

16         I think that you do have jurisdiction to deal with

17  that issue.

18         Now there is another action that's pending over those

19  funds.  The -- RLG has not moved for an attachment in that

20  case.  They didn't try to litigate the lien before your Honor;

21  they haven't tried to litigate it there, and in that case they

22  would have to show that there's a likelihood that they're going

23  to prevail on their claims.  They haven't done that and I don't

24  see how they can secure, to the extent that we're talking --

25  it's like $80-something thousand, to the extent that we're

1    talking about those funds, I'm not sure how the Court views

2    this, but I would say you do have jurisdiction over those

3    funds.

4         **THE COURT:**  All right.  Well, I think -- let me see

5    if I -- I think I originally categorized these in three

6    different -- three different categories of money here.  Let's

7    see.

8         There's the 25,000 for costs, I know that.  And then

9    there's the -- I think 81,400 -- $81,433.98 that is claimed to

10   be the (indiscernible) attorneys' fees, so I think that's the

11   (indiscernible) attorneys fees, right?  And then there's the 25

12   percent of the entire settlement of the $550,000 settlement.

13   So I sort of put these into three different categories in my

14   head when I first started going through this to see if I had

15   any jurisdiction to resolve at least part of the dispute, if

16   not all of their disputes.  I think that's what you're saying

17   now, that even if I don't resolve the whole kit and caboodle, I

18   could at least address some of that.

19        **MS. BIELINSKI:**  That's correct, your Honor.

20        **THE COURT:**  So what --

21        **MS. BIELINSKI:**  And that the part that I'm talking

22   about is the 80,081 and change that they're claiming as a

23   result of the fees incurred in this case.

24    **(Pause)**

25        **THE COURT:**  All right.  And was that not the

1    attorneys fees that were contemplated in the settlement

2    agreement that would be going to RLG as their fee for the

3    negotiation?

4          **MS. BIELINSKI:**  Well, your Honor, the fee dispute is

5    a little bit complicated.  You may recall that you granted our

6    Motion for fees filed by Mr. Randazza in the amount of

7    approximately $131,000 -- maybe it was 132, but now they're

8    saying that it's $80,000 based on whatever compilation that

9    they've made, and that's -- that's what's in dispute in the

10   other case, in the fee dispute case, the State Court action.

11         But, again, it's -- that money is just kind of

12   floating out there.  They haven't done anything to secure those

13   funds in the other case, so the funds are only being held in

14   connection, you know, with whatever they claim is due.

15         But those fees are not -- how do I put this?  Those

16   fees wouldn't come out of this money, so they filed this other

17   action.  They are pursuing it.  If they get a judgment against

18   Liberty, Liberty will have to pay them, but that doesn't mean

19   that they can just hold onto those monies.

20         **THE COURT:**  Why not?

21         **MS. BIELINSKI:**  Well, I don't see what would allow

22   them to.

23         **THE COURT:**  Are they not fees earned in connection

24   with the Liberty-Magnat case?

25         **MS. BIELINSKI:**  Well, they're fees that they claim in

1  connection with this case, but they've not done anything --

2  there's no connection between that money and their claim for

3  fees because the fees are a separate issue from the settlement

4  funds.  Their fees weren't going to come out of settlement

5  funds.

6        **THE COURT:**  What were they going to come out of?

7        **MS. BIELINSKI:**  They were going to be paid by

8  Liberty, according to their claim.

9        **THE COURT:**  But if the settlement funds belong to

10  Liberty, then what's the difference?  We're not talking about

11  apples and oranges, we're talking about cash and cash.

12        **MS. BIELINSKI:**  Well, I think that's the distinction

13  I've been trying to make here is between just generally having

14  a claim against someone, a creditor, having a claim against

15  someone, and a creditor being allowed to retain specific funds.

16        **THE COURT:**  All right.  I'm not sure that following

17  your -- but I'm convinced, just in a very general sense, that

18  if an attorney represents a party and there's a settlement, and

19  there's attorneys fees that are due and owing, this generally

20  comes out of that settlement fund.  That's -- so I'm not sure

21  how this is different.  Maybe there's -- like you said, it's a

22  little bit more complicated so maybe there's more to it.

23        **MS. BIELINSKI:**  Well, and again, your Honor, I don't

24  want to get -- I don't want to get too much into the details of

25  it.

1           **THE COURT:**  But if this is already being -- you say

2  this money is already -- this dispute regarding this money, is

3  already being litigated in State Court, then why wouldn't you

4  file -- just file your Motion in State Court?

5           Did you file it in State Court and State Court said

6  it's not up to us, it's up to the Federal judge, or is there

7  some reason why?

8           **MS. BIELINSKI:**  Well, we didn't believe -- we would

9  have believed that the State Court would have jurisdiction to

10  order the $80,000 transferred because the only -- the mechanism

11  and the reason that the funds are in RLG's Trust account to

12  begin with is pursuant to this Court's Order.

13           **THE COURT:**  Well, I'm -- I think the remedy that you

14  are requesting is for me to order RLG to give Liberty the

15  money, and I don't have a basis to do that.

16           I could ask if the parties want to entertain

17  settlement conference with a Magistrate Judge, but it sounds as

18  if you've already got two other cases going on and that would

19  be needless.

20           If you wanted to somehow set something up -- some

21  kind of an account with an unbiased, you know, Trustee, whether

22  it be with the bank or with a Court or something like that,

23  that might be a way to sort of --

24           Are you afraid that they're going to abscond with the

25  funds, or is it just it's already been a year, my goodness, how

1   much longer do we have to wait?

2         I'm trying to see if there's a way maybe that we can

3   at least take the bite out of this because I understand your

4   client's point of view.  It's been a year, let's get on with

5   it.  Give me the money or don't so we can appeal it, but let's

6   do something here.  I'm not sure it's for me to make that

7   resolution, but are you afraid that the money is somehow in

8   danger of being lost and you would prefer if you can't have it

9   ordered to be provided to your client, perhaps put in a safer

10  place?

11        **MS. BIELINSKI:**  Well, I think that's an ongoing

12  concern for the client.  But, I mean, if the Court is

13  disinclined to order the transfer of funds, then I think as an

14  alternative, at least, have the funds, you know, deposited in

15  some kind of neutral third party place would be preferable to

16  having them sit in a -- in RLG's Trust account.

17        **THE COURT:**  All right.

18        **MR. COTTON:**  If I might just respond?

19        **THE COURT:**  Well, yes, Mr. Cotton, I don't know if

20  this is this something you've already explored?

21        **MR. COTTON:**  That's a consideration.  My only concern

22  is I don't think this Court has --

23        **THE COURT:**  Sir, oh, there's a whole bunch of

24  microphones.  Just pick one, but we need to have you on one.

25        **MR. COTTON:**  Oh, I'm sorry.

1          **THE COURT:**  Yes.  Thanks.

2          **MR. COTTON:**  The only concern I have is I don't

3    believe this Court has jurisdiction under the discretionary

4    standards that we've got, and I don't need to come back into

5    this Court to bother the Court again.

6          If they want us to do that, if they want to file a

7    Motion with either the arbitration that we've got, or

8    preferably the State Court action, I don't see any particular

9    problem if they file a Motion there with that person ordering

10   us where to put it, then you don't have to be involved any

11   further at that point.

12         If we get some resolution down the road and the

13   monies are ordered out, and it's by a person that's ordered the

14   funds to be put in there and can direct the neutral party to

15   pay the funds out, and I think that would probably be the

16   better method to do, to not have this Court exercise any

17   jurisdiction whatsoever, and with the suggestion to Counsel

18   that they file that Motion in the State Court, at which point,

19   absent something strange in my mind, I can't imagine that we'd

20   be opposing it, it takes it out of my client's Trust account

21   and his concern forever.

22         **THE COURT:**  All right.  So, Ms. Bielinski, would you

23   be amenable to something like that?  I mean, without me

24   actually ordering anything, but if you-all just would agree to

25   place it in some third party's trust, it sounds like, at least,

1    it gets you at least halfway to where you're going?

2         MS. BIELINSKI:  Well, certainly it would be our

3    preference that, in the event the Court is disinclined to do

4    that, to grant relief that we're requesting.  I mean, to the

5    extent that you don't think that you have jurisdiction over the

6    funds -- you know, I understand that the funds are in dispute,

7    but I don't understand why it would be or could be that you

8    couldn't order them placed into a third party account.

9         But I think --

10        THE COURT:  I'm not making a finding that I don't

11   have any jurisdiction over any of the funds.  I think I do have

12   jurisdiction at least over part of the funds, certainly the

13   costs of the fees that are generated as a result of this

14   particular case, I could exercise jurisdiction over those.

15        I'm not sure that I have -- well, I'm pretty sure

16   that I don't want to exercise jurisdiction over that other 25

17   percent agreement that was with a different party, so that's

18   what I was explaining earlier, that I kind of separated it out

19   of the three.

20        MS. BIELINSKI:  Okay.  Sure.

21        THE COURT:  So I think of the three I don't want to

22   exercise jurisdiction over the 25,000, but over the -- I'm

23   sorry, the 25 percent.

24        But the costs, if it's 25,000 and the other fees, I

25   think it's an hourly attorney fee, is that what -- I think that

1   was the representation, whether that's what it is or not, but I

2   think that's the allegation, the 81,000 plus, that I may

3   exercise jurisdiction over, but it sounds like it belongs to

4   the attorney as fees earned unless there's some reason why you

5   think that they didn't earn any fees at all.  I'm not sure that

6   --

7           **MS. BIELINSKI:**  Well, here's where I guess I'd like

8   to just leave this at the history a little bit, because I -- I

9   just want to make sure you understand that when -- when the

10  funds were transferred, pursuant to this Court's Order, to be

11  held in trust for Liberty, the only reason that they stayed in

12  RLG's trust account was because there were certain

13  contingencies under the settlement agreement that haven't been

14  met and then Oron filed its appeal.

15          In the event that -- and if the appeal hadn't been

16  filed, those funds would have been transferred to Liberty at

17  that time, so I'm not sure how the funds became subject to some

18  kind of a lien after the facts.

19          **THE COURT:**  You're saying that if there hadn't been a

20  new attorney and appeal, that all of the settlement funds would

21  have been transferred to Liberty and that RLG would not have

22  retained any attorneys fees at all, wouldn't be paid at all?

23  That was part of the settlement, that they would take nothing

24  from the settlement?

25          **MS. BIELINSKI:**  Under the terms of the settlement

1    agreement that money belongs to Liberty, and so what they're

2    alleging to be disputed funds would not have come out of these

3    funds, wouldn't have come out of the $550,000.

4              Liberty paid, even according to RLG's own

5    allegations, Liberty paid RLG for hourly fees, and I won't get

6    into the details of what's going on in the other case, but it

7    didn't come out of the settlement funds any other time that it

8    ever happened, nor did his 25 percent that he claimed on any

9    settlement funds, ever come directly out of the settlement

10   funds that were transferred into the account.  I think that's

11   part of the distinction here as well.

12             THE COURT:  All right.  So it sounds like you're

13   saying Liberty feels that they have already paid the Randazza

14   attorneys what they owe them, in a separate transaction?

15             MS. BIELINSKI:  No, but the separate transaction is

16   the transaction that's in dispute in the State Court case.

17             I guess what I'm trying to focus on is even if RLG is

18   entitled to the $81,000, and they're not, according to us, even

19   if they're entitled to those $81,000 --

20             THE COURT:  Why aren't they entitled to the $81,000?

21   Was it renegotiated, is that what you're saying?

22             MS. BIELINSKI:  There's a very complicated dispute

23   between the parties over if and how much RLG is entitled to any

24   fees as a result of its work on this case.

25             THE COURT:  Okay, and I don't want to hear the

1  details, but is it your claim then that, in general terms at

2  some point in time, there was a new contract or new agreement

3  that supersedes anything that happened in this case back in

4  2012, whenever it was that the settlement occurred, July,

5  August or something like that?  So after that?

6          **MS. BIELINSKI:**  Between RLG and Liberty?

7          **THE COURT:**  Yes.

8          **MS. BIELINSKI:**  No.  There's no written fee

9  agreement.

10          **THE COURT:**  So it was Liberty's understanding that

11  RLG was just going to represent them in this case against

12  Magnat for free?

13          **MS. BIELINSKI:**  No, absolutely not.  It was Liberty's

14  understanding that based on the history between the parties,

15  Liberty would pay RLG as it was invoiced.  Liberty didn't even

16  receive one invoice in this matter until after a dispute arose

17  between the parties, so I'm not sure how --

18          **THE COURT:**  But what happened when they did receive

19  an invoice?  Did Liberty pay the invoice, or is that the

20  subject of the other case?

21          **MS. BIELINSKI:**  That is the subject of the dispute.

22          **THE COURT:**  Okay, then, it sounds like there's still

23  a retainer lien -- a lien here that is -- unless you would

24  explain it to me why they wouldn't have a right to a lien on

25  the funds that they believe that they've earned that haven't

1    been paid as a result of this.

2           MS. BIELINSKI:  They haven't asserted a lien -- they

3    haven't perfected a lien.

4           THE COURT:  They don't have to, they have -- they've

5    retained the funds.  That's what a retainer lien is.

6           MS. BIELINSKI:  Well, your Honor, I don't know that I

7    have anything to add.

8           THE COURT:  Okay.  Well, let me see here if maybe I

9    did -- I did see this when I was reading Justice Pickering's

10   decision here, and I thought -- well, yes, maybe that's why I'm

11   thinking maybe -- okay.

12          So on Page 3 of her decision, and I'm sorry, I just

13   have the copy that's from the Supreme Court so I don't know

14   what the Pacific 2d page is, but anyways, it's right after --

15   it starts at Paragraph II, and then it says:

16              "A, Nevada attorneys have all the usual tools

17              available to creditors to recover payment of their

18              fees; for example, a law firm can sue its client

19              and obtain a money judgment for fees due thereby

20              acquiring it if recorded a judgment lien against the

21              client's property" and that's under S 17.150,

22              Subsection 2.

23              Then it says, and this is the part that I

24              highlighted:

25              "An attorney also has a passive or retaining lien

1          against fires or property held by the attorney for

2          the client."

3          And that's the Argentena case, and then it goes into

4   the charging lien and so forth.

5          So it sounds like that's the situation we have here,

6   is that they do have the passive or retaining lien on the funds

7   that were received as a result of the settlement and the case

8   is in front of the State Court.  So the case in front of the

9   State Court was something that you brought or they brought

10  because I don't remember?

11         **MS. BIELINSKI:**  It was brought by RLG against Liberty

12  approximately seven months ago.

13         **THE COURT:**  All right.  Well, if the parties wanted

14  to dismiss that, agreed to dismiss it and I have me look into

15  the subject matter I suppose I could do that.  It doesn't sound

16  like I need to as this case has already been ongoing for seven

17  months in State Court.  Quite frankly, they're usually quicker

18  than we are, I hate to admit it, but it's true, they are

19  usually quicker than we are, so it sounds like you're already

20  seven months into a case over there and you'd probably get a

21  quicker resolution.  I don't know what else to tell you.  I

22  don't think that I need to exercise jurisdiction at this point.

23         **MS. BIELINSKI:**  I understand your ruling, your Honor.

24         **THE COURT:**  All right.  Any other relief that I could

25  provide that you -- that you think maybe I would -- I should

1   consider?

2        **MS. BIELINSKI:**  No, I don't believe so, your Honor.

3        **THE COURT:**  Okay.  Well, I thank you.  I appreciate

4   this is a complicated and inconvenient situation you-all find

5   yourself in.  I don't think after having two cases ongoing we

6   need to really have a third one unless you-all really wanted

7   to, but it sounds like you're already well on your way in the

8   other case, and it sounds like the other case involves other

9   contracts and other facts and circumstances that I am not

10   already privy to and familiar with.

11        If I was already familiar with them then it would

12   make more sense just from the viewpoint of judicial economy for

13   me to just resolve it and get it done with, but since it's just

14   the reverse, it sounds like there's already other individuals,

15   whether the JAMS arbitrator or settlement judges or what not

16   already involved in that case over there, it doesn't seem that

17   I need to do anything.

18        There were a couple of Motions -- let me get over

19   here to the docket.  There were a couple of Motions that were

20   filed that I think might be moot now.

21        **MS. BIELINSKI:**  Your Honor, I believe those are all

22   moot.  They were Motions -- there was a Motion to Stay pending

23   appeal, the appeal has been dismissed, and I don't believe that

24   there's any other pending relief that we would seek from the

25   Court.

1          **THE COURT:**  Let me see.  This -- let me get back to

2    my notes here.  It's --

3          **(Pause)**

4          **THE COURT:**  All right.  So, Mike, I'm looking at the

5    Motion that's Number 121 on the docket, it's Motion to Stay

6    Enforcement of Order Granting Plaintiff's Motion to Enforce

7    Settlement Agreement.  So that one, everybody agrees, is moot,

8    is that correct?

9          **MS. BIELINSKI:**  Correct.

10         **THE COURT:**  Okay, and then the next one that I have

11   listed here is 131, Cross Motion to Enforce Settlement

12   Agreement, and that one was filed by Defendant, and so that one

13   seems to be moot as well?

14         **MS. BIELINSKI:**  I can't speak for the Defendant.  I

15   don't think that they have a representative here, but I believe

16   that they think it's moot.

17         **THE COURT:**  Right.  And then Number 136, is Motion to

18   Strike Reply to Response to Motion and the alternative Motion

19   for Leave to File Surreply and that is moot as well?

20         **MS. BIELINSKI:**  That's also moot, correct.

21         **THE COURT:**  All right.  So it looks like the only two

22   then that we have left are Numbers 140 and 141; 140 is the

23   Emergency Motion for Adjudication That Attorneys Charging Lien

24   is Unenforceable and for a Declaratory Order; and then 141 is

25   the Emergency Motion for Disbursement of Funds.

1       **MS. BIELINSKI:** That's correct, your Honor.

2       **THE COURT:** All right. And I'm going to deny both of

3 those without prejudice based on the fact that there's another

4 Court that is exercising jurisdiction and it doesn't seem

5 necessary for this Court to exercise jurisdiction.

6       Again, there's three different categories of funds

7 here. I think that I may exercise my discretionary

8 jurisdiction over two of those categories, but the third one

9 I'm not convinced is even in my realm of possibilities or

10 authority. Nevertheless, I'm just going to, at this point,

11 exercise my discretion to not get involved unless something

12 goes awry.

13       If the other cases and the other judges or

14 arbitrators or whatever decide that I -- that they want to stay

15 their case and have me render a ruling, then certainly I would

16 consider that, so it's without prejudice, but at this point I'm

17 not going to grant the Motions.

18       **MR. COTTON:** Thank you, Judge.

19       **THE COURT:** All right. Do you-all need a written

20 Order, or is it sufficient just to have a minute order reflect

21 that?

22       **MR. COTTON:** A minute order is fine with us, Judge.

23       **THE COURT:** All right, is that's fine? So if it

24 turns out that one of the other judges or arbitrators in the

25 case want something in writing, then please file a proposed

1   order so that we can get that to you if it's going to help

2   someone else who may have any questions.

3            All right, thank you very much.

4        **MS. BIELINSKI:**  Thank you, your Honor.

5        **MR. COTTON:**  Thank you, Judge.

6      **(Court and Clerk confer)**

7      **(This proceeding was adjourned at 9:48 a.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _August 5, 2013_

              TONI HUDSON, TRANSCRIBER